1  Philip J. Layfield, Pro Se
   c/o Maximum Legal Holdings, LLC
2  8 The Green
   Suite 6426
3  Dover, Delaware 19901
   Telephone: (302) 401-6804
4  phil@maximum.global

5

6  Alleged Debtor

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  LOS ANGELES DIVISION

11

12  In re:                          Case No.: 2:18-bk-15829-NB
              v.
                                    Chapter 7
13  Philip James Layfield,
                                    Assigned to: Hon. Neil Bason
14        Debtor

15                                  ALLEGED DEBTOR PHILIP J. LAYFIELD'S
                                    MOTION FOR PROTECTIVE ORDER
16                                  REGARDING INTERFERENCE WITH
                                    DEBTORS EXEMPTION PROPERTY AND
17                                  DEPOSITION OF PHILIP LAYFIELD;
                                    REQUEST FOR SANCTIONS FOR
18                                  VIOLATIONS OF BANKRUPTCY RULES IN
                                    THE AMOUNT OF $20,000 REQUESTED
19
                                    HEARING DATE: OCTOBER 24, 2018
20                                  HEARING TIME: 10:00 AM
                                    COURTROOM:   1545
21

22
   ─────────────────────────────
23

24  TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE;

25  WESLEY H. AVERY-INTERIM, CHAPTER 7 TRUSTEE; AND THE OFFICE OF THE

26  UNITED STATES TRUSTEE:

27      Alleged debtor, Philip J. Layfield (hereinafter "Layfield" or "Mr. Layfield Debtor"), hereby

28  submits this Motion for Protective Order and Request for Sanctions ("MPO") seeking entry of an

1   order from the Court to prevent Jeffrey Golden and Wes Avery from tortiously interfering with

2   debtors rightful claims to exemption property and to prevent further discovery abuses by Jeffery

3   Golden until this Court dismisses this improperly filed Involuntary Petition.  This Motion is made

4   and based upon the following points and authorities, the Declaration of Philip J. Layfield with

5   supporting exhibits filed in support hereof (the "Layfield Declaration"), the pleadings and papers on

6   file with the Court in this matter and any and all related matters (i.e. In Re Layfield & Barrett, APC,

7   In re Maximum Legal (California), LLP), alternate direct testimony by declaration pursuant to Rule

8   9017 for all witnesses to be identified on any Final Witness List, all declarations and excerpts of

9   transcripts and exhibits to be used at any evidentiary hearing, and any oral argument the Court may

10   entertain at the hearing at the date and time set forth above.

11

12                                          Respectfully submitted,

13
     Dated: September 30, 2018
14
                                          //s/ Philip J. Layfield
15                                         Philip Layfield

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2

3

1. INTRODUCTION........................................................................................................5

4

2. FACTUAL BACKGROUND....................................................................................8

5

    A. Layfield's Life Has Been Destroyed and He Left the Los Angeles Metropolitan
        Detention Center With Only the Clothes on His Back.....................................8

6

        1. Ruining a Man and His Family Based on False Allegations is Not Enough
            for the Petitioners or Aveis...........................................................................8

7

    B. Golden and Avery Attempt to Improperly Interfere and Exercise Dominion and
        Control over Alleged Debtor's Exemption Property.........................................9

8

        1. Layfield Has Been Financially Destroyed by the Collapse of L&B, the
            Fraudulent Filing of the Maximum Legal (California), LLP Petition
            and the Conspiracy to Violate His Civil Rights.............................................9

9

10

            a. Layfield's Assets Are Virtually Non-Existent...........................................9

11

            b. Layfield's Most Important Assets Are His Litigation Claims..................10

12

    C. Golden and Avery Indicate Potential Interference with Alleged Debtor's Motion
        for Reconsideration........................................................................................11

13

14

    D. Golden and Avery Have Failed to Prepare Layfield's 2017 Tax Return as
        Required by the October 15, 2018 due date...................................................12

15

    E. Golden Serves a Deposition Notice Before Discovery is Opened....................13

16

    F. Golden Fails to Obtain an Order for a 2004 Examination.................................13

17

    G. Golden Notices Deposition Outside of Permissible Area.................................13

18

II. LEGAL ARGUMENT.............................................................................................14

19

    A. Layfield is a Resident of Delaware and Entitled to Delaware Bankruptcy
        Exemptions....................................................................................................14

20

21

        1. Layfield's Only Assets are Held by Others...............................................14

22

        2. Layfield is Entitled to Protection from the Automatic Stay Even Though
            He is not a Proper Debtor. Otherwise, an Involuntary Petition Would
            Be Unduly Burdensome and Oppressive......................................................15

23

24

        3. Janshseski, LeBlanc and Avery Have Violated the Automatic Stay by
            Attempting to Wrongfully Exercise Dominion and Control Over
            Layfield's Assets.........................................................................................15

