1  Philip J. Layfield, Pro Se
2  1875 Connecticut Avenue N.W.
   10th Floor
3  Washington, DC 20006
   Telephone: (202) 904-4409
4  phil@maximum.global

5  Alleged Debtor

6

**FILED**

**OCT 0 9 2018**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

7          UNITED STATES BANKRUPTCY COURT

8          CENTRAL DISTRICT OF CALIFORNIA

9               LOS ANGELES DIVISION

10

11  In re:                          Case No.: 2:18-bk-15829-NB
              v.
12  Philip James Layfield,          Chapter 7

13       Debtor                     Assigned to: Hon. Neil Bason

14                                  **ALLEGED DEBTOR PHILIP J. LAYFIELD'S**
15                                  **DECLARATION IN SUPPORT OF MOTION**
                                    **TO DISMISS INVOLUNTARY CASE**
16

17                                  **HEARING DATE: OCTOBER 22, 2018**
                                    **HEARING TIME: 8:30 AM**
18                                  **COURTROOM:  1545**

19

20

21      I, Philip J. Layfield, hereby Declare as follows:

22      1.    I am the alleged debtor in this involuntary bankruptcy case and am appearing

23  pro se.

24      2.    I have personal knowledge of the facts stated herein.

25      3.    If called upon to testify, I could and would testify to the facts stated to herein.

26      4.    To the extent necessary, I reaffirm and incorporate by reference the truth of all

27  statements I have made in my previous declarations filed with this Court.

28

1    5.    On September 5, 2018, I filed an Objection to the Appointment of an Interim

2    Trustee and Employment of Jeffrey Golden's law firm via Docket # 37.  Attached as

3    an Exhibit to that Objection is the Motion for Reconsideration to Set Aside the

4    Fraudulently Obtained Default Judgment of Advocate Capital who later assigned the

5    void judgment to its alter ego and parent company Wellgen.

6    6.    Attached as Exhibit 1 is a true and correct copy of the Proof of Claim (based in

7    large part upon an executory contract) filed in my individual capacity against L&B

8    valued at $35,000,000.

9    7.    Attached as Exhibit 2 is a true and correct copy of the Proof of Claim filed on

10    behalf of Maximum Legal Holdings, LLC valued at $1,250,000, which was

11    subsequently assigned to me personally.

12    8.    Attached as Exhibit 3 is a true and correct copy of the Proof of Claim filed on

13    behalf of Maximum Legal Services, LLC (based in large part upon an executory

14    contract) valued at $175,000 and subsequently assigned to me personally.

15    9.    Attached as Exhibit 4 is a true and correct copy of the Proof of Claim filed on

16    behalf of 855 TrialLawyers.com KPO, Ltd. (based in large part upon an executory

17    contract) valued at $6,486,370 and subsequently assigned to me personally.

18    10.    Attached as Exhibit 5 is a true and correct copy of the Proof of Claim filed on

19    behalf of Layfield V, LLC (based in large part upon an executory contract) valued at

20    $360,000 and subsequently assigned to me personally.

21    11.    Attached as Exhibit 6 is a true and correct copy of the Transfer of Claim

22    assigning the Maximum Legal Holdings, LLC Proof of Claim to me personally.

23    12.    Attached as Exhibit 7 is a true and correct copy of the Transfer of Claim

24    assigning the Maximum Legal Services, LLC Proof of claim to me personally.

25    13.    Attached as Exhibit 8 is a true and correct copy of the Transfer of Claim

26    assigning the 855 TrialLawyers.com KPO, Ltd. Proof of Claim to me personally.

27    14.    Attached as Exhibit 9 is a true and correct copy of the Transfer of Claim

28    assigning the Layfield V, LLC Proof of Claim to me personally.

15.    Attached as Exhibit 10 is a true and correct copy of my Employment Contract with L&B entitling me to $1,000,000 per year in guaranteed compensation.

16.    Attached as Exhibit 11 is a true and correct copy of my Indemnification Agreement with L&B.

17.    Attached as Exhibit 12 is a true and correct copy of my request for indemnification to Pachulski which has thus far not only been ignored, but has resulted in Pachulski deliberately trying to harm me as a former officer, director and owner rather than conduct an appropriate investigation into whether indemnification should have been provided.

18.    Attached as Exhibit 13 is the termination letter provided to L&B's former IT Director demonstrating that he was terminated and advised to comply with his obligations to provide passwords and return property and further advised of his continuing obligations.  This is the same individual that Aveis attempted to use during my bond hearing to claim that I was a danger to the community.This ex-employee also illegally hacked into our computer network and downloaded a video that was illegally obtained fo the purpose of engaging in an overt act to further violoated my civil rights by keeping me illegally detained.

19.    Attached as Exhibit 14 is a true and correct copy of an email to Pachulski advising him of the steps needing to be taken in order to preserve the value of the L&B assets, which to date has gone largely ignored.  Pachulski's decision to fire all clients with the consent and insistence of Advocate Capital/Wellgen have further exacerbated the losses to L&B and its clients.

20.    Attached as Exhibit 15 is a true and correct copy of an Opposition filed to the Employment of Richard Pachulski and his law firm showing that Pachulski is willing to sacrifice the interests of his clients for his own personal financial gain.

21.    At the time of the Involuntary Petition being filed against me, I had no less than 15 creditors.

3

22.    At the time of the Involuntary Petition being filed against me, the amount
owed under the Advocate Capital Judgment was disputed as to validity and as to the
amount of the claim.  Since the underlying judgment was obtained due to lack of
service and fraud, the underlying judgment is void as a matter of law and subject to
being set aside.  Even if the judgment were valid, the amounts claimed are disputed
due to offsets, improper application of interest accruals and payments and a failure
to properly account for attorney fees and costs.  Furthermore, my claims against
Advocate and co-conspirators that resulted in my indictment and illegal detention,
which is based in large part upon false and misleading information provided, forms
the basis for a multi-million claim against those alleged wrongdoers which far
exceeds the value of any potential claim advocate may claim.

23.    At the time of the Involuntary Petition being filed against me, the amount
owed under the Alliance Legal Solutions, LLC claim is under dispute as well as the
validity of their claim.  Alliance is partially responsible for any losses that incur and
form the basis for a good faith defense against any claim by Alliance.  Furthermore,
it is unclear as to whether monies have come in from the cases subject to the lien and
whether a proper allocation of proceeds has been made with respect to interest,
principal, default interest and fees.

24.    At the time of the Involuntary Petition being filed against me, Richard
Pachulski had no viable claims against me personally and had no judgments against
me for any monetary value.  In fact, rather than being a debtor of Layfield & Barrett
or Pachulski, I am the largest creditor of Layfield & Barrett.  Furthermore, as a result
of Pachulski's misconduct along with the rest of his law firm, who are his agents, I
have significant claims against him personally which far exceeds any fictitiou claim
he purports to have perfected against me personally.  Any claim Pachulski attempts
to raise will be proven to have no basis in law, fact and certainly could never be
classified as not being subject to a bona fide dispute..

1    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowldedge, information and belief.

2

3    Dated this 8th day of September 2018 at Millsboro, DE.

4

5

6                                        By: /s/ Philip J. Layfield

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Fill in this information to identify the case:

Debtor 1 **Layfield & Barrett, APC**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Central District of California

Case number **2:17-bk-19548-NB**

## Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Philip J. Layfield
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Philip Layfield
Name

1875 K Street N.W.
Number    Street

Washington DC                    20006
City                    State            ZIP Code

Contact phone (202) 904-4409

Contact email philip.layfield@icloud.com

Where should payments to the creditor be sent? (if different)

Name

Number    Street

City    State    ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____    Filed on ____ / ____ / _____
                                                                                                    MM  /  DD  /  YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

Official Form 410                          Proof of Claim                          page 1

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

| | | |
|---|---|---|
| 6. | Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

7. **How much is the claim?**  $ _____ 35,000,000.00 . Does this amount include interest or other charges?

  ☑ No

  ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

  Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

  Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

  Limit disclosing information that is entitled to privacy, such as health care information.

  unpaid wages, money loaned, etc.  See Attachment A

9. **Is all or part of the claim secured?**

  ☑ No

  ☐ Yes.  The claim is secured by a lien on property.

  **Nature of property:**

  ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

  ☐ Motor vehicle

  ☐ Other. Describe: _____

  **Basis for perfection:** _____

  Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

  Value of property:                       $ _____
  Amount of the claim that is secured:     $ _____

  Amount of the claim that is unsecured: $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

  Amount necessary to cure any default as of the date of the petition:    $ _____

  Annual Interest Rate (when case was filed) _____%
  ☐ Fixed
  ☐ Variable

10. **Is this claim based on a lease?**

  ☑ No

  ☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____

11. **Is this claim subject to a right of setoff?**

  ☑ No

  ☐ Yes. Identify the property: _____

| | |
|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ No ☑ Yes. *Check one:* **Amount entitled to priority** |

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). $_____

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). $_____

☑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). $          12,475.00

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. $_____

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

| **Part 3:** | **Sign Below** |
|---|---|

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   08/14/2018
                  MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Philip | James | Layfield |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | _____ |
|---|---|

| Company | _____ |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer |

| Address | **1875 K Street N.W.** |
|---|---|
| | Number        Street |
| | **Washington    DC**                            **20006** |
| | City                                State    ZIP Code |

| Contact phone | **(202) 904-4409** | Email | _____ |
|---|---|---|---|

# EXHIBIT 2

| Fill in this information to identify the case: |
|---|

Debtor 1  **Layfield & Barrett, APC**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Central District of California ▼

Case number  **2:17-bk-19548-NB**

## Official Form 410

# Proof of Claim
12/15

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

**Maximum Legal Holdings, LLC**
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☐ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

**Philip Layfield**
Name

**1875 K Street N.W.**
Number          Street

**Washington DC          20006**
City               State          ZIP Code

Contact phone  **(202) 904-4409**

Contact email  **philip.layfield@icloud.com**

Where should payments to the creditor be sent? (if different)

Name

Number          Street

City               State          ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☐ Yes.  Claim number on court claims registry (if known) _____
Filed on ___/___/___
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6.  Do you have any number you use to identify the debtor?**

☐ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

---

**7.  How much is the claim?**    $ _____ 1,250,000.00 .  **Does this amount include interest or other charges?**

☐ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8.  What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

legal fees owed pursuant to Pineda settlement

---

**9.  Is all or part of the claim secured?**

☐ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $ _____

**Amount of the claim that is secured:**    $ _____

**Amount of the claim that is unsecured:**    $ _____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $ _____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☐ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $ _____

---

**11. Is this claim subject to a right of setoff?**

☐ No

☐ Yes. Identify the property: _____

---

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☐ Yes. *Check one:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).　$_____

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).　$_____

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).　$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).　$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).　$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.　$_____

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:**　**Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date　08/14/2018
　　　　　　　　　　MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Philip<br>First name | James<br>Middle name | Layfield<br>Last name |
| Title | Manager | | |
| Company | Maximum Legal Holdings, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1875 K Street N.W. | | |
| | Number　　Street | | |
| | Washington　DC | 20006 | |
| | City | State　ZIP Code | |
| Contact phone | (202) 904-4409 | Email phil@maximum.global | |

| Print | Save As... | Add Attachment | | Reset |
|---|---|---|---|---|

# EXHIBIT 3

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Layfield & Barrett, APC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:17-bk-19548-NB |

Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Maximum Legal Holdings, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☐ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Philip Layfield
Name

1875 K Street N.W.
Number        Street

Washington DC              20006
City              State              ZIP Code

Contact phone (202) 904-4409

Contact email philip.layfield@icloud.com

Where should payments to the creditor be sent? (if different)

_____
Name

_____
Number        Street

_____
City              State              ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☐ Yes. Who made the earlier filing? _____

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____ |

| | |
|---|---|
| 7. **How much is the claim?** | $_____ 1,250,000.00. **Does this amount include interest or other charges?**<br>☐ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>legal fees owed pursuant to Pineda settlement |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☐ No<br>☐ Yes.  The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**                          $_____<br>**Amount of the claim that is secured:**    $_____<br><br>**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $_____<br><br>**Annual Interest Rate** (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☐ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____ 108,000.00 |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☐ No<br>☐ Yes. Identify the property: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ No ☐ Yes. *Check one:* | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)( 2 ) that applies. | $_____100,000.00 |
| | * Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

**Part 3:**   **Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   08/14/2018
                   MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Philip | James | Layfield |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Manager | | |
| Company | Maximum Legal Holdings, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1875 K Street N.W. | | |
| | Number          Street | | |
| | Washington   DC | | 20006 |
| | City | State          ZIP Code | |
| Contact phone | (202) 904-4409 | Email phil@maximum.global | |

Print          Save As...          Add Attachment                     Reset

# EXHIBIT 4

Fill in this information to identify the case:

Debtor 1    Layfield & Barrett, APC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Central District of California

Case number  2:17-bk-19548-NB

## Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

855TrialLawyers.com KPO, Ltd.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☐ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

855 TrialLawyers.com c/o MLS, LLC
Name

382 N.E. 191st Street, #42308
Number          Street

Miami                 FL            33179
City                     State          ZIP Code

Contact phone  866.820.9690

Contact email  info@maximumlegalservices.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

— — — — — — — — — — — — — — — — — — — — — — — —

Where should payments to the creditor be sent? (if different)

Name

Number          Street

City                     State          ZIP Code

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☐ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
                MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☐ Yes.  Who made the earlier filing? _____

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| 6. | Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |
|---|---|---|

| 7. | How much is the claim? | $_____ 6,486,370.00 . Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|---|

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br><u>Services Performed from September 2016 through June 2017</u> |
|---|---|---|

| 9. | Is all or part of the claim secured? | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**                    $_____<br>**Amount of the claim that is secured:**    $_____<br><br>**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**   $_____<br><br>**Annual Interest Rate (when case was filed)** _____%<br>☐ Fixed<br>☐ Variable |
|---|---|---|

| 10. | Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____ |
|---|---|---|

| 11. | Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |
|---|---|---|

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

|  | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    01/21/2108
                    MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Philip          James          Layfield |
| | First name      Middle name      Last name |
| Title | Director |
| Company | c/o Maximum Legal Services, LLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 382 NE 191st Street, #42308 |
| | Number          Street |
| | Miami                          FL          33179 |
| | City                           State        ZIP Code |
| Contact phone | 866.820.9690          Email info@maximumlegalservices.com |

855TrialLawyers.com KPO, Ltd.
Supporting Schedules for Proof of Claim

Amount Due as of June 1, 2017                                      $1,686,370.00

2 year termination provision (Approximate $200,000 per month)         $4,800,000.00

                                        Total          **$6,486,370.00**

# EXHIBIT 5

---

**Fill in this information to identify the case:**

Debtor 1    Layfield & Barrett, APC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number   2:17-bk-19548-NB

---

Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

---

**Part 1:    Identify the Claim**

**1.  Who is the current creditor?**

Maximum Legal Holdings, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2.  Has this claim been acquired from someone else?**

☐ No
☐ Yes.  From whom? _____

**3.  Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Philip Layfield
Name

1875 K Street N.W.
Number       Street

Washington DC                    20006
City                State              ZIP Code

Contact phone (202) 904-4409

Contact email philip.layfield@icloud.com

Where should payments to the creditor be sent? (if different)

Name

Number       Street

City                State              ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _

**4.  Does this claim amend one already filed?**

☐ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
         MM  / DD  / YYYY

**5.  Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☐ Yes.  Who made the earlier filing? _____

---

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**   $_____1,250,000.00. **Does this amount include interest or other charges?**

☐ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

legal fees owed pursuant to Pineda settlement _____

**9. Is all or part of the claim secured?**

☐ No

☐ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:**   $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☐ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____108,000.00

**11. Is this claim subject to a right of setoff?**

☐ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☐ Yes. Check one:

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other. Specify subsection of 11 U.S.C. § 507(a)( 2 ) that applies.