25

26

    B. Legal Standard For Discovery Pursuant to an Involuntary Petition..................15

27

    C. No Discovery Order Has Been Issued............................................................16

28

1

4. CONCLUSION.................................................................................................................18

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **1. INTRODUCTION**

2    Faced with Layfield's motion to dismiss the Involuntary Petition and lacking a prima facie

3    showing to meet the requirements of 11 U.S.C. § 303, Petitioners have continued their pattern of

4    using this process to further harm Layfield.  Knowing that Layfield was released from his illegal

5    detention with nothing more than the clothes on his back, no money and no place to live other than

6    with his family in Delaware, Petitioners and their counsel of illegally interfered with Layfield's

7    efforts to obtain property that is rightfully his under numerous theories, including the debtor's

8    exemptions and are now on a fishing expedition.  Despite Petitioners having unfettered access to

9    the bank accounts of L&B, having already subpoenaed Layfield's primary bank accounts at USAA

10    Federal Savings Bank and despite failing to hire the appropriate professionals in the L&B

11    bankruptcy case to support their wild allegations regarding Layfield's alleged theft of millions of

12    dollars, Petitioners have demanded a fishing expedition in discovery in hopes of uncovering

13    evidence to prove up their claims in advance of the motion to dismiss hearing.  Even with complete

14    access, which they have, they still can't satisfy the requirement of an Involuntary Petition.  They

15    know this and they know they are going to be forced to pay substantial money when this case is

16    dismissed.  They took an extreme gamble, violated their own rules and lied to this court and are on

17    the cusp of being exposed.

18    As discussed below, Petitioners are not entitled to turn this court into their playground.

19    Petitioners have sought to put Layfield into involuntary bankruptcy by means of creditors with

20    disputed claims.  This last ditch effort to save a fatally flawed Involuntary Petition by seeking

21    extraordinary discovery and preventing Layfield form obtaining his own property prior to the

22    motion to dismiss hearing must be rejected.  As has been demonstrated, this Involuntary Petition

23    must fail because the Alleged Creditors have not met their burden.  At a minimum, Pachulski's

24    assertion of conversion against Layfield is laughable at best because Pachulski knows he has NO

25    claim against Layfield, whether disputed or not.

26    The Motion to Dismiss this case is set to be heard on October 24, 2018.  See Docket Entry

27    on September 20, 2018.  However, until this Involuntary Petition is Dismissed, Mr. Avery and Mr.

28    Golden must follow the rules they voluntarily subjected themselves to.  This means that Mr. Golden

1   and Mr. Avery must not attempt to maintain dominion and control over alleged debtor's exemption

2   property, must not interfere with Alleged Debtors efforts to file his tax returns and must not engage

3   in abuses of discovery that cause further unnecessary harm to alleged debtor.

4           In addition to the Motion to Dismiss, Alleged Debtor has also filed an Objection to the

5   Appointment of the Employment of Weiland Golden and Goodrich, LLP as well as the

6   Appointment of an Interim Trustee. See Docket # 37. This Objection will be supplemented with

7   additional grounds prior to the hearing scheduled for October 24, 2018. The Application to Employ

8   Weiland Golden and Goodrich, LLP was filed on August 8, 2018. See Docket #30. A review of

9   the proof of service shows that I was served by mail at the Los Angeles Metropolitan Detention

10  Center on August 8, 2018. I never received the motion. Believe it or not, the Federal Government

11  does not offer a mail forwarding service for pretrial detainees. Curiously enough, I am aware of

12  facts to suggest that Mr. Golden was aware that I had been released on August 1, 2018 yet he still

13  chose to serve me by mail at a place he knew I would not receive service. I also was not served

14  with the Involuntary Petition until August 24, 2018 by mail. See Docket #34. A response to the

15  Involuntary Petition was not due until September 17, 2018 (21 days plus 3 days for service by

16  mail). A Motion to Dismiss was filed prior to September 17, 2018. As alleged in Docket # 37,

17  Exhibit 1, there are serious allegations against Mr. Golden for perjury in connection with obtaining

18  a fraudulent default judgment against me, which forms the basis for one of the three Petitioning

19  creditors. That debt is disputed. That Motion is set to be heard on October 22, 2018 in United

20  States District Court-Santa Ana. As a result of Golden's misconduct, the criminal allegations

21  against Mr. Golden, the ethical violations and the multiple millions of dollars in damages alleged

22  against Mr. Golden in connection with his fraud, debtor maintains serious causes of action against

23  Mr. Golden, his law firm and others. As a result, Mr. Golden is wholly ineligible to represent the

24  Trustee in this matter.

25          Despite the outrageous allegations that have been made against Layfield by Pachulski and

26  AUSA Aveis, the majority of the alleged debtors' estate value consists of litigation claims against

27  those who have sought to harm alleged debtor through a pattern of deceit. That's it. The FBI,