**Amount entitled to priority**

$_____

$_____

$_____

$_____

$_____

$_____

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    08/14/2018
                    MM / DD / YYYY

_Signature_

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Philip | James | Layfield |
| | First name | Middle name | Last name |
| Title | Manager | | |
| Company | Maximum Legal Holdings, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1875 K Street N.W. | | |
| | Number    Street | | |
| | Washington    DC | | 20006 |
| | City | State | ZIP Code |
| Contact phone | (202) 904-4409 | Email phil@maximum.global | |

---

| Print | Save As... | Add Attachment | Reset |
|---|---|---|---|

# EXHIBIT 6

B 210A (Form 210A) (12/09)

# UNITED STATES BANKRUPTCY COURT

### Central District of California

In re LAYFIELD & BARRETT, APC _____,    Case No. 2:17-bk-19548-NB

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

Philip James Layfield _____         Maximum Legal Holdings, LLC _____
    Name of Transferee                              Name of Transferor

Name and Address where notices to transferee     Court Claim # (if known): _____
should be sent:                                   Amount of Claim:  $1,250,000.00
   1875 Connecticut Avenue N.W., 10th Floor       Date Claim Filed:   08/14/2018
   Washington DC 20009

Phone: 2029044409 _____                      Phone: 2029404409 _____
Last Four Digits of Acct #:    8140               Last Four Digits of Acct. #: _____

Name and Address where transferee payments
should be sent (if different from above):

Phone: _____
Last Four Digits of Acct #:_____

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By:_____         Date: 09/04/2018 _____
        Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

# EXHIBIT 7

B 210A (Form 210A) (12/09)

# UNITED STATES BANKRUPTCY COURT

### Central District of California

In re LAYFIELD & BARRETT, APC                ,                Case No.  2:17-bk-19548-NB

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee
hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other
than for security, of the claim referenced in this evidence and notice.

| Philip James Layfield | Maximum Legal Services, LLC |
|---|---|
| Name of Transferee | Name of Transferor |

Name and Address where notices to transferee
should be sent:
  1875 Connecticut Avenue N.W., 10th Floor
  Washington DC 20009

Court Claim # (if known): _____
Amount of Claim:   $175,000.00
Date Claim Filed:   09/01/2018

Phone:  2029044409
Last Four Digits of Acct #:        8140

Phone:  2029404409
Last Four Digits of Acct. #: _____

Name and Address where transferee payments
should be sent (if different from above):


Phone: _____
Last Four Digits of Acct #:_____


I declare under penalty of perjury that the information provided in this notice is true and correct to the
best of my knowledge and belief.

By:_____        Date: 09/04/2018
        Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

# EXHIBIT 8

B 210A (Form 210A) (12/09)

# UNITED STATES BANKRUPTCY COURT

### Central District of California

In re LAYFIELD & BARRETT, APC_____,        Case No. 2:17-bk-19548-NB

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

Philip James Layfield_____        855 Triallawyers.com KPO_____
Name of Transferee                      Name of Transferor

Name and Address where notices to transferee     Court Claim # (if known): _____
should be sent:                                  Amount of Claim:    $6,486,370.00
  1875 Connecticut Avenue N.W., 10th Floor       Date Claim Filed:    09/01/2018
  Washington DC 20009

Phone: 2029044409_____
Last Four Digits of Acct #:    8140        Phone: 2029404409_____
                                           Last Four Digits of Acct. #: _____

Name and Address where transferee payments
should be sent (if different from above):

Phone: _____
Last Four Digits of Acct #:_____

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____        Date: 09/04/2018_____
      Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

# EXHIBIT 9

B 210A (Form 210A) (12/09)

# UNITED STATES BANKRUPTCY COURT

### Central District of California

In re LAYFIELD & BARRETT, APC                ,                Case No. 2:17-bk-19548-NB

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

Philip James Layfield                                     Layfield V, LLC
_____                         _____
Name of Transferee                                      Name of Transferor

Name and Address where notices to transferee          Court Claim # (if known): _____
should be sent:                                        Amount of Claim:    $360,000.00
  1875 Connecticut Avenue N.W., 10th Floor             Date Claim Filed:    09/01/2018
  Washington DC 20009

Phone:  2029044409                                     Phone:  2029404409
Last Four Digits of Acct #:         8140               Last Four Digits of Acct. #: _____

Name and Address where transferee payments
should be sent (if different from above):


Phone: _____
Last Four Digits of Acct #:_____


I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____          Date: 09/04/2018
        Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

# EXHIBIT 10

**LAYFIELD & BARRETT, APC**

525 S. Douglas Suite 280
El Segundo, CA

December 11, 2015

Philip J. Layfeld
31142 Via Colinas
Coto de Caza, CA 92679

Dear Mr. Layfeld:

Layfield & Barrett, APC, a California professional corporation (the "Company"), is pleased to offer you continued employment with the Company on the terms described below.

    1.    **Position**. You will remain your full-time position as CEO, Managing Partner and Director with no reporting supervisor. Your primary duties will be managing the firm's overall operations and lead trial attorney. By signing this letter, you confirm with the Company that you are under no contractual or other legal obligations that would prohibit you from performing your duties with the Company.

    2.    **Compensation and Employee Benefits**. You will be paid a salary at the rate of $1,000,000 per year, payable on the Company's regular payroll dates. As a regular employee of the Company you will be eligible to participate in a number of Company-sponsored benefits, which are described in our online employee portal.

        (a) Car Allowance. You will be provide a monthly car allowance of $2,500 per month.

        (b) Association Dues. You will be reimbursed for all bar association dues and other related organizations

    3.    **Employment Relationship**. Employment with the Company is for one year and automatically renews for an additional year unless terminated in writing prior to the expiration of the current year. If you are terminated without cause or you resign for cause, then a severance payment of 24 months will be due and payable as regular salary payments for 24 months following your separation.

    4.    **Outside Activities**. While you render services to the Company, you agree that you will not engage in any other employment, consulting or other business activity without the written consent of the Company.

    5.    **Taxes, Withholding and Required Deductions**. All forms of compensation referred to in this letter are subject to all applicable taxes, withholding and any other deductions required by applicable law.

6.    **Miscellaneous.**

(a) **Governing Law.** The validity, interpretation, construction and performance of this letter, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of state of California, without giving effect to principles of conflicts of law.

(b) **Entire Agreement.** This letter sets forth the entire agreement and understanding of the parties relating to the subject matter herein and supersedes all prior or contemporaneous discussions, understandings and agreements, whether oral or written, between them relating to the subject matter hereof.

(c) **Counterparts.** This letter may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and all of which together shall constitute one and the same agreement. Execution of a facsimile copy will have the same force and effect as execution of an original, and a facsimile signature will be deemed an original and valid signature.

(d) **Electronic Delivery.** The Company may, in its sole discretion, decide to deliver any documents or notices related to this Agreement, securities of the Company or any of its affiliates or any other matter, including documents and/or notices required to be delivered to you by applicable securities law or any other law or the Company's Certificate of Incorporation or Bylaws by email or any other electronic means. You hereby consent to (i) conduct business electronically (ii) receive such documents and notices by such electronic delivery and (iii) sign documents electronically and agree to participate through an on-line or electronic system established and maintained by the Company or a third party designated by the Company.

*[Signature Page Follows]*

If you wish to accept this offer, please sign and date both the enclosed duplicate original of this letter and the enclosed Confidential Information and Invention Assignment Agreement and return them to me.  As required, by law, your employment with the Company is also contingent upon your providing legal proof of your identity and authorization to work in the United States.  This offer, if not accepted, will expire at the close of business on December 15, 2015.

We look forward to having you join us no later than immediately.

Very truly yours,

LAYFIELD & BARRETT, APC

By: _____
                            (Signature)

Name:  Philip Layfield
_____

Title: Director
_____

ACCEPTED AND AGREED:

_____PHILIP LAYFIELD_____
(Signature)
_____
Date

Anticipated Start Date:  December 11, 2015

-3-

# EXHIBIT 11

Layfield & Barrett, APC

## INDEMNIFICATION AGREEMENT

This Indemnification Agreement (this "Agreement") is made as of December 11, 2015, by and between Layfield & Barrett, APC, a California professional corporation (the "Company"), and Philip Layfield ("Indemnitee").

### RECITALS

The Company and Indemnitee recognize the increasing difficulty in obtaining liability insurance for directors, officers and key employees, the significant increases in the cost of such insurance and the general reductions in the coverage of such insurance. The Company and Indemnitee further recognize the substantial increase in corporate litigation in general, subjecting directors, officers and key employees to expensive litigation risks at the same time as the availability and coverage of liability insurance has been severely limited. Indemnitee does not regard the current protection available as adequate under the present circumstances, and Indemnitee may not be willing to continue to serve in Indemnitee's current capacity with the Company without additional protection. The Company desires to attract and retain the services of highly qualified individuals, such as Indemnitee, and to indemnify its directors, officers and key employees so as to provide them with the maximum protection permitted by law.

### AGREEMENT

In consideration of the mutual promises made in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Company and Indemnitee hereby agree as follows:

1.    **Indemnification.**

   (a) **Third-Party Proceedings.** To the fullest extent permitted by applicable law, as such may be amended from time to time, the Company shall indemnify Indemnitee, if Indemnitee was, is or is threatened to be made, a party to or a participant (as a witness or otherwise) in any Proceeding (other than a Proceeding by or in the right of the Company to procure a judgment in the Company's favor), against all Expenses, judgments, fines and amounts paid in settlement (if such settlement is approved in advance by the Company, which approval shall not be unreasonably withheld) actually and reasonably incurred by Indemnitee in connection with such Proceeding if Indemnitee acted in good faith and in a manner Indemnitee reasonably believed to be in or not opposed to the best interests of the Company and, in the case of a criminal Proceeding, had no reasonable cause to believe Indemnitee's conduct was unlawful as charged or threatened to be charged.

**(b) Proceedings By or in the Right of the Company**. To the fullest extent permitted by applicable law, the Company shall indemnify Indemnitee, if Indemnitee was, is or is threatened to be made a party to or a participant (as a witness or otherwise) in any Proceeding by or in the right of the Company to procure a judgment in the Company's favor, against all Expenses actually and reasonably incurred by Indemnitee in connection with such Proceeding if Indemnitee acted in good faith and in a manner Indemnitee reasonably believed to be in or not opposed to the best interests of the Company, except that no indemnification shall be made in respect of any claim, issue or matter as to which Indemnitee shall have been finally adjudicated by court order or judgment to be liable to the Company unless and only to the extent that the Court of Chancery or the court in which such Proceeding is or was pending shall determine upon application that, in view of all the circumstances of the case, Indemnitee is fairly and reasonably entitled to indemnity for such expenses which such court shall deem proper.

**(c) Success on the Merits**. To the fullest extent permitted by applicable law and to the extent that Indemnitee has been successful on the merits or otherwise in defense of any Proceeding referred to in Section 1(a) or Section 1(b) or the defense of any claim, issue or matter therein, in whole or in part, the Company shall indemnify Indemnitee against all Expenses actually and reasonably incurred by Indemnitee in connection therewith. Without limiting the generality of the foregoing, if Indemnitee is successful on the merits or otherwise as to one or more but less than all claims, issues or matters in a Proceeding, the Company shall indemnify Indemnitee against all Expenses actually and reasonably incurred by Indemnitee in connection with such successfully resolved claims, issues or matters to the fullest extent permitted by applicable law. If any Proceeding is disposed of on the merits or otherwise (including a disposition without prejudice), without (i) the disposition being adverse to Indemnitee, (ii) an adjudication that Indemnitee was liable to the Company, (iii) a plea of guilty by Indemnitee, (iv) an adjudication that Indemnitee did not act in good faith and in a manner Indemnitee reasonably believed to be in or not opposed to the best interests of the Company, and (v) with respect to any criminal Proceeding, an adjudication that Indemnitee had reasonable cause to believe Indemnitee's conduct was unlawful, Indemnitee shall be considered for the purposes hereof to have been wholly successful with respect thereto.

**(d) Witness Expenses**. To the fullest extent permitted by applicable law and to the extent that Indemnitee is a witness or otherwise asked to participate in any Proceeding to which Indemnitee is not a party, the Company shall indemnify Indemnitee against all Expenses actually and reasonably incurred by Indemnitee in connection with such Proceeding.

2.    **Indemnification Procedure**.

**(a) Advancement of Expenses**. To the fullest extent permitted by applicable law, the Company shall advance all Expenses actually and reasonably incurred by Indemnitee in connection with a Proceeding within thirty (30) days after receipt by the Company of a statement requesting such advances from time to time,

-2-

whether prior to or after final disposition of any Proceeding. Such advances shall be unsecured and interest free and shall be made without regard to Indemnitee's ability to repay the Expenses and without regard to Indemnitee's ultimate entitlement to indemnification under the other provisions of this Agreement. Indemnitee shall be entitled to continue to receive advancement of Expenses pursuant to this Section 2(a) unless and until the matter of Indemnitee's entitlement to indemnification hereunder has been finally adjudicated by court order or judgment from which no further right of appeal exists. Indemnitee hereby undertakes to repay such amounts advanced only if, and to the extent that, it ultimately is determined that Indemnitee is not entitled to be indemnified by the Company under the other provisions of this Agreement. Indemnitee shall qualify for advances upon the execution and delivery of this Agreement, which shall constitute the requisite undertaking with respect to repayment of advances made hereunder and no other form of undertaking shall be required to qualify for advances made hereunder other than the execution of this Agreement.

(b) **Notice and Cooperation by Indemnitee.** Indemnitee shall promptly notify the Company in writing upon being served with any summons, citation, subpoena, complaint, indictment, information or other document relating to any Proceeding or matter for which indemnification will or could be sought under this Agreement. Such notice to the Company shall include a description of the nature of, and facts underlying, the Proceeding, shall be directed to the Chief Executive Officer of the Company and shall be given in accordance with the provisions of Section below. In addition, Indemnitee shall give the Company such additional information and cooperation as the Company may reasonably request. Indemnitee's failure to so notify, provide information and otherwise cooperate with the Company shall not relieve the Company of any obligation that it may have to Indemnitee under this Agreement, except to the extent that the Company is adversely affected by such failure.