28  Homeland Security, FINCEN, IRS Criminal and Pachulski have spent the last 12 months telling a

1    story they know is not truthful.  They all know that Layfield never absconded with millions of

2    dollars.  As a result, the criminal scheme alleged by Avies (which was presented to a grand jury in

3    secrecy) is nothing more than a lie created by Aveis to advance his mediocre career.  Aveis

4    assumed he would violently arrest me, hold me with murders and other dangerous criminal and I

5    would fold just like 97% of federal pretrial detainees.  Aveis clearly doesn't know me at all.  Now,

6    faced with the reality of Layfield being released from prison, having the ability to now defend

7    himself and assert affirmative claims against these wrongdoers, Petitioners and Aveis are desperate

8    to restrain Layfield from pursuing his rightful causes of action and obtaining favorable rulings

9    which are beginning to undermine the criminal case.  The Involuntary Petition had nothing to do

10    with assets and everything to do with the litigation claims.  If Layfield had millions of dollars at his

11    disposal, it seems that he would have used those funds to obtain bail for himself during his 6

12    months of illegal detention and to support his family in a manner they were accustomed.  Instead,

13    Layfield needed to rely on his family members to help him and his wife and child. This is hardly

14    the actions of someone who absconded with millions of dollars offshore to live comfortably for

15    eternity as alleged by Aveis to the Grand Jury.  Simply put, Aveis is a liar and knows that his

16    improper tactics are being exposed.  No scheme was devised and no money was secretly hidden.

17          Now that Layfield is out prison and his now on the offensive, everyone is literally running

18    for the hills.  Aveis, Pachulski, Golden and others know that they have become targets of high

19    stakes litigation and that their scheme to destroy Layfield is coming to a conclusion.  Layfield is out

20    of prison and now has access to documents to prove the sea of lies that has been told over the last

21    year.

22          As a result of being the target of these litigation claims, Mr. Golden is unable to waive any

23    conflicts and under no plausible scenario can he represent anyone in connection with any Layfield

24    proceedings, much less a Chapter 7 Trustee.  It is entirely implausible that due to the "clubby"

25    atmosphere between Mr. Golden, his firm, his partners and Mr. Avery that a scenario could ever

26    present itself where Mr. Golden would be able to adequately represent the Trustee assuming the

27    appointment of a trustee is even permissible in this case.

28          Not only is Mr. Golden violating this court's own rules, clearly Mr. Golden has a problem

1  following the basic rules for service of process. He manipulated this court from May 21, 2018 until

2  August 24, 2018 by obtaining orders, seeking relief and positioning himself to be in a position to

3  serve the subject deposition notice by a blatant disregard for the Rules of Procedure. He had a

4  nearly three month window to do whatever he pleased. In fact, Mr. Golden came running to this

5  Court claiming an Emergency need to appoint a Trustee, yet Mr. Golden, the Trustee and the

6  financial advisors took no action until September 24 which is nearly 4 months after the Involuntary

7  Petition was filed. Mr. Golden filed the Petition 4 days after he learned that I was seeking a review

8  of my denial of bond. This Petition was filed in bad faith and this deposition notice is further

9  evidence.

10      Mr. Golden and Mr. Avery are improperly advising holders of Layfield's exemption

11  property that they can willfully violate the automatic stay. As the docket so rightfully reflects, Mr.

12  Golden failed to serve proper notice of anything until August 24, 2018 in this matter. Now, with

13  his first opportunity to show that he is able to comply with the rules, he serves an improper

14  deposition notice and is further attempting to abuse this process for his own benefit. Now, in

15  furtherance of Mr. Golden's improper agenda, Layfield has learned that Golden and Avery have

16  engaged in secret discussions with other creditors in an attempt to cause Layfield additional

17  financial and operational hardships which are legally impermissible. For these reasons, a Protective

18  Order is needed. This Court must intervene once and for all and protect Layfield from these

19  abuses.

20

21  **2. FACTUAL BACKGROUND**

22

23      **A.    Layfield's Life Has Been Destroyed and He Left the Los Angeles Metropolitan Detention Center With Only the Clothes on His Back**

24          **1.    Ruining a Man and His Family Based on False Allegations is Not Enough for the Petitioners or Aveis**

25

26      As previously addressed, Layfield has been charged with one count of mail fraud and 2

27  counts of money laundering. The alleged loss in the indictment is less than $2 million. Layfield

28  was arrested and held without bond for over six months in what is considered a maximum security

1    prison with murders, rapists, gang members and some of the most violent and dangerous criminals

2    in the federal system.  In contrast, Elizabeth Holmes, who is charged with mail fraud and wire fraud

3    with an alleged loss of $700 million has not spent one night in jail and is on a signature bond with

4    no supervision.  See Case No. 5:18-cr-00258-EJD.  The difference between the Holmes case and

5    the Layfield case is simple, Aveis, Golden, Pachulski, Wakefield and others (hereinafter "the co-

6    conspirators") have engaged in a widespread conspiracy to destroy every aspect of Layfield's life

7    and his family.  In the Holmes case, the prosecutors and others are acting appropriately and

8    professionally and not making up wild accusations in an effort to oppress Holmes.  These actions

9    against Layfield are simply unwarranted in light of the failure of L&B.