(c) **Determination of Entitlement.**

(i) **Final Disposition.** Notwithstanding any other provision in this Agreement, no determination as to entitlement to indemnification under this Agreement shall be required to be made prior to the final disposition of the Proceeding.

(ii) **Determination and Payment.** Subject to the foregoing, promptly after receipt of a statement requesting payment with respect to the indemnification rights set forth in Section 1, to the extent required by applicable law, the Company shall take the steps necessary to authorize such payment in the manner set forth in Section 145 of the Delaware General Corporation Law. The Company shall pay any claims made under this Agreement, under any statute, or under any provision of the Company's Certificate of Incorporation or Bylaws providing for indemnification or advancement of Expenses, within thirty (30) days after a written request for payment thereof has first been received by the Company, and if such claim is not paid in full within such thirty (30) day-period, Indemnitee may, but need not, at

any time thereafter bring an action against the Company in the Delaware Court of Chancery to recover the unpaid amount of the claim and, subject to Section 12, Indemnitee shall also be entitled to be paid for all Expenses actually and reasonably incurred by Indemnitee in connection with bringing such action. It shall be a defense to any such action (other than an action brought to enforce a claim for advancement of Expenses under Section 2(a)) that Indemnitee has not met the standards of conduct which make it permissible under applicable law for the Company to indemnify Indemnitee for the amount claimed. In making a determination with respect to entitlement to indemnification hereunder, the person or persons or entity making such determination shall presume that Indemnitee is entitled to indemnification under this Agreement and the Company shall have the burden of proof to overcome that presumption with clear and convincing evidence to the contrary. The termination of any Proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent, shall not, of itself, create a presumption that Indemnitee did not act in good faith and in a manner which Indemnitee reasonably believed to be in or not opposed to the best interests of the Company, or, in the case of a criminal Proceeding, that Indemnitee had reasonable cause to believe that Indemnitee's conduct was unlawful. In addition, it is the parties' intention that if the Company contests Indemnitee's right to indemnification, the question of Indemnitee's right to indemnification shall be for the court to decide, and neither the failure of the Company (including its Board of Directors, any committee or subgroup of the Board of Directors, independent legal counsel, or its stockholders) to have made a determination that indemnification of Indemnitee is proper in the circumstances because Indemnitee has met the applicable standard of conduct required by applicable law, nor an actual determination by the Company (including its Board of Directors, any committee or subgroup of the Board of Directors, independent legal counsel, or its stockholders) that Indemnitee has not met such applicable standard of conduct, shall create a presumption that Indemnitee has or has not met the applicable standard of conduct. If any requested determination with respect to entitlement to indemnification hereunder has not been made within ninety (90) days after the final disposition of the Proceeding, the requisite determination that Indemnitee is entitled to indemnification shall be deemed to have been made.

(iii) **Change of Control**. Notwithstanding any other provision in this Agreement, if a Change of Control has occurred, any person or body appointed by the Board of Directors in accordance with applicable law to review the Company's obligations hereunder and under applicable law shall be Independent Counsel selected by Indemnitee and approved by the Company (which approval shall not be unreasonably withheld). Such counsel, among other things, will render its written opinion to the Company and Indemnitee as to whether and to what extent Indemnitee would be entitled to be indemnified hereunder under applicable law and the Company agrees to abide by such opinion. The Company agrees to pay the reasonable fees of the Independent Counsel referred to above and to indemnify fully such counsel against any and all expenses (including attorneys' fees), claims, liabilities and damages arising out of or relating to this Agreement or its engagement pursuant hereto. Notwithstanding

-4-

any other provision of this Agreement, the Company shall not be required to pay Expenses of more than one Independent Counsel in connection with all matters concerning a single Indemnitee, and such Independent Counsel shall be the Independent Counsel for any or all other Indemnitees unless (i) the Company otherwise determines or (ii) any Indemnitee shall provide a written statement setting forth in detail a reasonable objection to such Independent Counsel representing other indemnitees under agreements similar to this Agreement.

(d) **Payment Directions.** To the extent payments are required to be made hereunder, the Company shall, in accordance with Indemnitee's request (but without duplication), (i) pay such Expenses on behalf of Indemnitee, (b) advance to Indemnitee funds in an amount sufficient to pay such Expenses, or (c) reimburse Indemnitee for such Expenses.

(e) **Notice to Insurers.** If, at the time of the receipt of a notice of a claim pursuant to Section 2(b) hereof, the Company has director and officer liability insurance in effect, the Company shall give prompt notice of the commencement of such Proceeding to the insurers in accordance with the procedures set forth in the respective policies. The Company shall thereafter take all necessary or desirable action to cause such insurers to pay, on behalf of Indemnitee, all amounts payable as a result of such Proceeding in accordance with the terms of such policies. The Company shall provide to Indemnitee: (i) copies of all potentially applicable directors' and officers' liability insurance policies, (ii) a copy of such notice delivered to the applicable insurers, and (iii) copies of all subsequent correspondence between the Company and such insurers regarding the Proceeding, in each case substantially concurrently with the delivery or receipt thereof by the Company.

(f) **Defense of Claim and Selection of Counsel.** In the event the Company shall be obligated under Section 2(a) hereof to advance Expenses with respect to any Proceeding, the Company, if appropriate, shall be entitled to assume the defense of such Proceeding, with counsel reasonably acceptable to Indemnitee, upon the delivery to Indemnitee of written notice of its election so to do, and upon Indemnitee providing signed, written consent to such assumption, which shall not be unreasonably withheld. After delivery of such notice, approval of such counsel by Indemnitee and the retention of such counsel by the Company, the Company will not be liable to Indemnitee under this Agreement for any fees of counsel subsequently incurred by Indemnitee with respect to the same Proceeding, provided that (i) Indemnitee shall have the right to employ counsel in any such Proceeding at Indemnitee's expense; and (ii) if (A) the employment of counsel by Indemnitee has been previously authorized by the Company, (B) Indemnitee shall have reasonably concluded that there may be a conflict of interest between the Company and Indemnitee in the conduct of any such defense or (C) the Company shall not, in fact, have employed counsel to assume the defense of such Proceeding, then the fees and expenses of Indemnitee's counsel shall be at the expense of the Company. In addition, if there exists a potential, but not an actual conflict of interest between the Company and Indemnitee, the actual and reasonable legal fees and expenses incurred by Indemnitee for separate counsel retained by Indemnitee to monitor the Proceeding

-5-

(so that such counsel may assume Indemnitee's defense if the conflict of interest between the Company and Indemnitee becomes an actual conflict of interest) shall be deemed to be Expenses that are subject to indemnification hereunder. The existence of an actual or potential conflict of interest, and whether such conflict may be waived, shall be determined pursuant to the rules of attorney professional conduct and applicable law. The Company shall not be required to obtain the consent of Indemnitee for the settlement of any Proceeding the Company has undertaken to defend if the Company assumes full and sole responsibility for each such settlement; provided, however, that the Company shall be required to obtain Indemnitee's prior written approval, which shall not be unreasonably withheld, before entering into any settlement which (1) does not grant Indemnitee a complete release of liability, (2) would impose any penalty or limitation on Indemnitee, or (3) would admit any liability or misconduct by Indemnitee.

3.    **Additional Indemnification Rights.**

(a) **Scope.** Notwithstanding any other provision of this Agreement, the Company hereby agrees to indemnify Indemnitee to the fullest extent permitted by law, notwithstanding that such indemnification is not specifically authorized by the other provisions of this Agreement, the Company's Certificate of Incorporation, the Company's Bylaws or by statute. In the event of any change, after the date of this Agreement, in any applicable law, statute, or rule which expands the right of a Delaware corporation to indemnify a member of its board of directors or an officer, such changes shall be deemed to be within the purview of Indemnitee's rights and the Company's obligations under this Agreement. In the event of any change in any applicable law, statute or rule which narrows the right of a Delaware corporation to indemnify a member of its board of directors or an officer, such changes, to the extent not otherwise required by such law, statute or rule to be applied to this Agreement shall have no effect on this Agreement or the parties' rights and obligations hereunder.

(b) **Nonexclusivity.** The indemnification provided by this Agreement shall not be deemed exclusive of any rights to which Indemnitee may be entitled under the Company's Certificate of Incorporation, its Bylaws, any agreement, any vote of stockholders or disinterested members of the Company's Board of Directors, the Delaware General Corporation Law, or otherwise, both as to action in Indemnitee's official capacity and as to action in another capacity while holding such office.

(c) **Interest on Unpaid Amounts.** If any payment to be made by the Company to Indemnitee hereunder is delayed by more than ninety (90) days from the date the duly prepared request for such payment is received by the Company, interest shall be paid by the Company to Indemnitee at the legal rate under Delaware law for amounts which the Company indemnifies or is obligated to indemnify for the period commencing with the date on which Indemnitee actually incurs such Expense or pays such judgment, fine or amount in settlement and ending with the date on which such payment is made to Indemnitee by the Company.

-6-

(d) **Third-Party Indemnification.** The Company hereby acknowledges that Indemnitee has or may from time to time obtain certain rights to indemnification, advancement of expenses and/or insurance provided by one or more third parties (collectively, the "Third-Party Indemnitors"). The Company hereby agrees that it is the indemnitor of first resort (*i.e.*, its obligations to Indemnitee are primary and any obligation of the Third-Party Indemnitors to advance expenses or to provide indemnification for the same expenses or liabilities incurred by Indemnitee are secondary), and that the Company will not assert that the Indemnitee must seek expense advancement or reimbursement, or indemnification, from any Third-Party Indemnitor before the Company must perform its expense advancement and reimbursement, and indemnification obligations, under this Agreement. No advancement or payment by the Third-Party Indemnitors on behalf of Indemnitee with respect to any claim for which Indemnitee has sought indemnification from the Company shall affect the foregoing. The Third-Party Indemnitors shall be subrogated to the extent of such advancement or payment to all of the rights of recovery which Indemnitee would have had against the Company if the Third-Party Indemnitors had not advanced or paid any amount to or on behalf of Indemnitee. If for any reason a court of competent jurisdiction determines that the Third-Party Indemnitors are not entitled to the subrogation rights described in the preceding sentence, the Third-Party Indemnitors shall have a right of contribution by the Company to the Third-Party Indemnitors with respect to any advance or payment by the Third-Party Indemnitors to or on behalf of the Indemnitee.

4. **Partial Indemnification.** If Indemnitee is entitled under any provision of this Agreement to indemnification by the Company for some or a portion of the Expenses, judgments, fines or amounts paid in settlement, actually and reasonably incurred in connection with a Proceeding, but not, however, for the total amount thereof, the Company shall nevertheless indemnify Indemnitee for the portion of such Expenses, judgments, fines and amounts paid in settlement to which Indemnitee is entitled.

5. **Director and Officer Liability Insurance.**

(a) **D&O Policy.** The Company shall, from time to time, make the good faith determination whether or not it is practicable for the Company to obtain and maintain a policy or policies of insurance with reputable insurance companies providing the directors and officers of the Company with coverage for losses from wrongful acts, or to ensure the Company's performance of its indemnification obligations under this Agreement. Among other considerations, the Company will weigh the costs of obtaining such insurance coverage against the protection afforded by such coverage. In all policies of director and officer liability insurance, Indemnitee shall be named as an insured in such a manner as to provide Indemnitee the same rights and benefits as are accorded to the most favorably insured of the Company's directors, if Indemnitee is a director; or of the Company's officers, if Indemnitee is not a director of the Company but is an officer; or of the Company's key employees, if Indemnitee is not an officer or director but is a key employee.

-7-

Notwithstanding the foregoing, the Company shall have no obligation to obtain or maintain such insurance if the Company determines in good faith that such insurance is not reasonably available, if the premium costs for such insurance are disproportionate to the amount of coverage provided, if the coverage provided by such insurance is limited by exclusions so as to provide an insufficient benefit, or if Indemnitee is covered by similar insurance maintained by a parent or subsidiary of the Company.

(b) **Tail Coverage.** In the event of a Change of Control or the Company's becoming insolvent (including being placed into receivership or entering the federal bankruptcy process and the like), the Company shall maintain in force any and all insurance policies then maintained by the Company in providing insurance (directors' and officers' liability, fiduciary, employment practices or otherwise) in respect of Indemnitee, for a period of six years thereafter.

6.    **Severability.** Nothing in this Agreement is intended to require or shall be construed as requiring the Company to do or fail to do any act in violation of applicable law. The Company's inability, pursuant to court order, to perform its obligations under this Agreement shall not constitute a breach of this Agreement. If this Agreement or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the Company shall nevertheless indemnify Indemnitee to the full extent permitted by any applicable portion of this Agreement that shall not have been invalidated, and the balance of this Agreement not so invalidated shall be enforceable in accordance with its terms.

7.    **Exclusions.** Any other provision herein to the contrary notwithstanding, the Company shall not be obligated pursuant to the terms of this Agreement:

(a) **Claims Initiated by Indemnitee.** To indemnify or advance Expenses to Indemnitee with respect to Proceedings initiated or brought voluntarily by Indemnitee and not by way of defense, except with respect to Proceedings brought to establish, enforce or interpret a right to indemnification under this Agreement or any other statute or law or otherwise as required under Section 145 of the Delaware General Corporation Law, but such indemnification or advancement of Expenses may be provided by the Company in specific cases if the Board of Directors finds it to be appropriate; provided, however, that the exclusion set forth in the first clause of this subsection shall not be deemed to apply to any investigation initiated or brought by Indemnitee to the extent reasonably necessary or advisable in support of Indemnitee's defense of a Proceeding to which Indemnitee was, is or is threatened to be made, a party;

(b) **Lack of Good Faith.** To indemnify Indemnitee for any Expenses incurred by Indemnitee with respect to any Proceeding instituted by Indemnitee to establish, enforce or interpret a right to indemnification under this Agreement or any other statute or law or otherwise as required under Section 145 of the Delaware General Corporation Law, if a court of competent jurisdiction determines that each of

-8-

the material assertions made by Indemnitee in such proceeding was not made in good faith or was frivolous;

(c) **Unlawful Payments.**  To indemnify Indemnitee for Expenses to the extent it is determined by a final court order or judgment by a court of competent jurisdiction, to which all rights of appeal have either lapsed or been exhausted, that such indemnification is unlawful;

(d) **Certain Conduct.**  To indemnify Indemnitee for Expenses on account of Indemnitee's conduct that is established by a final court order or judgment by a court of competent jurisdiction, to which all rights of appeal have either lapsed or been exhausted, as knowingly fraudulent;

(e) **Insured Claims.**  To indemnify Indemnitee for Expenses to the extent such Expenses have been paid directly to Indemnitee by an insurance carrier under an insurance policy maintained by the Company; or

(f) **Certain Exchange Act Claims.**  To indemnify Indemnitee in connection with any claim made against Indemnitee for (i) an accounting of profits made from the purchase and sale (or sale and purchase) by Indemnitee of securities of the Company within the meaning of Section 16(b) of the Exchange Act or any similar successor statute or any similar provisions of state statutory law or common law, or (ii) any reimbursement of the Company by Indemnitee of any bonus or other incentive-based or equity-based compensation or of any profits realized by Indemnitee from the sale of securities of the Company, as required in each case under the Exchange Act (including any such reimbursements that arise from an accounting restatement of the Company pursuant to Section 304 of the Sarbanes-Oxley Act of 2002 (the "Sarbanes-Oxley Act") or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, or the payment to the Company of profits arising from the purchase and sale by Indemnitee of securities in violation of Section 306 of the Sarbanes-Oxley Act); provided, however, that to the fullest extent permitted by applicable law and to the extent Indemnitee is successful on the merits or otherwise with respect to any such Proceeding, the Expenses actually and reasonably incurred by Indemnitee in connection with any such Proceeding shall be deemed to be Expenses that are subject to indemnification hereunder.