10        As the co-conspirators are well aware, Layfield did not steal millions of dollars.  Layfield

11    did not flee the country and Layfield had no intention of anyone suffering a loss.  Layfield spent 6

12    months in jail because he couldn't raise funds to post bond because the government had portrayed

13    him in such a negative light that the Judge believed the lies told by Aveis.  See Layfield Dec. ¶ 3.

14    Ultimately, Layfield's family was able to raise funds so he could be released.  When it became

15    apparent that Layfield was going to be granted bond, the co-conspirators accelerated their desire to

16    harm Layfield by using this Involuntary Bankruptcy filing as a means and method to prevent

17    Layfield from functioning in a normal fashion upon his release.  The co-conspirators knew that

18    Layfield was aware of their conduct and that Layfield would be seeking civil remedies and

19    potential criminal complaints against these wrongdoers.  The pretext of the need for an Interim-

20    Trustee is nothing more than a sham to prevent Layfield from pursuing his civil remedies.  The

21    false allegations made regarding stolen money, wiping server data, threats of violence and death

22    have harmed Layfield in unimaginable ways in comparison to the more appropriate handling of the

23    Holmes matter.  This is being done because in part, this court has allowed misconduct to occur right

24    under its nose.

25

26

27

28

B.    **Golden and Avery Attempt to Improperly Interfere and Exercise Dominion and Control over Alleged Debtor's Exemption Property**

    1.    **Layfield Has Been Financially Destroyed by the Collapse of L&B, the Fraudulent Filing of the Maximum Legal (California), LLP Petition and the Conspiracy to Violate His Civil Rights**

        a.    **Layfield's Assets Are Virtually Non-Existent**

The co-conspirators have had unfettered access to Layfield's bank records for at least a year and have confessed that no money exists anywhere. In fact, Aveis was forced to admit this fact in the most recent bond hearing. See Layfield Dec. ¶ 4. Furthermore, evidence exists showing that Pachulski and Pagay have been sharing bank records with federal investigators and vice-versa and Golden has obtained Layfield's bank records via subpoena back in January of 2018. Id. All monies traced from L&B to Layfield have been accounted for. The capturing of Layfield like he was some violent and dangerous gangster and the manner in which he was treated has destroyed Layfield and his family. Layfield's family was left with no money to support themselves during Layfield's period of incarceration and they had to rely on Layfield's father, a retired CPA, to provide support, which included a car to drive. See Layfield Dec. ¶ 5.

Layfield is currently residing in Delaware with his Aunt and Uncle and does not even have a vehicle to drive. While Layfield was incarcerated, he was able to help several inmates obtain dismissals of their cases due to outrageous government conduct. In one particular case, Layfield was instrumental in getting a Motion to Suppress granted by demonstrating that FBI Agent Hannah Monroe had lied in her affidavits to obtain arrest warrants, search warrants and criminal complaints. Two Canadian citizens spent one year in jail based on this misconduct. Those Canadians were released from prison last week and their charges dismissed as a result of Layfield's efforts. Those Canadians had hired Layfield, while he has in the MDC to pursue a wrongful imprisonment civil lawsuit against the federal government. Since Layfield was still a licensed attorney in the District of Columbia, Layfield agreed to the representation. Layfield was waiting for their release to formally establish the relationship. This would have been a multi-million contingent fee litigation. Unfortunately, the co-conspirators thwarted Layfield's efforts at employment. Unbeknownst to Layfield, Aveis and others were incessantly contacting the DC Bar in an effort to get him disbarred

1    and to prevent him from coming after the government in a high profile lawsuit. Those efforts were

2    successful. Layfield is left with no ability to practice law and an inability to pursue any type of

3    professional employment. His employment prospects have been destroyed by these allegations and

4    by the publicity this has received. See Layfield Dec. ¶ 6.

5        Recognizing that no employer is going to hire him in any professional capacity and

6    recognizing that he has no funds to start his own business as a result of the utter devastation he has

7    experienced, Layfield has enrolled in community college to retrain himself so he can support his

8    family. Layfield has classed from 8:30 am to 4:30 pm Monday through Friday and from 5:30 pm to

9    8:30pm Mondays through Thursday. See Layfield Dec. ¶ 7. Exhibit 1 Layfield is trying to rebuild

10   his life, but these co-conspirators are unrelenting in the attacks on Layfield. These co-conspirators

11   know that Layfield has no assets left, but they want to pile on charges and judgments in order to use

12   them against Layfield in his criminal trial. Layfield must defend himself in these matters to prevent

13   improper inferences from being made by an unethical prosecutor who has demonstrated a

14   willingness to blatantly lie to the court.