8.    **Contribution Claims.**

(a) If the indemnification provided in Section 1 is unavailable in whole or in part and may not be paid to Indemnitee for any reason other than those set forth in Section 7, then in respect to any Proceeding in which the Company is jointly liable with Indemnitee (or would be if joined in such Proceeding), to the fullest extent permitted by applicable law, the Company, in lieu of indemnifying Indemnitee, shall pay, in the first instance, the entire amount incurred by Indemnitee, whether for Expenses, judgments, fines or amounts paid in settlement, in connection with any Proceeding without requiring Indemnitee to contribute to such payment, and the

Company hereby waives and relinquishes any right of contribution it may have at any time against Indemnitee.

(b) Without diminishing or impairing the obligations of the Company set forth in the preceding Section 8(a), if, for any reason, Indemnitee shall elect or be required to pay all or any portion of any Expenses, judgment or settlement in any Proceeding in which the Company is jointly liable with Indemnitee (or would be if joined in such Proceeding), the Company shall contribute to the amount of Expenses, judgments, fines and amounts paid in settlement actually and reasonably incurred and paid or payable by Indemnitee in proportion to the relative benefits received by the Company and all officers, directors or employees of the Company, other than Indemnitee, who are jointly liable with Indemnitee (or would be if joined in such Proceeding), on the one hand, and Indemnitee, on the other hand, from the transaction or events from which such Proceeding arose; provided, however, that the proportion determined on the basis of relative benefit may, to the extent necessary to conform to law, be further adjusted by reference to the relative fault of the Company and all officers, directors or employees of the Company other than Indemnitee who are jointly liable with Indemnitee (or would be if joined in such Proceeding), on the one hand and, Indemnitee, on the other hand, in connection with the transaction or events that resulted in such Expenses, judgments, fines or settlement amounts, as well as any other equitable considerations which applicable law may require to be considered. The relative fault of the Company and all officers, directors or employees of the Company, other than Indemnitee, who are jointly liable with Indemnitee (or would be if joined in such Proceeding), on the one hand, and Indemnitee, on the other hand, shall be determined by reference to, among other things, the degree to which their actions were motivated by intent to gain personal profit or advantage, the degree to which their liability is primary or secondary and the degree to which their conduct is active or passive.

(c) With respect to a Proceeding brought against directors, officers, employees or agents of the Company (other than Indemnitee), to the fullest extent permitted by applicable law, the Company shall indemnify Indemnitee from any claims for contribution that may be brought by any such directors, officers, employees or agents of the Company (other than Indemnitee) who may be jointly liable with Indemnitee, to the same extent Indemnitee would have been entitled to such indemnification under this Agreement if such Proceeding had been brought against Indemnitee.

9.  **No Imputation.** The knowledge and/or actions, or failure to act, of any director, officer, agent or employee of the Company or the Company itself shall not be imputed to Indemnitee for purposes of determining any rights under this Agreement.

10.  **Determination of Good Faith.** For purposes of any determination of good faith, Indemnitee shall be deemed to have acted in good faith if Indemnitee's action is based on the records or books of account of the Enterprise, including financial statements, or on information supplied to Indemnitee by the officers of the Enterprise in the course of their duties, or on the advice of legal counsel for the Enterprise or the Board

-10-

of Directors of the Enterprise or any counsel selected by any committee of the Board of Directors of the Enterprise or on information or records given or reports made to the Enterprise by an independent certified public accountant or by an appraiser, investment banker, compensation consultant, or other expert selected with reasonable care by the Enterprise or the Board of Directors of the Enterprise or any committee thereof. The provisions of this Section 10 shall not be deemed to be exclusive or to limit in any way the other circumstances in which the Indemnitee may be deemed to have met the applicable standard of conduct. Whether or not the foregoing provisions of this Section are satisfied, it shall in any event be presumed that Indemnitee has at all times acted in good faith and in a manner Indemnitee reasonably believed to be in or not opposed to the best interests of the Company.

11.  **Defined Terms and Phrases.**  For purposes of this Agreement, the following terms shall have the following meanings:

(a) "Beneficial Owner" and "Beneficial Ownership" shall have the meanings set forth in Rule 13d-3 promulgated under the Exchange Act as in effect on the date hereof.

(b) "Change of Control" shall be deemed to occur upon the earliest of any of the following events:

(i)  Acquisition of Stock by Third Party.  Any Person is or becomes the Beneficial Owner, directly or indirectly, of securities of the Company representing **[50]**% or more of the combined voting power of the Company's then outstanding securities entitled to vote generally in the election of directors, unless (1) the change in the relative Beneficial Ownership of the Company's securities by any Person results solely from a reduction in the aggregate number of outstanding shares of securities entitled to vote generally in the election of directors, or (2) such acquisition was approved in advance by the Continuing Directors and such acquisition would not constitute a Change of Control under part (iii) of this definition.

(ii)  Change in Board of Directors.  Individuals who, as of the date of this Agreement, constitute the Company's Board of Directors (the "Board"), and any new director whose election by the Board or nomination for election by the Company's stockholders was approved by a vote of at least two thirds of the directors then still in office who were directors on the date of this Agreement (collectively, the "Continuing Directors"), cease for any reason to constitute at least a majority of the members of the Board.

(iii)  Corporate Transaction.  The effective date of a reorganization, merger, or consolidation of the Company (a "Business Combination"), in each case, unless, following such Business Combination: (1) all or substantially all of the individuals and entities who were the Beneficial Owners of securities entitled to vote generally in the election of directors immediately prior to such Business Combination beneficially own, directly or

-11-

indirectly, more than 51% of the combined voting power of the then outstanding securities of the Company entitled to vote generally in the election of directors resulting from such Business Combination (including a corporation which as a result of such transaction owns the Company or all or substantially all of the Company's assets either directly or through one or more subsidiaries) in substantially the same proportions as their ownership, immediately prior to such Business Combination, of the securities entitled to vote generally in the election of directors and with the power to elect at least a majority of the Board or other governing body of the surviving entity; (2) no Person (excluding any corporation resulting from such Business Combination) is the Beneficial Owner, directly or indirectly, of 15% or more of the combined voting power of the then outstanding securities entitled to vote generally in the election of directors of such corporation except to the extent that such ownership existed prior to the Business Combination; and (3) at least a majority of the Board of Directors of the corporation resulting from such Business Combination were Continuing Directors at the time of the execution of the initial agreement, or of the action of the Board of Directors, providing for such Business Combination.

(iv)    Liquidation. The approval by the Company's stockholders of a complete liquidation of the Company or an agreement or series of agreements for the sale or disposition by the Company of all or substantially all of the Company's assets, other than factoring the Company's current receivables or escrows due (or, if such approval is not required, the decision by the Board to proceed with such a liquidation, sale or disposition in one transaction or a series of related transactions).

(v)    Other Events. There occurs any other event of a nature that would be required to be reported in response to Item 6(e) of Schedule 14A of Regulation 14A (or a response to any similar item or any similar schedule or form) promulgated under the Exchange Act whether or not the Company is then subject to such reporting requirement.

(c) "Company" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, and employees or agents, so that if Indemnitee is or was a director, officer, employee or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, trustee, general partner, managing member, fiduciary, employee or agent of any other enterprise, Indemnitee shall stand in the same position under the provisions of this Agreement with respect to the resulting or surviving corporation as Indemnitee would have with respect to such constituent corporation if its separate existence had continued.

(d) "Enterprise" means the Company and any other enterprise that Indemnitee was or is serving at the request of the Company as a director, officer,

-12-

partner (general, limited or otherwise), member (managing or otherwise), trustee, fiduciary, employee or agent.

(e) "Exchange Act" means the Securities Exchange Act of 1934, as amended.

(f) "Expenses" shall include all direct and indirect costs, fees and expenses of any type or nature whatsoever, including all attorneys' fees and costs, retainers, court costs, transcript costs, fees of experts, witness fees, travel expenses, fees of private investigators and professional advisors, duplicating costs, printing and binding costs, telephone charges, postage, delivery service fees, any federal, state, local or foreign taxes imposed on Indemnitee as a result of the actual or deemed receipt of any payment under this Agreement (including taxes that may be imposed upon the actual or deemed receipt of payments under this Agreement with respect to the imposition of federal, state, local or foreign taxes), fax transmission charges, secretarial services and all other disbursements, obligations or expenses in connection with prosecuting, defending, preparing to prosecute or defend, investigating, being or preparing to be a witness in, settlement or appeal of, or otherwise participating in a Proceeding. Expenses also shall include any of the forgoing expenses incurred in connection with any appeal resulting from any Proceeding, including the principal, premium, security for, and other costs relating to any costs bond, supersedes bond, or other appeal bond or its equivalent. Expenses also shall include any interest, assessment or other charges imposed thereon and costs incurred in preparing statements in support of payment requests hereunder. Expenses, however, shall not include amounts paid in settlement by Indemnitee or the amount of judgments or fines against Indemnitee.

(g) "Independent Counsel" means an attorney or firm of attorneys, selected in accordance with the provisions of Section 2(c)(iii), who will not have otherwise performed services for the Company or Indemnitee within the last three years (other than with respect to matters concerning the rights of Indemnitee under this Agreement, or of other indemnitees under similar indemnity agreements).

(h) "Person" shall have the meaning as set forth in Section 13(d) and 14(d) of the Exchange Act as in effect on the date hereof; provided, however, that "Person" shall exclude: (i) the Company; (ii) any direct or indirect majority owned subsidiaries of the Company; (iii) any employee benefit plan of the Company or any direct or indirect majority owned subsidiaries of the Company or of any corporation owned, directly or indirectly, by the Company's stockholders in substantially the same proportions as their ownership of stock of the Company (an "Employee Benefit Plan"); and (iv) any trustee or other fiduciary holding securities under an Employee Benefit Plan.

(i) "Proceeding" shall include any actual, threatened, pending or completed action, suit, arbitration, mediation, alternate dispute resolution mechanism, investigation, inquiry, administrative hearing or any other actual, threatened or completed proceeding, whether brought by a third party, a government agency, the

-13-

Company or its Board of Directors or a committee thereof, whether in the right of the Company or otherwise and whether of a civil (including intentional or unintentional tort claims), criminal, administrative, legislative or investigative (formal or informal) nature, including any appeal therefrom, in which Indemnitee was, is, will or might be involved as a party, potential party, non-party witness or otherwise by reason of the fact that Indemnitee is or was a director, officer, employee or agent of the Company, by reason of any action (or failure to act) taken by Indemnitee or of any action (or failure to act) on Indemnitee's part while acting as a director, officer, employee or agent of the Company, or by reason of the fact that Indemnitee is or was serving at the request of the Company as a director, officer, partner (general, limited or otherwise), member (managing or otherwise), trustee, fiduciary, employee or agent of any other enterprise, in each case whether or not serving in such capacity at the time any liability or expense is incurred for which indemnification, reimbursement or advancement of expenses can be provided under this Agreement.

(j) In addition, references to "other enterprise" shall include another corporation, partnership, limited liability company, joint venture, trust, employee benefit plan or any other enterprise; references to "fines" shall include any excise taxes assessed on Indemnitee with respect to an employee benefit plan; references to "serving at the request of the Company" shall include any service as a director, officer, employee or agent of the Company which imposes duties on, or involves services by Indemnitee with respect to an employee benefit plan, its participants, or beneficiaries; and if Indemnitee acted in good faith and in a manner Indemnitee reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan, Indemnitee shall be deemed to have acted in a manner "not opposed to the best interests of the Company" as referred to in this Agreement; references to "include" or "including" shall mean include or including, without limitation; and references to Sections, paragraphs or clauses are to Sections, paragraphs or clauses in this Agreement unless otherwise specified.

12.    **Attorneys' Fees**. In the event that any Proceeding is instituted by Indemnitee under this Agreement to enforce or interpret any of the terms hereof, the Company shall indemnify Indemnitee against all Expenses actually and reasonably incurred by Indemnitee in connection with such Proceeding, unless a court of competent jurisdiction determines that each of the material assertions made by Indemnitee as a basis for such Proceeding were not made in good faith or were frivolous. In the event of a Proceeding instituted by or in the name of the Company under this Agreement or to enforce or interpret any of the terms of this Agreement, the Company shall indemnify Indemnitee against all Expenses actually and reasonably incurred by Indemnitee in connection with such Proceeding (including with respect to Indemnitee's counterclaims and cross-claims made in such action), unless a court of competent jurisdiction determines that each of Indemnitee's material defenses to such action were made in bad faith or were frivolous.

-14-

13.    **Miscellaneous.**

(a) **Governing Law.** The validity, interpretation, construction and performance of this Agreement, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the state of Delaware, without giving effect to principles of conflicts of law.

(b) **Entire Agreement; Binding Effect.** Without limiting any of the rights of Indemnitee described in Section 3(b), this Agreement sets forth the entire agreement and understanding of the parties relating to the subject matter herein and merges all prior discussions and supersedes any and all previous agreements between them covering the subject matter herein. The indemnification provided under this Agreement applies with respect to events occurring before or after the effective date of this Agreement, and shall continue to apply even after Indemnitee has ceased to serve the Company in any and all indemnified capacities.

(c) **Amendments and Waivers.** No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless in writing signed by the parties to this Agreement. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance.

(d) **Successors and Assigns.** This Agreement shall be binding upon the Company and its successors (including any direct or indirect successor by purchase, merger, consolidation or otherwise to all or substantially all of the business and/or assets of the Company) and assigns, and inure to the benefit of Indemnitee and Indemnitee's heirs, executors, administrators, legal representatives and assigns. The Company shall require and cause any successor (whether direct or indirect by purchase, merger, consolidation or otherwise) to all or substantially all of the business and/or assets of the Company, by written agreement in form and substance satisfactory to Indemnitee, expressly to assume and agree to perform this Agreement in the same manner and to the same extent that the Company would be required to perform if no such succession had taken place.