15

16                    **b.    Layfield's Most Important Assets Are His Litigation Claims**

17       Now that Layfield has become aware of the serious misconduct of these co-conspirators, it

18   is now clear that Layfield has damage claims in the tens of millions of dollars. For each person that

19   lied, misrepresented, stole, defrauded and acted improperly in order to harm Layfield, Layfield will

20   seek civil redress. Since Layfield has no money to hire a lawyer, Layfield must pursue these claims

21   in pro se. Eventually, once Layfield has succeeded in obtaining some favorable rulings, the

22   possibility of obtaining contingent fee counsel increases. Regardless, 99.99% of the value of

23   Layfield's assets consist of litigation claims.

24

25                    **c.    Layfield is the Only Person Qualified to Pursue His Litigation
                              Claims**

26

27       Prior to being portrayed as public enemy number one and being incarcerated, Layfield was a

28   highly successful trial lawyer and businessman. The false narrative that has been pursued by the

1   co-conspirators has destroyed Layfield on almost every level.  In order to clear his name, Layfield

2   is the only person capable of pursuing these claims.  Layfield should be entitled to pursue his

3   claims and not hindered by the pretext of an Interim Trustee that was appointed in violation of due

4   process.  This Trustee is nothing more than a sham coordinated by Golden, Pachulski and Golden's

5   client Advocate capital.

6

7   **C.      Golden and Avery Indicate Potential Interference with Alleged Debtor's
           Motion for Reconsideration**

8

9         At the hearing on September 18, 2018, Golden tipped his hand regarding his strategy.

10  During that hearing Golden indicated that he was going to attempt to prevent Layfield from

11  pursuing his Motion for Reconsideration in the Advocate Capital v. Layfield matter whereby

12  Layfield has accused Golden of perjury.  This Court has already received a copy of that motion and

13  should take the allegations very seriously.  Golden has indicated that he intends to somehow argue

14  that Layfield violated the automatic stay by filing the Motion.  This is a perverse scenario Golden

15  has created for himself.  As one of the 3 petitioning creditors, Advocate Capital obtained a

16  fraudulent default judgments as a result of Golden committing perjury and his process server doing

17  the same.  Layfield has unequivocally proven their misconduct.  If Layfield's motion is granted,

18  Advocate has no undisputed claims and Layfield will litigate that matter to conclusion along with

19  his counter-claims.  If Layfield succeeds on his motion, Layfield succeeds on his Motion to Dismiss

20  the Involuntary Bankruptcy.  Golden knows this and is going to try and prevent a resolution on the

21  merits.  This is the classic chicken before the egg scenario and this court should protect Layfield

22  from these abuses and simply allow Layfield's motion to go forward without interference by

23  Golden or the Trustee.

24  **D.      Golden and Avery Have Failed to Prepare Layfield's 2017 Tax Return as
           Required by the October 15, 2018 due date**

25

26        Golden and Avery have orchestrated another sham by claiming the need for a financial

27  advisor to investigate assets and most importantly file Layfield's tax returns.  Layfield has been

28  working diligently to file his 2016 and 2017 tax returns since his arrest.  Layfield filed his 2016 tax

1   return on March 6, 2018 while incarcerated.  The IRS has intentionally failed to process his 2016

2   tax return.  Layfield learned in late August that the IRS has curiously located his 2016 tax return

3   filing 8 days after he was released from prison.  During that gap period from March to August,

4   Aveis tried to force Layfield to plead guilty to failure to file a tax return.  Layfield literally laughed

5   at this ridiculous charge because Layfield knew he could ultimately expose Aveis for the liar that he

6   is.  Layfield's 2016 tax return still hasn't been processed and now Layfield is working with the

7   Taxpayer Advocate department and through FOIA requests is beginning to discovery the

8   government's misconduct.

9         While Layfield was incarcerated, he attempted to reach out to Avery to discuss these issues

10  and Avery refused to communicate with Layfield and basically said "Talk to my lawyer"  The same

11  lawyer who has intentionally harmed Layfield.  During the last 4 months, no effort has been made

12  to file Layfield's 2017 tax returns by the appointed advisors.  Since Layfield clearly doesn't want to

13  give the government an opportunity to bring additional false charges against Layfield, Layfield is

14  going to file his 2017 tax returns himself.  This court should protect Layfield and issue an Order

15  permitting Layfield to file his own tax returns nunc pro tunc.  Layfield cannot simply sit by while

16  these purported professionals fail to comply with Layfield's obligations.  This is simply

17  preposterous.