(e) **Notices.** Any notice, demand or request required or permitted to be given under this Agreement shall be in writing and shall be deemed sufficient when delivered personally or by overnight courier or sent by email, or 48 hours after being deposited in the U.S. mail as certified or registered mail with postage prepaid, addressed to the party to be notified at such party's address as set forth on the signature page, as subsequently modified by written notice, or if no address is specified on the signature page, at the most recent address set forth in the Company's books and records.

(f) **Severability.** If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. In the event that the parties cannot reach a mutually

-15-

agreeable and enforceable replacement for such provision, then (i) such provision shall be excluded from this Agreement, (ii) the balance of the Agreement shall be interpreted as if such provision were so excluded and (iii) the balance of the Agreement shall be enforceable in accordance with its terms.

(g) **Construction**. This Agreement is the result of negotiations between and has been reviewed by each of the parties hereto and their respective counsel, if any; accordingly, this Agreement shall be deemed to be the product of all of the parties hereto, and no ambiguity shall be construed in favor of or against any one of the parties hereto.

(h) **Counterparts**. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and all of which together shall constitute one and the same agreement. Execution of a facsimile or scanned copy will have the same force and effect as execution of an original, and a facsimile or scanned signature will be deemed an original and valid signature.

(i) **No Employment Rights**. Nothing contained in this Agreement is intended to create in Indemnitee any right to continued employment.

(j) **Company Position**. The Company shall be precluded from asserting, in any Proceeding brought for purposes of establishing, enforcing or interpreting any right to indemnification under this Agreement, that the procedures and presumptions of this Agreement are not valid, binding and enforceable and shall stipulate in any such court that the Company is bound by all the provisions of this Agreement and is precluded from making any assertion to the contrary.

(k) [**Injunctive Relief**. The Company and the Indemnitee agree herein that a monetary remedy for breach of this Agreement, at some later date, may be inadequate, impracticable and difficult of proof, and further agree that such breach may cause the Indemnitee and the Company irreparable harm. Accordingly, the parties hereto agree that the parties may enforce this Agreement by seeking injunctive relief and/or specific performance hereof, without any necessity of showing actual damage or irreparable harm and that by seeking injunctive relief and/or specific performance, they shall not be precluded from seeking or obtaining any other relief to which they may be entitled. The Company and the Indemnitee further agree that they shall be entitled to such specific performance and injunctive relief, including temporary restraining orders, preliminary injunctions and permanent injunctions, without the necessity of posting bonds or other undertaking in connection therewith. The Company and the Indemnitee acknowledge that in the absence of a waiver, a bond or undertaking may be required by the Chancery Court of the State of Delaware, and they hereby waive any such requirement of such a bond or undertaking.]

(l) **Subrogation**. Subject to Section 3(d), in the event of payment under this Agreement, the Company shall be subrogated to the extent of such payment to all of the rights of recovery of Indemnitee, who shall execute all

-16-

documents required and shall do all acts that may be necessary to secure such rights and to enable the Company to effectively bring suit to enforce such rights.

*[Signature Page Follows]*

The parties have executed this Indemnification Agreement as of the date first set forth above.

**THE COMPANY:**

LAYFIELD & BARRETT, APC

By: _____

(Signature)

Name:Philip Layfield

Title:Director

AGREED TO AND ACCEPTED:

**INDEMNITEE:**

PHILIP LAYFIELD
_____
(Signature)

Address:
31142 Via Colinas
Coto de Caza, CA 92679Email:p@layfieldbarrett.com

-1-

# EXHIBIT 12

Message 1 of 2

# Re: Mandatory Indemnification of Philip Layfield

From:  Stella Havkin <stella@havkinandshrago.com>
To:  Philip Layfield <phil@maximumlegalservices.com>
Cc:  Tina M. Talarchyk, Esq. <tmt@palmbeachbk11.com>

I will notify the trustee.

Sent from Stella Havkin's iPhone

On Aug 29, 2017, at 7:15 AM, Philip Layfield <phil@maximumlegalservices.com> wrote:

[Quoted text hidden]

Message 2 of 2

# Re: Mandatory Indemnification of Philip Layfield

From:  Stella Havkin <stella@havkinandshrago.com>
To:  Philip Layfield <phil@maximumlegalservices.com>
Cc:  Tina M. Talarchyk, Esq. <tmt@palmbeachbk11.com>

I will notify the trustee.

**From:** Philip Layfield <phil@maximumlegalservices.com>
**Sent:** Tuesday, August 29, 2017 7:15:44 AM
**To:** Stella Havkin
**Cc:** Tina M. Talarchyk, Esq.
**Subject:** Mandatory Indemnification of Philip Layfield

Stella:

I am making a demand on Layfield & Barrett pursuant to section 317 of the CA corporations code for indemnification regarding the following claims:

1.  Threatened Lawsuits and Proceedings by Maximum Legal (California), LLP against me personally.  I must be defended in that bankruptcy case as a result of the false accusations being made and the false narrative being perpetrated by the lawyers for the estate;

2.  For the State Bar Investigation that is currently pending against me;

3.  For the Lawsuit of Josephine Nguyen v. Layfield & Barrett, et. al.;

4.  For the Lawsuit of Anaheim Ducks v. Layfield & Barrett, et. al.;

5.  For the Lawsuit of Zolekhian v. Layfield & Barrett, et. al.;

6.  For the investigation being conducted by the Chapter 11 Trustee against me personally; and

7.  For the matters of Finton v. Layfield & Barrett, et. al. pending in Florida.

All actions I have taken were in the best interest of the corporation and I am entitled to indemnification.  Today, I had to pay personal funds to hire bar counsel because I have deadlines coming up to respond to the bar inquiries.  I requested over 10 days ago to have my request for counsel approved and no action has been taken.

I am requesting that Tina be appointed as my counsel in several of these matters and she must be paid under the indemnification provisions.  As counsel for the estate, you must act on this request.  I am giving a 48 hour deadline to respond before we take further action.

Philip Layfield | CEO, Maximum Legal Services

Ph: (786) 607-7243
phil@maximumlegalservices.com
www.maximumlegalservices.com
Maximum Legal Services, LLC •382 NE 191st St. #42308  •Miami • FL •  33179• United States

This message is confidential. It may also be privileged or otherwise protected by the work product doctrine or other legal rules. If you have received it by mistake, please let us know by e-mail reply, and delete it from your system. You may not copy this message or disclose its contents to anyone.The integrity and security of this message cannot be guaranteed on the Internet.

# EXHIBIT 13

January 5, 2018

Mr. Rohit Mishra

Via Hand Delivery

Re: Termination of Services Being Performed for Maximum Legal Services, LLC

Dear Mr. Mishra:

Effective on January 2, 2018, you are terminated for cause pursuant to the Agreement you entered into with Maximum Legal Services, LLC. Maximum Legal Services, LLC ("MLS") requested that you perform services on behalf of the company, which is a Delaware Limited Liability Company with a business address of 382 NE 191st Street, #42308, Miami, Florida 33179. Maximum Legal Services, LLC performs outsourcing services for a variety of related and unrelated companies. You were asked to assist MLS and its principals with the set-up of a computer network in Costa Rica and for the home networking services for the owners. You were to be paid a monthly stipend of $3,800 per month. One of the conditions of your Agreement was to provide all of the network passwords to the principal of MLS. You were repeatedly asked for that information and you refused until mid-December, when you provided an incomplete list of passwords. Due to your refusal to provide passwords, your Agreement was terminated. As part of your Agreement, an express term of your Agreement was that if you refused to provide passwords and caused the company to engage another IT professional to unblock the system, as liquidated damages, any amounts the company may or may not have owed you, would be forfeited.

At this time, despite repeated requests, you have refused to provide the passwords to the firewalls and switches. The conduct has forced the computer to engage in the complete wiping of the firewalls and factory resets. As a result, you have forfeited any monies that may be due to you pursuant to our liquidated damages clause. You will be receiving no further compensation from MLS or any other affiliated entity.

We also are aware that you have misappropriated company property and have refused to return your company issued laptop and two cell phones. If you do not return those items by Wednesday, January 10, 2018 by 5pm Costa Rican time, we will take appropriate legal action. You may return the property to the offices of our lawyers at Quatro Legal, attn: Marcela Acosta, Guachipelin, Latitud Norte Building, 3rd Floor.

You are hereby prohibited from entering company property or any client of MLS or from accessing any internal networks, systems or other accounts. Any action will be considered a Cyber Crime and we will prosecute under the Computer Fraud and Abuse Act 18 U.S. Code Section 1830.

I also understand that you have told people that you plan to return to the U.S. on a work visa that was issued by Layfield & Barrett. Please be advised that we have informed the State Department that you had

# EXHIBIT 14

**Sent at:** 8/29/2017 10:17:03 AM

# Re: urgent message to the Trustee

From:  Stella Havkin <stella@havkinandshrago.com>
  To:  Philip Layfield <phil@maximumlegalservices.com>, Tina M. Talarchyk, Esq. <tmt@palmbeachbk11.com>

They did not call me so there was nothing to tell you.  I will respond later as I am on my way to court.

**From:** Philip Layfield <phil@maximumlegalservices.com>
**Sent:** Tuesday, August 29, 2017 5:44:34 AM
**To:** Tina M. Talarchyk, Esq.; Stella Havkin
**Subject:** urgent message to the Trustee

Stella:

By 10am pst, I want the following message delivered to the Trustee.  If my lawyers won't deliver the message, then I will do it myself.  I have wasted enough time.  Nobody is looking out for MLS and my employees and the firm clients.  I was told that Stella was speaking to the Trustee yesterday and she promised to contact me after the conversation.  Again, I received no phone call.  I want to know that the Trustee is on notice of these issues because I will probably end up suing him later if he fails to act.  I have sat around long enough.  Please feel free to modify this message and send me a proposed draft.  I am sending this message at 10am pst today one way or another.  Yes, I am going rogue, but I don't trust this process right now.  Also, unless I start seeing some cooperation I will file a motion to dismiss the trustee based on lack of authority.  Stella entered into a stipulation without consulting with me and I find that very disturbing.  I am considering my options right now.  I understand that Stella is not my lawyer, but she needed my written authority.  I am really pissed off about this and unless I start seeing some positive action, I am going to exercise my rights.  I also need everyone to confirm that you had a trustee appointed without my authority or agreement.  I only would have agreed to it in the conttext of an agreement with advocate for employment of me, employment of MLS, consolidation of the ML bankruptcy and dismissing of barrett and wakefield along with cash collateral.  you completely blew it and screwed me over.

Dear Mr. Puchalski:

I am the principal of Layfield & Barrett and also the CEO of Maximum Legal Services.  For the last 2 months, my team at MLS has mobilized to stabilize the firm in the wake of the failure of ML (i.e, Todd Wakefield and Joe Barrett) to honor their Agreements with me personally and with L&B.  We have organized a team of 10 key individuals to move cases along, deal with clients that ML is neglecting or rejecting and organizing the missing or deleted data that L&B has suffered at the hands of Todd Wakefield and others.

Our team has done the following in the last 60 days:

1.  created a list of active cases both in prelit and litigation and developed a plan to move each case forward to settlement.  This involves over 75 active cases.
2.  worked within the case management system to update and calendar all critical deadlines for cases that ML has utterly failed to address;
3.  Travelled to Utah and restarted all systems that were intentionally unplugged by Todd Wakefield and attempted to retrieve all data.

4.  Hired an accountant to prepare 2017 financial statements, update Accounts Payable and begin trust account reconciliations (we have also had to purchase out of pocket the accounting software needed);

5.  Our team has also begun rebuilding our websites, generated market plans to bring new cases in and we are ready to launch our marketing campaigns next week.

6.  We have identified critical vendors necessary for the smooth operation of the business. In many cases, I am having to personally pay these vendors to keep operations running smoothly.

7.  I have deployed IT professionals to maintain the data and the services of L&B so that we can properly work our cases. Previously, this was outsourced to a third party vendor and the cost was over $15,000 per month.

8.  Our team is processing mail as it comes in, calendaring deadlines, preparing motions, notices and attending depositions and mediations on our active cases;

9.  We have also settled several cases in the last 7 days and anticipate settling two more this week.

The problem we face is that MLS is owed over $1.5 million from L&B and we have an invoice from July of just over $50,000 and another invoice for January of $50,000. We are doing everything we can to maximize the value of the estate and also serve the L&B clients. I am personally owed over $2.5 million in back salary and expense reimbursements. Rather than cooperate with me, I have learned that your office has been secretly contacting my MLS employees in an attempt to interview them. Please vie advised that MLS, its employees and I am represented by Tina Talarchyk. Nobody is to be contacted without our knowledge.

The bottom line is that you need to act and you need to act fast. I can turn this situation around and generate $10 million in revenue over the next 12 months, but I am not going to continue to fund the L&B operations with MLS money or personal money for another day. On Thursday, August 31st, all services will cease and I will not perform any other services on behalf of L&B. I have tried to be patient and reasonable, but my cooperation is ending quickly. If you choose to convert this case into a Chapter 7, the results will be that only clients get paid and Advocate Capital will end up with nothing from the L&B estate. All clients will defect and everyone will be pointing fingers. The ML bankruptcy needs to be consolidated and we need to hire some additional attorneys to work the cases. I know how to find people and I know how to get them up to speed on these cases.

Attached is the MLS contract and the most recent invoice. Let's have a conversation and get this resolved. A failure to act is going to get everybody sued by the current clients. If you are not going to protect the firm's clients, then I will have not choice but to resign.

Everyone has a duty to protect this estate, but Tina's obligations are different. They are to me personally and to MLS and its employees.

I hope everyone understands what's happening here and where this will end up if MLS is not retained and I am not employed.

Philip Layfield | CEO, Maximum Legal Services

Ph: (786) 607-7243
phil@maximumlegalservices.com
www.maximumlegalservices.com
Maximum Legal Services, LLC •382 NE 191st St. #42308 •Miami • FL •  33179• United States

This message is confidential. It may also be privileged or otherwise protected by the work product doctrine or other legal rules. If you have received it by mistake, please let us know by e-mail reply, and delete it from your system. You may not copy this message or disclose its contents to anyone.The integrity and security of this message cannot be guaranteed on the Internet.