18

19

20         **E.    Golden Serves a Deposition Notice Before Discovery is Opened**

21         Attached as Exhibit 2 is the Deposition Notice Served by Golden on September 24, 2018.

22  The Deposition Notice was served in violation of Rule 26(d) of the Federal Rules of Civil

23  Procedure, which prohibits parties from commencing civil discovery, absent an order of the Court

24  or by stipulation, until after the parties have met and conferred pursuant to Rule 26(f).  The parties

25  have not met and conferred pursuant to Rule 26(f).  Furthermore, Golden has not even attempted to

26  meet and confer.  Likewise, there has been no stipulation or order authorizing discovery.  See

27  Layfield Dec. ¶ 10

28

**F.    Golden Fails to Obtain an Order for a 2004 Examination**

Absent a formal stipulation for discovery or an order authorizing discovery, Golden could have sought an Order for a 2004 Examination, which he has not.  Even if Golden had sought an Order for a 2004 Examination, such Application for an Order would have been opposed for a variety of reasons.

**G.    Golden Notices Deposition Outside of Permissible Area**

Layfield is a resident of the State of Delaware.  Golden is aware of this.  In fact, Golden's firm has already participated in a deposition of Layfield at the MDCLA in July.  Following that deposition, Layfield offered to work with Golden's firm and Trustee Avery to cooperate with any reasonable efforts to resolve any needs for discovery.  During that deposition, Golden's firm was made aware, under oath, that Layfield was a resident of Delaware.  Furthermore, Layfield is currently on house arrest in Delaware.  In an obvious sham and ploy to portray Layfield as not cooperating with the Trustee's efforts, Golden intentionally noticed a deposition to occur on 10 days notice across the country in Costa Mesa.  Golden knows that his notice is improper, failed to meet and confer to coordinate schedules and is simply trying to harass Layfield through improper tactics.  Under numerous rules, include Rule 45, Layfield's deposition must occur within 100 miles of his residence.  Clearly, Golden has violated this rule and should be sanctioned.

**II.    LEGAL ARGUMENT**

**A.    Layfield is a Resident of Delaware and Entitled to Delaware Bankruptcy Exemptions**

**1.    Layfield's Only Assets are Held by Others**

Layfield's only assets are currently held by others.  See Layfield Dec. at ¶ 9.  As this court is aware, Layfield is a resident of Delaware and Delaware would be the only proper forum for a Layfield bankruptcy if one were to ever properly commence.  However, during this gap period, Layfield is entitled to the protection of the automatic stay.  Furthermore, despite the improper imposition of an Interim Trustee, it is irrefutable that Layfield can take advantage of what's

1    commonly referred to as the California "wildcard" exemption.  This exemption is set forth in

2    California Code of Civil Procedure Section 703.140.  In summary, since Layfield does not own a

3    home and is not permitted to take a Homestead Exemption, Layfield is entitled to approximately

4    $28,000 of assets that are exempt from the Trustee.  As this court is aware and as the Trustee is

5    aware, Layfield was released with nothing more than the clothes on his back, no money and no

6    employment.  Layfield is still unemployed.  Layfield became aware that certain individuals were

7    holding Layfield's property improperly.  Those individuals are John Jansheski and Michel LeBlanc.

8    The total value of the property held by these individuals is approximately $28,000.  $23,000 by

9    LeBlanc and approximately $5,000 by Jansheski.  Layfield demanded return of that property.

10    Those individuals failed to respond and Layfield was forced to filed Motions for Violation of the

11    Automatic Stay.  See Docket #s 41 and 42.  Those motions are ripe for decision.  Layfield has

12    recently learned that Avery, by and through Golden has been improperly communicating with these

13    individuals and has been secretly advising them that they are not required to comply with

14    Layfield's request for turnover.  In fact, Layfield has learned that Avery has been adamant that they

15    not turn over this property.  These actions by Avery are oppressive, illegal and improper.  Layfield

16    is entitled to his exemption property regardless of who currently maintains possession.  Layfield's

17    actions are not only proper, but legal and required.  These individuals, including Avery should be

18    sanctioned by the court and a protective order should issue preventing Avery and others from

19    interfering with Layfield's exemption property.  Layfield is suffering a massive hardship and needs

20    this property to survive.  Continuing to allow this type of oppression is simply not what the

21    bankruptcy process was designed to accomplish.

22        Layfield has two vehicles and a trailer in Costa Rica.  A Mercedes Sprinter Van, a Ram

23    3500 Truck and a Horse Trailer.  As a result of Layfield's travel restrictions, he is unable to access

24    those vehicles.  Furthermore, because Layfield has been unable to pay the import taxes on those

25    assets, they are currently unable to be registered and/or sold.  Layfield believes the truck and trailer

26    have been seized by Costa Rican customs for failure to pay the taxes in the port of Limon and the

27    Sprinter is possibly in San Jose.  Clearly if Layfield had millions of dollars hidden in secret bank

28    accounts, he would have been able to pay the tax to release these assets from customs.  These assets

1    will not be part of Layfield's wildard or any other exemption and will most likely be abandoned.