# EXHIBIT 15

1  JON L.R. DALBERG (State Bar No. 128259)
   jdalberg@lgbfirm.com
2  RODGER LANDAU (State Bar No. 151456)
   rlandau@lgbfirm.com
3  MONICA RIEDER (State Bar No. 263250)
   mrieder@lgbfirm.com
4  LANDAU GOTTFRIED & BERGER LLP
   1801 Century Park East, Suite 700
5  Los Angeles, California 90067
   Telephone: (310) 557-0050
6  Facsimile: (310) 557-0056

7  Attorneys for Debtors and Debtors in Possession

8

9                    UNITED STATES BANKRUPTCY COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11                   SAN FERNANDO VALLEY DIVISION

12

13  In re                                    Case No. 1:13-15929-AA

14  KSL MEDIA, INC., *et al.*,               Jointly Administered with Case Nos.
                                             1:13-15930-AA and 1:13-15931-AA
15                        Debtors.
                                             Chapter 11

16  ┌─────────────────────────────
17  │ ☐ Affects KSL Media, Inc.              **DEBTORS' INITIAL OPPOSITION TO,
                                             AND REQUEST FOR HEARING ON,
18  │ ☐ Affects T.V. 10's, LLC               APPLICATION FOR AN ORDER
                                             AUTHORIZING AND APPROVING THE
19  │ ☐ Affects Fulcrum 5, Inc.              EMPLOYMENT OF PACHULSKI STANG
                                             ZIEHL & JONES LLP AS COUNSEL FOR
20  │                                        THE OFFICIAL COMMITTEE OF
    │ ☒ Affects All Debtors                  UNSECURED CREDITORS *NUNC PRO
21  │                                        TUNC* TO OCTOBER 10, 2013;
                                             DECLARATION OF RODGER M.
22  └─────────────────────────────          LANDAU IN SUPPORT THEREOF**

23

24

25

26

27

28

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Debtors and debtors in possession KSL Media, Inc., T.V. 10's, LLC, and Fulcrum 5, Inc.

2    (the "Debtors"), hereby submit their initial opposition to, and request for hearing on, the

3    *Application for an Order Authorizing and Approving the Employment of Pachulski Stang Ziehl &*

4    *Jones LLP as Counsel for the Official Committee of Unsecured Creditors* Nunc Pro Tunc *to*

5    *October 10, 2013* (the "Pachulski Application"), which seeks authorization for Pachulski Stang

6    Ziehl & Jones LLP (the "Pachulski Firm") to serve as counsel for the Official Committee of

7    Unsecured Creditors (the "Committee") in the above-captioned cases.

8    Facts recently have come to the Debtors' attention demonstrating that the Pachulski Firm

9    has an interest adverse to the interests of its purported client and of the Debtors' bankruptcy

10   estates, rendering the Pachulski Firm ineligible for employment under 11 U.S.C. § 327.  The

11   Debtors are filing this initial opposition to provide immediate notice to the Court, the United

12   States Trustee, the Committee members, and other parties in interest of the conflict of interest that

13   exists and the potential damage to the estates that could result if the Pachulski Application were

14   approved.  The Debtors shortly will file a fuller opposition setting forth in detail the grounds on

15   which the Pachulski Firm is ineligible for employment.  In the meantime, many of the relevant

16   facts are set forth in the e-mail exchanges attached as Exhibits "1" and "2" to the accompanying

17   Declaration of Rodger M. Landau.

18   The Debtors request that the Court hear the opposition promptly to minimize any potential

19   harm to the estates from Pachulski's role in the cases and to permit the Committee to obtain

20   replacement counsel as soon as possible.  The Debtors will, of course, make all reasonable

21   accommodations to permit the Committee's new counsel to come up to speed and ensure that the

22   Committee is not prejudiced by the change of counsel.

23   Date: November 11, 2013                    LANDAU GOTTFRIED & BERGER LLP

24

25

26                                            RODGER M. LANDAU
                                             Attorneys for Debtors and Debtors in Possession

27

28

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

**DECLARATION OF RODGER M. LANDAU**

I, Rodger M. Landau, hereby declare as follows:

1.      I am the managing partner of Landau Gottfried & Berger LLP, which serves as general bankruptcy counsel to debtors and debtors in possession KSL Media, Inc., T.V. 10's, LLC, and Fulcrum 5, Inc. (the "Debtors"), in their jointly administered Chapter 11 cases.

2.      I submit this declaration in support of the Debtors' initial opposition to the *Application for an Order Authorizing and Approving the Employment of Pachulski Stang Ziehl & Jones LLP as Counsel for the Official Committee of Unsecured Creditors* Nunc Pro Tunc *to October 10, 2013*, which seeks authorization for Pachulski Stang Ziehl & Jones LLP (the "Pachulski Firm") to serve as counsel for the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned cases.

3.      Attached hereto as Exhibits "1" and "2" are true and correct copies of e-mail exchanges among Richard Pachulski (of the Pachulski Firm), Jeffrey Dulberg (of the Pachulski Firm), John Roussey (the chairman of the Committee), and myself.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 11, 2013, at Los Angeles, California.

_____
Rodger M. Landau

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2

# EXHIBIT 1

| | |
|---|---|
| **From:** | Rodger M. Landau |
| **Sent:** | Sunday, November 10, 2013 12:25 PM |
| **To:** | 'Roussey, John (NBCUniversal)' |
| **Cc:** | Richard Pachulski (rpachulski@pszjlaw.com); Jeffrey Dulberg (jdulberg@pszjlaw.com); Howard Grobstein (hgrobstein@gtfas.com); Monica Rieder; Jon L.R. Dalberg |
| **Subject:** | Committee Request Relating to Delay of Reconstruction |

Hi John:

As an accommodation to your Committee, the Debtor suspended its reconstruction efforts so that your Committee purportedly could evaluate the utility of the Debtor's financial reconstruction (see emails below). My understanding of the Committee's concerns from you were that it wanted to address whether the reconstruction is necessary in light of the estate's tax reporting issues and potential avoidance action issues. My understanding is that the Committee was evaluating those issues and, concurrently. the Debtor has been working on a memorandum to address these concerns (which has cost a lot of time and money). The purported nature of the concerns were discussed between us as well as addressed in the email below. I will try to get you the memorandum that my firm has been working on this week.

On Friday, Rich Pachulski – in a meeting attended by a number of people including you and me -- explained that the issue is not whether the reconstruction should occur but who should do it. Obviously, that was not the purported reason for your request to suspend the reconstruction. Mr. Pachulski explained that he believes that the Liquidating Trustee (who might be appointed in six months) should choose the financial advisor who performs the reconstruction. Other than redirecting the work to a different professional, I do not understand this rationale and that rationale certainly was never discussed between us. The reconstruction is approximately 45% done (approximately $450K is needed to complete the project) and I cannot imagine a rationale for bringing in a different professional to start over. It likely would turn a 45% complete project likely to be completed prior to confirmation into a potential $2.0 million one year post-confirmation fiasco. Mr. Grobstein is one of the best bankruptcy accountants I know and I simply cannot imagine a competent Liquidating Trustee deciding not to rely on the reconstruction that he completes.

If the Committee had possessed a real concern about whether the reconstruction should occur, then the Debtor would have been receptive to that concern. The Committee's concern about whether Grobstein Teeple should do the reconstruction – given that they already are 45% done – just does not make sense to the Debtor. The prospect that the reconstruction should be halted so that it can be delayed and potentially cost four or five times more to re-do (there is approximately $450K of work left – higher priced alternative providers may well charge over $2 million to do it over) simply does not make sense in the context of a procedure that should be focused on minimizing cost and time for the benefit of unsecured creditors. If the Debtor had known that the nature of the concern was not the reconstruction's utility (as we discussed and could reasonably be debated), the Debtor likely never would have agreed to any suspension.

Consistent with my promise to you and your counsel, the Debtor will not re-commence the reconstruction without first informing you and your counsel (I will be discussing this issue with my client on Monday). The Debtor's concern is that the issue no longer appears to be resolution of whether the reconstruction should occur (the reason the reconstruction was delayed) but instead who accomplishes the reconstruction (an issue with which the Debtor does not believe can be reasonably debated).

Rodger

1

EXHIBIT 1
3

Rodger Landau
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-557-0051
Fax: 310-557-0056
E-mail: rlandau@lgbfirm.com
Web: www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Roussey, John (NBCUniversal) [mailto:John.Roussey@nbcuni.com]
**Sent:** Thursday, October 31, 2013 11:28 AM
**To:** Rodger M. Landau
**Cc:** Richard Pachulski (rpachulski@pszjlaw.com); Jeffrey Dulberg (jdulberg@pszjlaw.com); Howard Grobstein (hgrobstein@gtfas.com); Monica Rieder; Jon L.R. Dalberg
**Subject:** Re: Committee request relating to reconstruction and other issues

Rodger,

Thanks for the meeting Tuesday, the lunch, and agreeing to have Howard put the reconstruction work on hold. The Committee will be meeting this Friday to discuss the potential benefits or pitfalls relating to the continuation of the reconstruction work, and would like to have Paul available to report to the Committee Friday with his recommendations as to whether or not to move forward. We also appreciate the offer/plan presented to continue the reconstruction work and cap Howard's fees. Jeff, Rich and I will also discuss that with the Committee during tomorrow's call.

Thank you for providing names of potential Liquidating Trustees - this will be another discussion point for the Committee call tomorrow.

Finally, the Committee would like to get in front of some housekeeping issues. Specifically employment and benefit issues.

Per review of the employee list, there are a number of persons that should most likely be put on a contract/hourly basis (NY employees), as well as some in LA and help through the reconciliation. I do not have the specific names in front of me as I am out of the office today; however, we can discuss tomorrow if necessary.

Secondly, in light of the accounting firm holding the 401(k) plan audit hostage for 2012, and knowing a similar situation will most likely arise in 2013, the Committee believes that it may be prudent to discontinue the 401(k) plan to

2

EXHIBIT 1
4

employees as soon as possible - especially before 2014 starts as we do not believe it would be prudent to have the plan operating in 2014 (and have to have an audit for 2014 as well.

Nevertheless, the Committee greatly appreciates the temporary halt to the reconstruction process, and will get back to everyone next week to discuss the possibility of continuing the reconstruction work.

Please let me know if you have any questions or concerns.

John Roussey

Sent from my iPad

On Oct 30, 2013, at 12:35 PM, "Rodger M. Landau" <RLandau@LGBFirm.com> wrote:

> Hi John:
>
> As to your request that Grobstein Teeple put their pencils down on their reconstruction efforts until Friday, the Debtors will do as you request. Janet is comfortable with that accommodation and Howard (who is cc'd) already has provided that instruction to his people.
>
> The Debtors have been evaluating the Committee's request to cease the reconstruction and, quite frankly, the Debtors are not even done with their own analysis. The prospect of having incomplete books raises a number of very difficult issues for the Debtors. I raised some of the issues with you and provided you with a preliminary analysis yesterday in hopes of getting the ball moving. The Debtors are concerned about the tax issues (both prospective $1M penalties and potentially breached fiduciary obligations) and avoidance action facilitation (preference and fraudulent transfer liability and defenses). If your Committee does not alter its instruction, the Debtors likely will come to you with a more complete description of their concerns and ask your Committee to evaluate the situation yet again.
>
> I understood one of the issues was the prospective cost of the endeavor. As I informed you yesterday, Howard Grobstein likely would be willing to cap his firm's fees related to the reconstruction from November 1, 2013 through completion at $450K. This may address Rich's concerns about the costs spiraling out of control. Any such agreement – even if voluntary -- likely would need, at minimum, to be disclosed to the Court.
>
> Per your request, I will provide you with a name or two of potential Liquidating Trustees that your Committee may want to consider along with Mr. Kravitz (who I do not know well but about whom I have heard only good things). Obviously, whomever your Committee chooses as their choice or choices (if there were more than one acceptable alternative, that likely would show some flexibility in the process) would need to be interviewed by the Debtor in the context of a proposing a joint plan of reorganization.
>
> Rodger

3

EXHIBIT 1
5

Rodger Landau
Partner

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-557-0051
Fax: 310-557-0056
E-mail: rlandau@lgbfirm.com
Web: www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Roussey, John (NBCUniversal) [mailto:John.Roussey@nbcuni.com]
**Sent:** Wednesday, October 30, 2013 10:06 AM
**To:** Rodger M. Landau
**Cc:** Richard Pachulski (rpachulski@pszjlaw.com); Jeffrey Dulberg (jdulberg@pszjlaw.com)
**Subject:** Committee request relating to reconstruction and other issues

Rodger—

On behalf of the whole Committee, I want to extend my appreciation for yesterday's lunch and for welcoming Province to the KSL offices. It is tremendously important to the Committee that, after a thorough review of the situation, Province report back quickly on its outlook for the wind down.

It was informative to hear your reasoning for continuing the reconstruction of the books and records. We will consider your arguments on the potential taxes and penalties owed (or not), the preference analysis reasoning, and forensics as we need time, and information, to determine whether to support the reconstruction. That said, the reconstruction is expensive and I am still under instruction from the Committee to ask that you halt it pending our review. Therefore, I am reiterating our request that Howard's team put their pencils down while the Committee considers how best to proceed. We have a Committee meeting scheduled for Friday afternoon and my goal is to have the Committee's take on the reconstruction resolved by then but, either way, the Committee believes that we need the meter to stop while we consider the matter. Please let me know whether you will stop the work until we have reviewed the matter.

Please let us know by the end of today if this program of action will be implemented.

John Roussey

4

EXHIBIT 1
6

# EXHIBIT 2

| | |
|---|---|
| **From:** | Richard Pachulski <rpachulski@pszjlaw.com> |
| **Sent:** | Monday, November 11, 2013 7:49 AM |
| **To:** | Rodger M. Landau |
| **Cc:** | Howard Grobstein (hgrobstein@gtfas.com); Monica Rieder; Jon L.R. Dalberg; John Roussey; Jeffrey Dulberg |
| **Subject:** | Re: Committee Request Relating to Delay of Reconstruction |

Roger, while you are a slimeball, I guess you agree with my reference to you as unprofessional.

Sent from my BlackBerry 10 smartphone.
From: Rodger M. Landau
Sent: Monday, November 11, 2013 7:36 AM
To: Richard Pachulski
Cc: Howard Grobstein (hgrobstein@gtfas.com); Monica Rieder; Jon L.R. Dalberg; John Roussey; Jeffrey Dulberg
Subject: RE: Committee Request Relating to Delay of Reconstruction


Rich:

I try to do my best for my clients.

Please do not refer to me as a "slimeball." It's not nice.

Rodger

P.S. The Debtors' recent proposal contemplates that neither of our firms would be employed postconfirmation (thereby eliminating the issue that you claim is secretly my goal).


Rodger Landau
Attorney

Landau Gottfried & Berger LLP
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-557-0051
Fax: 310-557-0056
E-mail: rlandau@lgbfirm.com
Web: www.lgbfirm.com
Please consider the environment before printing.
This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.
Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and

cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

-----Original Message-----
From: Richard Pachulski [mailto:rpachulski@pszjlaw.com]
Sent: Monday, November 11, 2013 7:06 AM
To: Rodger M. Landau
Cc: Howard Grobstein (hgrobstein@gtfas.com); Monica Rieder; Jon L.R. Dalberg; John Roussey; Jeffrey Dulberg
Subject: Re: Committee Request Relating to Delay of Reconstruction

Roger I will not dignify your rant and babble with a response other than if I think it is necessary to hurt a relationship with a member of a Committee to stop a bad deal with an unprofessional slimeball like yourself I will do that. We all know your goal is to find a position in the case so you can sue everyone and rip off this estate as you have done so often in the past. That will not happen on my watch.