2

3            **2.    Layfield is Entitled to Protection from the Automatic Stay Even Though
                    He is not a Proper Debtor.  Otherwise, an Involuntary Petition Would
                    Be Unduly Burdensome and Oppressive**

4

5            Even though this bankruptcy is not voluntary and is subject to dispute, Layfield is still

6    protected by the Automatic Stay.  Avery's interference with Layfield's exemption property is not

7    only wrongful, but is sanctionable.  This court must issue a protective order preventing further

8    violations of the automatic stay by Avery and others.

9

10           **3.    Janshseski, LeBlanc and Avery Have Violated the Automatic Stay by
                    Attempting to Wrongfully Exercise Dominion and Control Over
                    Layfield's Assets**

11

12           This court is in receipt of Layfield's motions regarding Jansheski and LeBlanc.  It may be

13   useful to issue a protective order prior to the hearing date so Jansheski and LeBlanc are rightfully

14   informed that Avery's comments to them are improper.  Layfield needs his exemption property to

15   survive and this court should protect Layfield.

16

17   **B.    Legal Standard For Discovery Pursuant to an Involuntary Petition**

18           To be clear, contrary to the Petitioner's assumption in demanding as oral deposition and

19   production of documents, the filing of an involuntary petition does not automatically make Layfield

20   a debtor in this matter.  *See In re Selectron Mgmt. Corp.,* 2010 Bankr. LEXIS 3361 at *7 (Bankr.

21   E.D.N.Y. Sep. 27 2010)  ("If the ***alleged debtor*** does not contest the involuntary petition, then the

22   Court must enter an order for relief.  However, if the involuntary petition is contested and a motion

23   to dismiss is not granted, then the Court shall hold a trial as to whether or not it will enter an order

24   for relief.") (emphasis added) (citations omitted).  This is because Layfield will not become a

25   proper debtor unless and until the Court enters an order for relief under 11 U.S.C. § 303(h).  That

26   has not and cannot happen at this time because Layfield has filed a timely motion to dismiss the

27   Involuntary Petition.  11 U.S.C. § 303(h)  ("If the petition is not timely controverted, the court shall

28   order relief against the debtor in an involuntary case...").  Because Layfield has not been

1   determined to be a proper debtor, Petitioners should not be permitted to take discovery nor take a

2   Rule 2004 Examination and obtain any of Layfield's financial information nor should they be

3   entitled to full bankruptcy disclosures.  This is all somewhat of a fiction since Petitioners must

4   freely admit that they have had unfettered access to the L&B bank accounts for over a year and

5   have had access to Layfield's USAA bank accounts since at least January 2018.  All of these

6   records show Layfield is not hiding any money.

7

8       **C.    No Discovery Order Has Been Issued**

9       There has been no Rule 26 conference and no Discovery Order issued pursuant Rule 7026.

10  As a result, no discovery is permitted.  The basic notion of not permitting a creditor to put the cart

11  before the horse with respect o an involuntary petition is proven by the framework of Rule 2004 of

12  the Bankruptcy Rules of Procedure and Sections 341 and 343 of the Bankruptcy Code.  To wit,

13  Rule 2004 of the Bankruptcy Rules of Procedure permits "[t]he examination of an entity under this

14  rule or of the debtor under § 343 of the Code . . ." Fed. R. Bankr. P. 2004(b).  Section 343 of the

15  Bankruptcy Code provides, in turn, that "the debtor shall appear and submit to examination under

16  oath at the meeting of creditors under section 341(a) of this title." 11 U.S.C. § 343.  Section 341(a)

17  mandates that any such examination occur at a meeting of creditors ***after the entry of an order for***

18  ***relief.*** 11. U.S.C. § 341(a) ("Within a reasonable time after the order for relief in a case under this

19  title, the United States trustee shall convene and preside at a meeting of creditors.").  Thus, these

20  provisions read together explicitly provide that a Rule 2004 examination may only come after an

21  entry of an order for relief, *i.e.,* a determination of whether a party is a proper debtor.

22       To allow a regularly noticed deposition under Rule 7026 or a Rule 2004 examination at this

23  time would permit the Petitioners, who have no legitimate basis to attempt to place Layfield in

24  involuntary bankruptcy, to obtain an extraordinary amount of information and place a huge burden

25  on Layfield, who is trying to piece his life back together, to further oppress Layfield.  As detailed

26  extensively in Layfield's motion to dismiss, Petitioners in this case cannot meet the requirements

27  necessary to place Layfield in involuntary bankruptcy as all potential claims are subject to a bona

28  fide dispute.  Further still, the evidence shows this case was filed in a bad faith effort to harass

1    Layfield and oppress Layfield and his family.

2         Federal Rule of Civil Procedure 26, which governs discovery, is incorporated into adversary

3    proceedings through Federal Rule of Bankruptcy Procedure 7026, and Bankruptcy Rule 1018 in

4    turn applies Bankruptcy Rule 7026 to proceedings contesting involuntary bankruptcy petitions.