Sent from my BlackBerry 10 smartphone.
From: Rodger M. Landau
Sent: Monday, November 11, 2013 5:06 AM
To: Richard Pachulski
Cc: Howard Grobstein (hgrobstein@gtfas.com); Monica Rieder; Jon L.R. Dalberg; John Roussey; Jeffrey Dulberg
Subject: RE: Committee Request Relating to Delay of Reconstruction

Rich:

Wow. I believe you should stop emailing using smart phones.

By "burying [your] relationship with Roussey," were you referring to Mr. John Roussey (who presumably was inadvertently cc'd on your email?), an executive of NBC/Universal and the chairman of the Committee that your firm represents? Does your firm's ability to make money in the KSL case really trump its interest in acting respectfully and honestly with Mr. Roussey and NBC/Universal? Your words, and your approach, are remarkable – even if intended to be a private email from you to your partner, Jeff Dulberg.

As to your claim that "you can get the votes," did you mean that you have the political ability to manipulate the Committee politics so that you can subvert the reasonable approach of your Committee chairperson (presumably for the benefit of Mr. Peter Kravitz, a person who regularly hires your firm postpetition)? John is a smart and honest man. You should be happy to have him as a client (as well as NBC/Universal). I believe you and your firm owe him (and his company) more respect than you are giving him (independent of your firm's ability to manipulate committees). His email from last night appeared productive to me – he suggested that the Committee should interview more than just Peter Kravitz as a potential Liquidating Trustee. That is not a reason for your firm to attack him, marginalize him, manipulate other committee members, etc. (I somehow suspect that the General Counsel of NBC/Universal will know how to handle this issue better than me).

By "letting Landau win," did you mean to imply that the most important thing to you is to "beat" me (or my firm) rather than to act for the benefit of creditors? I am a fiduciary and am counseling the Debtors to act for the benefit of creditors, not for the benefit of increasing professional fees. I regret that I have felt compelled to counsel my client to be adverse to the Committee in any way (because, at least theoretically, the interests are supposed to be exactly aligned).

Let's discuss how you plan to handle your and Jeff's errant emails later this morning. I am concerned about my own duties as a recipient of your email (I will be seeking separate counsel as to that issue). My suggestion is that John -- as a

2

EXHIBIT 2
8

recipient of these emails and the Committee chairperson who you would not mind "burying" and around whom you believe you can manipulate -- should be included in our discussion.

Rodger

P.S,. I again ask you to stop sending emails to people (including Associates at my firm for which I serve as Managing Partner) explaining your alleged view that I am a "complete idiot," and a "complete fool who lies" (I don't lie – I leave it to others to decide how smart I am).


Rodger Landau
Attorney

Landau Gottfried & Berger LLP
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-557-0051
Fax: 310-557-0056
E-mail: rlandau@lgbfirm.com<mailto:rlandau@lgbfirm.com>
Web: www.lgbfirm.com<http://www.lgbfirm.com/>
Please consider the environment before printing.
This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.
Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

From: Richard Pachulski [mailto:rpachulski@pszjlaw.com]
Sent: Sunday, November 10, 2013 10:28 PM
To: Jeffrey Dulberg; Rodger M. Landau
Cc: Howard Grobstein (hgrobstein@gtfas.com); Monica Rieder; Jon L.R. Dalberg; John Roussey
Subject: RE: Committee Request Relating to Delay of Reconstruction

Remember that I can get the votes. I will bury our relationship with Roussey before I ever let Landau win.

From: Jeffrey Dulberg
Sent: Sunday, November 10, 2013 10:27 PM
To: Richard Pachulski; Rodger M. Landau
Cc: Howard Grobstein (hgrobstein@gtfas.com<mailto:hgrobstein@gtfas.com>); Monica Rieder; Jon L.R. Dalberg; John Roussey
Subject: Re: Committee Request Relating to Delay of Reconstruction

Just remember john is a dove

From: Richard Pachulski
Sent: Sunday, November 10, 2013 9:55 PM
To: Rodger M. Landau

3

EXHIBIT 2
9

Cc: Jeffrey Dulberg; Howard Grobstein (hgrobstein@gtfas.com<mailto:hgrobstein@gtfas.com>); Monica Rieder; Jon L.R. Dalberg; John Roussey
Subject: Re: Committee Request Relating to Delay of Reconstruction

Roger, you are a complete idiot! At no time did I ever hint that credit is an issue with regards to anything. Please stop sending me e-mails about what you believe, because I believe that you are a complete fool who lies and makes stuff up as you go. Getting credit for hiring Howard is a total joke. Have a nice evening.

Sent from my BlackBerry 10 smartphone.
From: Rodger M. Landau
Sent: Sunday, November 10, 2013 7:26 PM
To: Richard Pachulski
Cc: Jeffrey Dulberg; Howard Grobstein (hgrobstein@gtfas.com<mailto:hgrobstein@gtfas.com>); Monica Rieder; Jon L.R. Dalberg; John Roussey
Subject: RE: Committee Request Relating to Delay of Reconstruction

Rich:

I realize that people tend to hire/trust their own firms. That was not your point.

Your point was that we should stop the reconstruction so that a Liquidating Trustee can direct the business to themselves (or get credit for continuing to direct it to Mr. Grobstein). Even under your "clarification," the problem is not with Mr. Grobstein -- it's with who gets credit for hiring Mr. Grobstein (and your belief that we should delay the estate's business until they can obtain that credit).

I hereby assign all of the credit for Mr. Grobstein's hiring to you and your firm (I disavow all of it -- it's just not the way I do business). The reconstruction is 45% complete and needs to be completed. Having someone re-do it, or assume responsibility mid-stream for it, makes no sense to me (and I presume would not make sense to any Liquidating Trustee who is interested in fulfilling his/her fiduciary duties to creditors).

Rodger

Rodger Landau
Attorney

Landau Gottfried & Berger LLP
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-557-0051
Fax: 310-557-0056
E-mail: rlandau@lgbfirm.com<mailto:rlandau@lgbfirm.com>
Web: www.lgbfirm.com<http://www.lgbfirm.com>
Please consider the environment before printing.
This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

4

EXHIBIT 2
10

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

-----Original Message-----
From: Richard Pachulski [mailto:rpachulski@pszjlaw.com]
Sent: Sunday, November 10, 2013 6:47 PM
To: Rodger M. Landau
Cc: Jeffrey Dulberg; Howard Grobstein (hgrobstein@gtfas.com<mailto:hgrobstein@gtfas.com>); Monica Rieder; Jon L.R. Dalberg; John Roussey
Subject: Re: Committee Request Relating to Delay of Reconstruction
Importance: High

Rodger just advise what your client's representative who operated a company without books and records for 3 years wants to do. The Committee can then formulate their response.

Just to be clear, what I said is that based on my experience liquidating trustees who have firms capable of reconstructing books and records will use their own firms. Since I haven't spoken to any of them I have no idea what they will actually do. As to Peter, I have no clue what he would do and said very clearly at the meeting that while Peter if retained may use Howard he may very well use someone else. Just because you decided to start by using Howard for the reconstruction does not make it the correct decision and the Committee has no intention of being bound by that decision. We will not allow a totally incompetent debtor to dictate to the Committee, plain and simple.

Sent from my BlackBerry 10 smartphone.
From: Rodger M. Landau
Sent: Sunday, November 10, 2013 6:35 PM
To: Richard Pachulski
Cc: Jeffrey Dulberg; Howard Grobstein (hgrobstein@gtfas.com<mailto:hgrobstein@gtfas.com>); Monica Rieder; Jon L.R. Dalberg; John Roussey
Subject: RE: Committee Request Relating to Delay of Reconstruction

Good Evening, Rich:

As you may recall, you explained on Friday – including in front of your own client (John) – that, if Brad Sharp were appointed Liquidating Trustee, he would want to hire his own firm to re-do the reconstruction; if Todd Nielsen were appointed Liquidating Trustee, he would hire his own firm to re-do it; if David Gottlieb were appointed Liquidating Trustee, he would hire his own firm to re-do it, etc. You further opined that, if Peter Kravitz were appointed Liquidating Trustee, that he likely would hire Howard Grobstein to complete the reconstruction (the implication was clear). When I suggested that I was uninterested in treating the needs of the estate as "graft" and simply wanted to make sure the estate's business gets done in an efficient and effective manner (by allowing Mr. Grobstein to complete the job assigned to him), you raised your voice and started to disparage Mr. Grobstein (I refrain from describing what you said about Mr. Grobstein). That's what you said – including in front of your own client, an executive of NBC/Universal (your words were loud and unequivocal).

Whether the Debtor hired Brad's firm, Todd's firm, David's firm or Howard's firm, my understanding is that the reconstruction would be done the same way (if the Committee has concerns about how the reconstruction is being done, it has not expressed those concerns). I am not trying to "help" Howard's firm – I am trying to make sure the estate's interests are addressed pursuant to the fiduciary duties of my client (whose prior financial mismanagement is unrelated to its hiring of Mr. Grobstein's firm). Please understand that the reconciliation began months before the

5

EXHIBIT 2
11

Committee was even created (and has been described to the Court throughout, including in the first papers filed with the Court).

Your rationale for suspending the reconstruction is contrary to the rationale that the Committee provided to the Debtor ten days ago when it successfully argued for a temporary suspension. The Debtor disagrees that the reconstruction needs to be re-done or done by someone else (the scope could be debated and we could discuss that). I plan to speak to my client tomorrow and invited John and you to provide me with your thoughts about the concerns contained in my email. If the Debtor recommences the reconstruction, I will ask Howard whether it would be efficient to restart it by first focusing on the later time period that you identify.

Have a good evening.

Rodger

P.S. I am neither a "liar" nor engaged in "psycho-babble." Just a lawyer with a migraine on a Sunday night.

Rodger Landau
Attorney

Landau Gottfried & Berger LLP
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-557-0051
Fax: 310-557-0056
E-mail:
rlandau@lgbfirm.com<mailto:rlandau@lgbfirm.com<mailto:rlandau@lgbfirm.com%3cmailto:rlandau@lgbfirm.com>>
Web: www.lgbfirm.com<http://www.lgbfirm.com/>
Please consider the environment before printing.
This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.
Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

From: Richard Pachulski [mailto:rpachulski@pszjlaw.com]
Sent: Sunday, November 10, 2013 4:32 PM
To: Rodger M. Landau; John Roussey
Cc: Jeffrey Dulberg; Howard Grobstein (hgrobstein@gtfas.com<mailto:hgrobstein@gtfas.com>); Monica Rieder; Jon L.R. Dalberg
Subject: RE: Committee Request Relating to Delay of Reconstruction

Rodger, please see my comments below:

From: Rodger M. Landau [mailto:RLandau@LGBFirm.com]<mailto:[mailto:RLandau@LGBFirm.com]>
Sent: Sunday, November 10, 2013 12:25 PM
To: John Roussey

6

EXHIBIT 2
12

Cc: Richard Pachulski; Jeffrey Dulberg; Howard Grobstein
(hgrobstein@gtfas.com<mailto:hgrobstein@gtfas.com<mailto:hgrobstein@gtfas.com%3cmailto:hgrobstein@gtfas.com>
>); Monica Rieder; Jon L.R. Dalberg
Subject: Committee Request Relating to Delay of Reconstruction

Hi John:

As an accommodation to your Committee, the Debtor suspended its reconstruction efforts so that your Committee purportedly could evaluate the utility of the Debtor's financial reconstruction (see emails below). My understanding of the Committee's concerns from you were that it wanted to address whether the reconstruction is necessary in light of the estate's tax reporting issues and potential avoidance action issues. My understanding is that the Committee was evaluating those issues and, concurrently, the Debtor has been working on a memorandum to address these concerns (which has cost a lot of time and money). The purported nature of the concerns were discussed between us as well as addressed in the email below. I will try to get you the memorandum that my firm has been working on this week.

On Friday, Rich Pachulski – in a meeting attended by a number of people including you and me -- explained that the issue is not whether the reconstruction should occur but who should do it. RODGER THIS IS AN OUTRIGHT LIE. I TOLD YOU THAT THE COMMITTEE WAS EVALUATING WHETHER THE WORK SHOULD BE DONE, AND EVEN IF SO, TO WHAT EXTENT IT SHOULD BE DONE (e. g. SHOULD ALL YEARS BACK TO 2010 BE DONE, OR JUST 2013. PLEASE TRY NOT TO DISTORT THE TRUTH AGAIN,WHICH I KNOW IS VERY HARD FOR YOU) Obviously, that was not the purported reason for your request to suspend the reconstruction. Mr. Pachulski explained that he believes that the Liquidating Trustee (who might be appointed in six months) should choose the financial advisor who performs the reconstruction. I DID SAY THAT IF, AND TO THE EXTENT A RECONSTRUCTION SHOULD BE DONE THE LIQUIDATING TRUSTEE SHOULD DO THE RECONSTRUCTION WITH THE PROFESSIONALS OF HIS CHOOSING AND NOT THE DEBTOR WHO HOPELESSLY MISMANAGED THE COMPANY BEFORE THE FILING. THE PRINCIPAL OF THE DEBTOR CONFIRMED THAT MISMANAGEMENT OF THE DEBTOR AT OUR MEETING ON FRIDAY. THE DEBTOR SHOULD NOT BE INVOLVED IN THE RECONSTRUCTION WHEN THE PRINCIPALS OF THE DEBTOR WERE INVOLVED IN CREATING A SHAMBLES OF THE BOOKS. Other than redirecting the work to a different professional, I do not understand this rationale and that rationale certainly was never discussed between us. The reconstruction is approximately 45% done (approximately $450K is needed to complete the project) and I cannot imagine a rationale for bringing in a different professional to start over. BECAUSE THE COMMITTEE NEEDS TO EVALUATE WHETHER THE MONEY WAS WASTED AND A DIFFERENCT SET OF CRITERIA SHOULD HAVE BEEN UTILIZED TO DO THE RECONSTRUCTION. I KNOW THAT YOU ARE TRYING TO HELP HOWARD WITH HIS NEW FIRM, BUT THAT IS NOT A GOOD ENOUGH REASON TO START THE RECONSTRUCTION PREMATURELY. It likely would turn a 45% complete project likely to be completed prior to confirmation into a potential $2.0 million one year post-confirmation fiasco. Mr. Grobstein is one of the best bankruptcy accountants I know and I simply cannot imagine a competent Liquidating Trustee deciding not to rely on the reconstruction that he completes. FORTUNATELY THE LIQUIDATING TRUSTEE WILL BE DOING THAT EVALUATION AND NOT YOU, AND WHETHER THERE HAS BEEN A BREACH OF THE DEBTOR'S FIDUCIARY DUTIES TRYING TO RECONCILE THE BOOKS BEFORE CONSULTING WITH THE COMMITTEE

If the Committee had possessed a real concern about whether the reconstruction should occur, then the Debtor would have been receptive to that concern. The Committee's concern about whether Grobstein Teeple should do the reconstruction – given that they already are 45% done – just does not make sense to the Debtor. The prospect that the reconstruction should be halted so that it can be delayed and potentially cost four or five times more to re-do (there is approximately $450K of work left – higher priced alternative providers may well charge over $2 million to do it over) simply does not make sense in the context of a procedure that should be focused on minimizing cost and time for the benefit of unsecured creditors. If the Debtor had known that the nature of the concern was not the reconstruction's utility (as we discussed and could reasonably be debated), the Debtor likely never would have agreed to any suspension.