5    Bankruptcy courts are vested with "the sound discretion to decide civil discovery matters." *Walton*

6    *v. Applegate* (In Re Applegate), 2012 Bankr. LEXIS 2461 at *7 (Bankr. S.D. Ga. Mar, 2012).

7    "This discretion may be used to protect a party from annoyance, embarrassment, oppression, or

8    under burden or expense . . . " *Id.* at *8.  Moreover, a bankruptcy court has wide discretion to

9    determine the manner and course of discovery, with respect to an involuntary petition. *In re*

10   *Analytical Systems, Inc.,* 71 B.R. 408, 410 (Bankr. N.D. Ga. 1987); *see also Banco Popular de*

11   *Puerto Rico v. Colon* (In re Colon), 2008 Bankr. LEXIS 3960 at *14 (B.A.P. 1st Cir. Nov. 21, 2008)

12   (holding that it was not an abuse of discretion to deny the petitioning creditor the opportunity to

13   conduct discovery in involuntary proceedings).  Because of the scope of the examination and the

14   lack of procedural safeguards, the Court should protect against permitting such an examination

15   where there is lack of legitimate purpose or the potential for abuse. *See Snyder v. Society Bank,*

16   181 B.R. 40, 42 (S.D. Tex. 1994), *aff'd sub nom,*  52 F.3d 106 (5th Cir. 1995)("Examinations under

17   Rule 2004 cannot be used to harass or oppress.").

18        An involuntary bankruptcy is an extraordinary remedy that must be closely scrutinized. *In*

19   *re Reid,* 773 F.2d 945, 946 (7th Cir. 1985)("[T]he filing of an involuntary petition is an extreme

20   remedy with serious consequences to the alleged debtor, such as loss of credit standing, inability to

21   transfer assets and carry on business affairs, and public embarrassment.").  Pursuant to Bankruptcy

22   Rule 1013(a), when the purported debtor contests an involuntary petition, "[t]he court shall

23   determine the issues of a contested petition at the earliest practicable time and forthwith enter an

24   order for relief, dismiss the petition, or enter any other appropriate order."  The purpose of this rule

25   is "the avoidance, to the extent possible, of the consequences of the involuntary petition in the

26   absence of the entry of an order for relief[,]" which often include "loss of credit standing, a chilling

27   effect on the willingness of creditors and third parties to transact business in the ordinary course,

28   and possible public embarrassment." *In re Immudyne, Inc.,* 218 B.R. at 862. "The rule 'recognizes

1     that the interests of both the debtor and the creditors are best served by prompt resolution of the

2     issues raised by an involuntary bankruptcy petition." *In re Taub*, 439 B.R. 261, 270 (Bankr.

3     E.D.N.Y. 2010).

4            This matter has been made even more complicated because Aveis attempted to use the

5     existence of this Involuntary Petition that Layfield was "an Economic Danger to the Community"

6     and thus should be denied bond. Aveis misrepresented the status of this Petition and the legal

7     effect. Aveis was successful in tricking Judge Fitzgerald into believing something was amiss and

8     that Layfield was still hiding millions of dollars in assets. Layfield is in the process of seeking to

9     modify his Release Order now that he is able to compile the appropriate evidence to demonstrate

10    that Aveis once again lied in furtherance of his conspiracy to violate Layfield's civil rights.

11          By ruling on Layfield's motion to dismiss first, this Court can fulfill its Bankruptcy Rule

12    1013(a) obligation to "determine the issues of a contested petition ***at the earliest practicable time***

13    and fortwith enter an order for relief, dismiss the petition, or enter any other appropriate order."

14    (emphasis added.)

15

16    **4.**     **CONCLUSION**

17          WHEREFORE, for the reasons set forth herein, Mr. Layfield respectfully requests that this

18    Court grant this Protective Order by giving alleged debtor the protections afforded under the

19    automatic stay, while it is in effect and avoid any further unnecessary burdens on alleged debtor

20    and his family. The misconduct surrounding this case is severe and those responsible for

21    intentionally harming the debtor should be sanctioned appropriately.

22                               Respectfully submitted,

23

24    Dated: September 30, 2018

25                       *//s/ Philip J. Layfield*
                           Philip Layfield

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled (*specify*): Motion for Protective Order

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 09/30/2018_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Jeffrey Golden:  jgolden@wgllp.com
Malhar S. Pagay:  mpagay@pszjlaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 09/30/2018_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/30/2018 | Philip Layfield | /s/ Philip Layfield |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of Calif ornia.

**F 9013-3.1.PROOF.SERVICE**