Consistent with my promise to you and your counsel, the Debtor will not re-commence the reconstruction without first informing you and your counsel (I will be discussing this issue with my client on Monday). The Debtor's concern is that the issue no longer appears to be resolution of whether the reconstruction should occur (the reason the reconstruction

EXHIBIT 2
13

was delayed) but instead who accomplishes the reconstruction (an issue with which the Debtor does not believe can be reasonably debated). RODGER, SEE MY REFERENCE TO YOUR LIES ABOVE. THE ISSUE IS WHETHER AND TO WHAT EXTENT THE RECONSTRUCTION SHOULD BE DONE AND WHO SHOULD DO IT. YOUR OPINION AS TO WHETHER AND WHO IS NOT WORTH THE CYBERSPACE YOUR E-MAIL ORIGINATED THROUGH.

P. S. AS COMPARED TO JEFF WHO HAS MORE PATIENCE THAN I DO, I DO NOT INTEND TO RESPOND TO YOUR COUNTLESS PSYCHO-BABBLE E-MAILS THAT WILL BE GENERATED BY YOU BASED ON MY COMMENTS ABOVE, AND LET'S JUST LEAVE IT THAT I FUNDAMENTALLY DISAGREE WITH YOUR POSITIONS RELATING TO HOW TO MANAGE THIS CASE.

Rodger

Rodger Landau
Attorney

Landau Gottfried & Berger LLP
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-557-0051
Fax: 310-557-0056
E-mail:
rlandau@lgbfirm.com<mailto:rlandau@lgbfirm.com<mailto:rlandau@lgbfirm.com%3cmailto:rlandau@lgbfirm.com>>
Web: www.lgbfirm.com<http://www.lgbfirm.com/>
Please consider the environment before printing.
This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.
Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

From: Roussey, John (NBCUniversal) [mailto:John.Roussey@nbcuni.com]
Sent: Thursday, October 31, 2013 11:28 AM
To: Rodger M. Landau
Cc: Richard Pachulski
(rpachulski@pszjlaw.com<mailto:rpachulski@pszjlaw.com<mailto:rpachulski@pszjlaw.com%3cmailto:rpachulski@pszjlaw.com>>); Jeffrey Dulberg
(jdulberg@pszjlaw.com<mailto:jdulberg@pszjlaw.com<mailto:jdulberg@pszjlaw.com%3cmailto:jdulberg@pszjlaw.com>>); Howard Grobstein
(hgrobstein@gtfas.com<mailto:hgrobstein@gtfas.com<mailto:hgrobstein@gtfas.com%3cmailto:hgrobstein@gtfas.com>>); Monica Rieder; Jon L.R. Dalberg
Subject: Re: Committee request relating to reconstruction and other issues

Rodger,

Thanks for the meeting Tuesday, the lunch, and agreeing to have Howard put the reconstruction work on hold. The Committee will be meeting this Friday to discuss the potential benefits or pitfalls relating to the continuation of the reconstruction work, and would like to have Paul available to report to the Committee Friday with his recommendations

as to whether or not to move forward. We also appreciate the offer/plan presented to continue the reconstruction work and cap Howard's fees. Jeff, Rich and I will also discuss that with the Committee during tomorrow's call.

Thank you for providing names of potential Liquidating Trustees - this will be another discussion point for the Committee call tomorrow.

Finally, the Committee would like to get in front of some housekeeping issues. Specifically employment and benefit issues.

Per review of the employee list, there are a number of persons that should most likely be put on a contract/hourly basis (NY employees), as well as some in LA and help through the reconciliation. I do not have the specific names in front of me as I am out of the office today; however, we can discuss tomorrow if necessary.

Secondly, in light of the accounting firm holding the 401(k) plan audit hostage for 2012, and knowing a similar situation will most likely arise in 2013, the Committee believes that it may be prudent to discontinue the 401(k) plan to employees as soon as possible - especially before 2014 starts as we do not believe it would be prudent to have the plan operating in 2014 (and have to have an audit for 2014 as well.

Nevertheless, the Committee greatly appreciates the temporary halt to the reconstruction process, and will get back to everyone next week to discuss the possibility of continuing the reconstruction work.

Please let me know if you have any questions or concerns.


John Roussey


Sent from my iPad

On Oct 30, 2013, at 12:35 PM, "Rodger M. Landau"
<RLandau@LGBFirm.com<mailto:RLandau@LGBFirm.com<mailto:RLandau@LGBFirm.com%3cmailto:RLandau@LGBFirm
.com>>> wrote:
Hi John:

As to your request that Grobstein Teeple put their pencils down on their reconstruction efforts until Friday, the Debtors will do as you request. Janet is comfortable with that accommodation and Howard (who is cc'd) already has provided that instruction to his people.

The Debtors have been evaluating the Committee's request to cease the reconstruction and, quite frankly, the Debtors are not even done with their own analysis. The prospect of having incomplete books raises a number of very difficult issues for the Debtors. I raised some of the issues with you and provided you with a preliminary analysis yesterday in hopes of getting the ball moving. The Debtors are concerned about the tax issues (both prospective $1M penalties and potentially breached fiduciary obligations) and avoidance action facilitation (preference and fraudulent transfer liability and defenses). If your Committee does not alter its instruction, the Debtors likely will come to you with a more complete description of their concerns and ask your Committee to evaluate the situation yet again.

I understood one of the issues was the prospective cost of the endeavor. As I informed you yesterday, Howard Grobstein likely would be willing to cap his firm's fees related to the reconstruction from November 1, 2013 through completion at $450K. This may address Rich's concerns about the costs spiraling out of control. Any such agreement – even if voluntary -- likely would need, at minimum, to be disclosed to the Court.

9

EXHIBIT 2
15

Per your request, I will provide you with a name or two of potential Liquidating Trustees that your Committee may want to consider along with Mr. Kravitz (who I do not know well but about whom I have heard only good things). Obviously, whomever your Committee chooses as their choice or choices (if there were more than one acceptable alternative, that likely would show some flexibility in the process) would need to be interviewed by the Debtor in the context of a proposing a joint plan of reorganization.

Rodger

Rodger Landau
Partner

Landau Gottfried & Berger LLP
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-557-0051
Fax: 310-557-0056
E-mail:
rlandau@lgbfirm.com<mailto:rlandau@lgbfirm.com<mailto:rlandau@lgbfirm.com%3cmailto:rlandau@lgbfirm.com>>
Web: www.lgbfirm.com<http://www.lgbfirm.com/>
Please consider the environment before printing.
This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.
Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

From: Roussey, John (NBCUniversal) [mailto:John.Roussey@nbcuni.com]<mailto:[mailto:John.Roussey@nbcuni.com]>
Sent: Wednesday, October 30, 2013 10:06 AM
To: Rodger M. Landau
Cc: Richard Pachulski
(rpachulski@pszjlaw.com<mailto:rpachulski@pszjlaw.com<mailto:rpachulski@pszjlaw.com%3cmailto:rpachulski@pszjla
w.com>>); Jeffrey Dulberg
(jdulberg@pszjlaw.com<mailto:jdulberg@pszjlaw.com<mailto:jdulberg@pszjlaw.com%3cmailto:jdulberg@pszjlaw.com>
>)
Subject: Committee request relating to reconstruction and other issues

Rodger—

On behalf of the whole Committee, I want to extend my appreciation for yesterday's lunch and for welcoming Province to the KSL offices. It is tremendously important to the Committee that, after a thorough review of the situation, Province report back quickly on its outlook for the wind down.

It was informative to hear your reasoning for continuing the reconstruction of the books and records. We will consider your arguments on the potential taxes and penalties owed (or not), the preference analysis reasoning, and forensics as we need time, and information, to determine whether to support the reconstruction. That said, the reconstruction is expensive and I am still under instruction from the Committee to ask that you halt it pending our review. Therefore, I am reiterating our request that Howard's team put their pencils down while the Committee considers how best to proceed. We have a Committee meeting scheduled for Friday afternoon and my goal is to have the Committee's take on the

reconstruction resolved by then but, either way, the Committee believes that we need the meter to stop while we consider the matter. Please let me know whether you will stop the work until we have reviewed the matter.

Please let us know by the end of today if this program of action will be implemented.


John Roussey

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**Landau Gottfried & Berger LLP; 1801 Century Park East, Suite 700; Los Angeles, CA 90067**

A true and correct copy of the foregoing document entitled (*specify*): ***DEBTORS' INITIAL OPPOSITION TO, AND REQUEST FOR HEARING ON, APPLICATION FOR AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT OF PACHULSKI STANG ZIEHL & JONES LLP AS COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS NUNC PRO TUNC TO OCTOBER 10, 2013; DECLARATION OF RODGER M. LANDAU IN SUPPORT THEREOF*** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 11, 2013**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) **November 11, 2013**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 11, 2013**  I served the following persons and/or entities by **personal delivery**, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or **email** as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Alan M. Ahart
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 342 / Courtroom 303
Woodland Hills, CA 91367

United States Trustee (SV)
Attn: S Margaux Ross
21051 Warner Ctr Ln Ste 115
Woodland Hills, CA 91367

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____11/11/2013_____        Samuel J. Colen_____        _____
Date                                    Printed Name                            Signature

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NEF (continued)**:

- Allison R Axenrod    allison@claimsrecoveryllc.com
- Wanda Borges    ecfcases@borgeslawllc.com
- Howard Camhi    hcamhi@ecjlaw.com, kanthony@ecjlaw.com
- Sara Chenetz    schenetz@perkinscoie.com, dlax@perkinscoie.com
- Jeff Cohen    JC@Southpaw Asset.com
- Natalie B. Daghbandan    natalie.daghbandan@bryancave.com,
  raul.morales@bryancave.com;theresa.macaulay@bryancave.com
- Jon L Dalberg    jdalberg@lgbfirm.com, nceresoto@lgbfirm.com;marizaga@lgbfirm.com;scolen@lgbfirm.com
- Ted A Dillman    Ted.dillman@lw.com
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com, tjones@wgllp.com
- Mary L Fullington    lexbankruptcy@wyattfirm.com, pwest@wyattfirm.com
- Scott F Gautier    sgautier@peitzmanweg.com
- Paul R. Glassman    pglassman@sycr.com
- Eric D Goldberg    egoldberg@stutman.com
- Emil W Herich    eherich@kilpatricktownsend.com,
  acaviles@kilpatricktownsend.com;tmeyers@kilpatricktownsend.com;sramsey@kilpatricktownsend.com
- Marsha A Houston    mhouston@reedsmith.com
- Robbin L Itkin    ritkin@steptoe.com
- Lawrence M Jacobson    lmj@gfjlawfirm.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- Jeffrey A Krieger    jkrieger@ggfirm.com,
  kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;sgaeta@greenbergglusker.com
- Rodger M Landau    rlandau@lgbfirm.com, marizaga@lgbfirm.com;rmartin-patterson@lgbfirm.com;kalandy@lgbfirm.com
- Mary D Lane    mal@msk.com, mec@msk.com
- Paul J Laurin    plaurin@btlaw.com, tpearsall@btlaw.com
- Ira M Levee    ilevee@lowenstein.com, ehorn@lowenstein.com
- Richard M Lorenzen    RLorenzen@perkinscoie.com, KHardy@perkinscoie.com
- Scotta E McFarland    smcfarland@pszjlaw.com, smcfarland@pszjlaw.com
- Neeta Menon    nmenon@btlaw.com
- Vahid Naziri    vnaziri@anhlegal.com, matthew@anhlegal.com
- Matthew Ochs    mjochs@hollandhart.com, sjohnson@hollandhart.com
- Michael H Raichelson    mhr@cabkattorney.com
- Thomas Rice    trice@coxsmith.com, phuffstickler@coxsmith.com
- Monica Rieder    mrieder@lgbfirm.com, rmartin-patterson@lgbfirm.com;scolen@lgbfirm.com
- Christopher O Rivas    crivas@reedsmith.com
- S Margaux Ross    margaux.ross@usdoj.gov
- Norman D Schoenfeld    lsi@liquiditysolutions.com
- David B Shemano    dshemano@peitzmanweg.com
- Jonathon Shenson    jshenson@shensonlawgroup.com
- Alan R Smith    mail@asmithlaw.com
- Tiffany Strelow Cobb    tscobb@vorys.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Sharon Z. Weiss    sharon.weiss@bryancave.com, raul.morales@bryancave.com
- Dennis J Wickham    wickham@scmv.com, nazari@scmv.com
- Robert G Wilson    rwilson@lgbfirm.com, kalandy@lgbfirm.com
- Bruce J Zabarauskas    bruce.zabarauskas@tklaw.com
- Amy A Zuccarello    azuccarello@sandw.com
- Roye Zur    rzur@lgbfirm.com, rmartin-patterson@lgbfirm.com;scolen@lgbfirm.com;kalandy@lgbfirm.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

2. **SERVED BY UNITED STATES MAIL (Continued)**:

**_Committee Members_**
Fox Cable Network Services, LLC
c/o Barnes & Thornburg LLP
2029 Century Park East, Ste. 300
Los Angeles, CA 90067
Attn: Paul Laurin

MacDonald Media LLC
185 Madison Ave. 4th Floor
New York, NY 10016
Attn: Andrea MacDonald

Telebrands Corp.
One Telebrands Plaza
Fairfield, NJ 07004
Attn: Bob Barnett

TV Guide Networks, LLC
1800 N. Highland Ave., 7th Floor
Los Angeles, CA 90028
Attn: Kathy Sarrami

Valassis
235 Great Pond Drive
Windsor, CT 06095
Attn: Hal Manolan

Viacom Media Networks
1540 Broadway
New York, NY 10036
Attn: Ross Weston

3. **SERVED BY EMAIL (Continued)**:

**_Proposed Counsel_**
Pachulski Stang Ziehl & Jones LLP
Richard M. Pachulski: rpachulski@pszjlaw.com
Jeffrey W. Dulberg: jdulberg@pszjlaw.com

**_Committee Chair_**
John Roussey: John.Roussey@nbcuni.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**