Philip J. Layfield
8 The Green
Suite 6426
Dover, Delaware 19901
(302) 401-6804
phil@maximum.global

Alleged Debtor

**FILED**

**OCT 15 2018**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Philip James Layfield<br><br>              Debtor, | Case No.: 2:18-bk-15829-NB<br><br>Chapter 7<br><br>Assigned to: Hon. Neil Bason<br><br>**ALLEGED DEBTOR PHILIP J. LAYFIELD'S REPLY TO EXPEDITED MOTION FOR ENTRY OF AN ORDER FINDING JOHN JANSHESKI IN WILLFUL VIOLATION OF THE AUTOMATIC STAY AND ASSESSING SANCTIONS INCLUDING ACTUAL AND PUNTIVE DAMAGES AND**<br><br>**Hearing Date: October 24, 2018**<br>**Hearing Time: 10:00am**<br>**Place: Courtroom 1545**<br>       **255 E. Temple Street**<br>       **Los Angeles, CA 90012** |

1    **TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY**

2    **JUDGE; WESLEY H. AVERY-INTERIM, CHAPTER 7 TRUSTEE; AND THE**

3    **OFFICE OF THE UNITED STATES TRUSTEE:**

4

5        Alleged debtor, Philip J. Layfield (hereinafter "Layfield" or "Mr. Layfield Debtor"),

6    hereby submits this Reply in Support of his Expedited Motion for an Order Finding John

7    Jansheski in Willful Violation of the Automatic Stay and Assessing Sanctions Including

8    Actual and Punitive Damages (the "Reply").  On October 10, 2018, Wesley Avery, the

9    chapter 7 interim-trustee ("Trustee") filed a Limited Opposition (the "Opposition").  See

10

11   Docket #69.  Mr. Jansheski filed a Response on October 10, 2018.  See Docket #72.

12        After having reviewed the two Opposition and various communications in this

13   particular matter and other matters, it is apparent that the parties opposing the return of this

14   property and doing this to just be vindictive.  This property has no value to the estate, is

15

16   clearly exemption property and the cost and effort to oppose this far outweighs the value of

17   the property.  In short, the Trustee is just being mean for the purpose of being mean.  The

18   wine consists of several cases of wine that was created by Mr. Layfield and his wife for their

19   anniversary several years ago.  The label was custom designed by Mr. Layfield's wife and has

20

21   the Layfield name on all bottles.  This property has no value to anyone other than Mr. Layfield

22   and his family.  It is purely sentimental.  There is no commercial market for this wine and the

23   efforts of Mr. Golden to interfere with the return of this wine clearly show that Mr. Golden is

24   incapable of properly advising Mr. Avery as counsel.  Mr. Golden is conflicted to the point

25

26   that he is willing to spend thousands of dollars in unnecessary litigation costs pursuing

27   baseless claims for the sole purpose of inflicting additional harm on Mr. Layfield and his

28

1    family. Mr. Golden has accused Mr. Layfield of hiding $10 million in assets yet not even the

2    United States government, with all of their resources has been able to locate any such assets.

3    Mr. Golden is wasting this court's time fighting the return of Mr. Layfield's exemption

4    
5    property. If the issue were the logistics, regulations or cost of shipping the wine, Mr. Layfield

6    could arrange for a family member or friend to pick up the wine at a time convenient for Mr.

7    Jansheski. This could be accomplished with a few phone calls. Instead, Mr. Golden is

8    engaged in scorched earth tactics to deprive Mr. Layfield and his family of his rightful

9    
10    exemption property.

11        With respect to Mr. Jansheski's position, he is not as innocent as Mr. LeBlanc and thus

12    sanctions should be imposed on Mr. Jansheski. Mr. Jansheski has well advised counsel and

13    has refused to turn over this property since Mr. Layfield was arrested. Mr. Layfield's wife

14    was trying to get the property returned and Mr. Jansheski has been refusing since February of

15    
16    2018. To make matters worse, Mr. Jansheski decided to file an intentionally misleading Reply

17    whereby Mr. Jansheski is attempting to inflict further harm on Mr. Layfield by claiming that

18    Mr. Layfield threatened him and continues to threaten him. Those assertions are blatantly

19    false and designed solely to provide more false and misleading information to the United

20    
21    States Attorney. Attached as Exhibits 1-4 are the relevant communications to Mr. Jansheski

22    or his representatives regarding the wine and personal materials. As can be clearly shown,

23    these are standard "litigation" type communications requesting that an opposing party take

24    action. The assertion by Mr. Jansheski that Mr. Layfield threatened him in some improper

25    manner is patently absurd. Considering that Mr. Jansheski is a skilled litigant who has taken

26    
27    millions of dollars from opposing parties in highly contested and complex litigation further

28

1   belies his improper representation.  It is clear that Mr. Jansheski is attempting to use the

2   existence of this bankruptcy to advance his personal goals and he should be assessed damages.

3

4       Mr. Jansheski appears to have relied partly on the misguided information being

5   provided by the Trustee's counsel that Mr. Jansheski should turn over Alleged Debtor's

6   Exemption property to the Trustee.  As more fully set forth in Alleged Debtor's Motion for

7   Protective Order, See Docket #54, the property being held by Jansheski is Alleged Debtor's

8   Exemption Property and/or has no value to the estate.  The Trustee agrees that Jansheski

9   should be ordered to turn over the property.  At this phase, the Trustee is not in a position to

10  object to Alleged Debtor's Exemption Property.  In fact, because a Motion to Dismiss is

11  Pending, Alleged Debtor is not required to even begin the process of filing schedules in order

12

13  to disclose exempt property.  The time for the Trustee to object to improper exemptions is

14  within 30 days of the section 341 meeting.  FRBP 4003(b).  Here, the dollar amounts are

15  small.  In fact, if this Court were to take a step back for just a minute and assess this situation,

16  this Court would quickly realize that this entire situation is a complete waste of resources.

17

18      Alleged Debtor is not concealing millions of dollars.  Alleged Debtor has been under

19  investigation by the Department of Homeland Security, the FBI, the IRS Criminal Tax

20  Division and the United States Attorneys Office for the Central District of California since at

21  least October 2017 for allegations regarding theft of client funds.  Those agencies have

22  virtually unlimited resources and investigative powers.  To date, there has been no discovery

23  of any hidden assets.  The lead prosecutor, Mark Aveis, who was tricked into pursuing the

24  prosecution of Alleged Debtor was forced to admit that they have found no money.  This is

25  telling in so many ways.  First, the use of a Trustee and the employment of a team of attorneys

26

27

28

1    to further inflict harm on debtor is a waste of resources.  Secondly, the primary motivation of

2    Mr. Golden and his team is to prevent Alleged Debtor from asserting affirmative claims

3    against the parties that have caused harm to Alleged Debtor.  This Court should be able to

4

5    easily see through this gamesmanship and fashion the appropriate relief, which begins with a

6    simple order directing Mr. Jansheski to turn over Alleged Debtor's exemption property to

7    Alleged Debtor so that he can have the same benefits of every other debtor before this court

8    which is the beneficial use of his exemption property to support his family.  Any further

9

10    improper interference with Alleged Debtor's exemption property should not be tolerated.

11

12

13

14

15

16    Dated: 10/12/18

17                        By _____

                          Philip J. Layfield

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF PHILIP LAYFIELD

I, Philip J. Layfield, hereby Declare as follows:

1.    I have personal knowledge of the facts stated herein.

2.    If called upon to testify, I could and would testify to the facts stated to hereinafter

3.    I received the Reply by John Jansheski filed on October 10, 2018 when I logged into my Pacer monitoring service on October 11, 2018.  See Docket #72.  I was not served with an actual copy of the Reply and a review of Docket #72 shows no proof of service being filed.  Although Mr. Golden and others appear to avoid hearing any matter on the merits due to procedural deficiencies, I waive Mr. Jansheski's filing deficiencies and agree to proceed despite his lack of proof of service.

4.    Upon receiving Docket #72 where Mr. Jansheski claims that I threatened him in connection with my request for turnover, I performed a keyword search on my email using the keywords wine and bankruptcy.  Attached as Exhibits 1 through 4 are true and correct copies of the 4 email chains that resulted from my keyword search.

5.    Since February 23, 2018 I have not spoken to Mr. Jansheski.   To the extent Mr. Jansheski feels threatened, it must be as a result of the communications contained in Exhibits 1 to 4.

Dated this 12th day of October 2018 at Millsboro, DE.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

By: _____

Philip James Layfield

# **EXHIBIT 1**

Sent at: 8/15/2018 8:14:29 PM

# Re:

From: Philip Layfield <philip@zenith-law.com>
To: Chrissey Stephens <cstephens@pshcpas.com>
Cc: John Jansheski <jj@ushype.com>, Kevin McCready <kevin@ushype.com>

Dear Chrissey:

This is a confidential and protected settlement communication. I am in receipt of Ray's letter. First and foremost, it has always been my intention to work with John in an amicable and reasonable manner to resolve any issues. I have attached the following documents for your review:

1. Summary of all HED/Jansheski matters as of August 15, 2018;
2. Invoice for services performed in connection with HED capital raise by 3rd party;
3. Invoice from Cornell Club for items that have not been paid for (these items include a massage for John and other ancillary expenses, including a no-show fee for a room booked for Lex);
4. MLCR engagement with HED;
5. Email transmitting engagement letter

Regarding my overall opinion of this matter, I would like to point out some high level issues for consideration. First and foremost, all engagements were executed with Maximum Legal (Costa Rica), S.R.L. (hereinafter "MLCR") with me as the Manager of that entity. That entity is not subject to any bankruptcy issues and is not the subject of any criminal charges, prosecution, or any other matter. Despite John's contentions and false representation he has made regarding my conduct and the status of my civil, criminal and State Bar matters, I have been indicted on one count of failing to pay funds over to one client in connection with the bankruptcy of Layfield & Barrett. I did not personally benefit in any way from those missing funds and in fact I will prove that others caused the demise of my former firm. None of these matters has anything to do with that case and it is grossly inappropriate for HED to refuse to pay me for the reasonable value of the services performed based on a defective indictment. These charges, which we contest and expect to be dismissed are based exclusively on the State Bar Complaint which was filed in September 2017. HED nor John can allege that they

were unaware of these matters, and thus, they knowingly agreed to continue working with me in spite of these matters. I will prevail in these matters despite the fact that every single person I ever placed any trust or reliance on has literally stabbed me in the back. Only time will tell, but I can assure you that my team has evaluated the matter and we are more than confident that the US government has violated their own internal rules with this prosecution and have manufactured a criminal case for the sole purpose of advancing the careers of mediocre government lawyers. With that said, I intend to sue every single person that had any part in causing harm to me and my family and will spend the next 15 years pursuing every legal remedy available to me in order to expose the wrongful conduct of every single person who caused me to be jailed for 6 months in federal prison with murderers, rapists, gang members and others while causing my entire family's way of life to be destroyed. I can assure everybody, that despite the fact that I am in the process of rebuilding my entire life, I am a lone wolf and can easily defeat any legal adversary that decides to get in my way. I have taken enough punches trying to be a reasonable person and my time to fight back is now.

Regarding my time, I have gone back and reviewed all of my emails, calendar, phone records and documents along with the billing records that I did maintain. Based on that review, I have estimated that between September 1, 2017 and February 24, 2018, I spent approximately 50% of my time on HED related matters and approximately 50% of my time on other MLCR matters. I typically worked 60 hours per week and often 7 days per week. As a result, I worked approximately 1,800 total hours during the period September 2017 through February 2018. In accordance with those estimates, I spent approximately 900 total hours working on HED related matters. Among those 900 hours, I have been compensated on an hourly basis at a rate of $500 per hour, which is considered a discounted rate, on matters relating to the Todd Kidd arbitration, although an outstanding balance exists on that matter. The summary sheet will show that the Kidd matter has a balance of 27.6 unbilled hours and $0 in unreimbursed expenses.

With respect to the most significant matter, a contract exists between MLCR and HED for the period September 2017 through August 31, 2018. That contract was never terminated by either party as of today. In connection with that contract, which I will call the "monthly retainer agreement," HED was required to pay MLCR $7,500 per month regardless of the amount of hours spent as well as any expenses incurred. Additionally, HED was to pay a 7% bonus on the amounts of capital raised during that period along with a 5% grant of equity in the company, which becomes fully vested at the end of this month. If the Agreement is

terminated, then the amounts vest pro-rata throughout the year.  My biggest issue with this Agreement right now is that HED breached the Agreement by refusing to reimburse expenses and refusing to honor the payments in the face of the contract not being terminated.  That Agreement provide a benefit to both parties.  It provided a benefit to HED by getting access to MLCR's professional services at a fixed fee and MLCR benefited by having a steady stream of income.  Since HED failed to pay the contractual amounts when due, HED is responsible for breach of contact damages, which I calculate as the reasonable value of the services performed during the life of the contract.  HED elected to not perform and thus MLCR is entitled to be compensated for the 300 hours of work peformed during the period.  Had HED simply paid the contract, the total remaining payments would have been only $35,000, the equity and the % of capital raised.  Now, HED is responsible for the 300 hours spent during that period at $500 per hour and is also responsible for the consequential damages of the breach.  Due to HED's abrupt halting of all payments, MLCR was forced to incur substantial damages, including a complete destruction of MLCR's business and damage to its principal.   The summary sheet will show that MLCR spent 300 hours on general HED matters and 105 hours on the crowdfunding for a total amount of $202,500 plus un-reimbursed expenses of $8,906.

With respect to the disputes with HMM, the issues are similarly egregious.  We had two separate agreements to handle two separate disputes.  First, there was an agreement to take over the dispute with HMM regarding the "manufacturing issues" and a separate agreement regarding the "fraudulent inducement" claims.  We agreed on a fixed fee payment for both matters.  Those matters contemplated $125,000 for each matter fixed fee.  The second installment on the "manufacturing issues" was due on March 1, 2018 in the amount of $50,000 and HED elected to not pay the money.  Furthermore, HED never paid for any of the work done on the fraudulent inducement matters even though I had agreed not to bill for that matter until after April.  Since HED breached the Agreement, they are responsible now for all of the hours.  MLCR spent approximately 190.8 hours on the manufacturing matter and was only paid $50,000 total.  As a result, HED owes MLCR $45,400 for the additional hours as well as the unreimbursed expenses you will see on the summary sheet.  Regarding the fraudulent inducement matters, MLCR spent 97.5 hours for a total unbilled amount of $48,750.

With respect to the 27 Star matter, this one is slightly more complicated.  27 Star will recall that as a result of the gross professional negligence of Steven Weinberger, while an employee of L&B and while supervising the Finton/27 Star matter, Finton was able to commit fraud on

27 Star. Although I'm not sure if Finton's fraud would have been discovered, had Weinberger
not committed gross malpractice, I agreed to make good on those matters through initially.
L&B agreed to assist with perfecting a claim in the bankruptcy court against Finton and hire
local counsel to handle those matters. As John is aware, my position is that he ran up an
unreasonable bill with the local counsel, Tina and then tried to impose that bill on L&B. I
ultimately agreed to absorb an almost $50,000 bill through L&B in order to protect our long
term relationship. Unfortunately, due to events out of my control, L&B was forced into a
bankruptcy before L&B was able to complete its payments to Ms. Talarchyk. Furthermore, in
recognition of Weinberger's screw up, I agreed to pursue the claims against the insurance
companies through an arbitration on a pure contingency basis at a reduced rate of 20% of the
gross recovery as opposed to 40-50%, which is a normal rate. MLCR spent approximately
225.4 hours pursuing that arbitration in reliance and from what I understand Starboard has
terminated that engagement. MLCR is entitled to be paid just like every other professional
and that amount is approximately $112,700.

The final issue that must be resolved is the personal property of MLCR that is being held by
John improperly in Miami. That property must be returned to me at the following address no
later than Monday, August 20 at 115 Miller's Run, Millsboro, Delaware 19966.

The bottom line is the total amount of unbilled time and expenses equals $423,150, 5% of the
equity in HED. HED is well aware of the fact that one simple arbitration or lawsuit in this
matter could run as high as that alone. Depending on whether MLCR pursues the lawsuit in
Costa Rica, which it is entitled to do, JAMS in New York or elsewhere, if these issues can't be
resolved, litigation will happen and it will be all encompassing on every level imaginable. To
be honest, I thought John and I were friends until I realized that in a time of need, he was
really just using me to accomplish his own personal objectives while paying me as little as
possible. When you look at the total monies he paid MLCR from September 2017 through
2018 in comparison to the value of the work performed as compared to the other
professionals he paid hundreds of thousands of dollars to, the value of the services performed
is indisputable.

My preference is to come to an amicable resolution and simply move on. If HED decides to
disrespect me in the way that others have, then MLCR will have no choice but to commence
series of incredibly comprehensive lawsuits to remedy all matters, which will include non-
economic damages for the officers, directors and principals as well as punitive damages
which will be in the millions. I have been on the HED side of avoiding paying obligations

and have seen how HED and its principals try to avoid paying its obligations to people.  Do not be mistaken that just because an idiot US attorney brought a defective indictment against me and that just about everybody tried to kick me while I was down that I will stay down.  I will remedy all of these wrongs in due course.  I just hope that HED  and John recognize the validity of the claims, the substantial risk associated with refusing to resolve these claims and the embarrassment that can occur with public and protracted litigation.  For me, I was just in a federal prison on false charges.  I have no true friends and no business associates I trust and I am beyond being embarrassed by what's happened because I know the truth will eventually come out.  I am the lone wolf and am more than comfortable taking on the world at this point.

Again, I am not incredibly interested in negotiating at this point since I really have nothing to lose.  Pay me the money you owe me and I won't sue for enhanced damages in the millions.  Don't mistake the fact that I ignored certain people and allowed them to get away with things for weakness.  Those days are over.  It's really that simple.  My patience is all out here.  The deadline is 4pm on Friday.  I may be reached at 202-904-4409.

With respect to you Ray, I have always had a great relationship with you and hope that we can resolve this on behalf of HED.

On 8/14/2018 9:28:12 AM, Chrissey Stephens <cstephens@pshcpas.com> wrote:

Mr. Layfield,

Please see the attached letter per Mr. Pinkstaff.

Thank you.

# Chrissey Stephens

Executive Assistant to

## K. Ray Pinkstaff

Five Hanna Place Office Park

8858 Cedar Springs Lane, Suite 5000

Knoxville, TN 37923

865.690.7010

865.690.7806 (Fax)

**CONFIDENTIALITY NOTICE:** THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE RECIPIENT(S) NAMED ABOVE. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION AND/OR WORK PRODUCT AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR AN AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY E-MAIL, AND DELETE THE ORIGINAL MESSAGE AND THE ASSOCIATED REPLY. THIS COMMUNICATION DOES NOT REFLECT AN INTENTION BY THE SENDER OR THE SENDER'S CLIENT OR PRINCIPAL TO CONDUCT A TRANSACTION OR MAKE ANY AGREEMENT BY ELECTRONIC MEANS. NOTHING CONTAINED IN THIS MESSAGE OR IN ANY ATTACHMENT SHALL SATISFY THE REQUIREMENTS FOR A WRITING, AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE A CONTRACT OR ELECTRONIC SIGNATURE UNDER THE ELECTRONIC SIGNATURES IN GLOBAL AND NATIONAL COMMERCE ACT, ANY VERSION OF THE UNIFORM ELECTRONIC TRANSACTIONS ACT OR ANY OTHER STATUTE GOVERNING ELECTRONIC TRANSACTIONS. THANK YOU.

Any U.S. federal or state tax advice included in this communication (including attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding U.S. federal or state tax-related penalties or (ii) promoting, marketing, or recommending to another party any tax related matter addressed herein.

**Attachments:**

2017 Signed Crowdfunding Engagement.pdf (406 KB)

2018.1.11 email transmitting MLCR HED engagement.pdf (112 KB)    2018.8.15 Cornell Club Statement.pdf (326 KB)

2018.8.15 Renae Schlosser Invoices.pdf (193 KB)    2018.8.15 All Jansheski Matters Summary.xlsx (8 KB)

# **EXHIBIT 2**

Message 1 of 1

**Sent at:** 8/20/2018 12:40:15 PM

# Wine

From:  Philip Layfield <philip@zenith-law.com>

To:  Kevin McCready <kevin@ushype.com>

Kevin

I need to arrange for shipment of the boxes my wife had sent to the hype warehouse. The address to send to is 115 millers run, Millsboro, DE the 19966. It can be sent ups ground in the same boxes they were shipped. Please provide a tracking number. It is imperative that these be sent by Friday.

Let's not make this anymore complicated than it needs to be.

Thank you.

Sent from my iPhone

**Sent at:** 8/20/2018 12:40:15 PM

# Wine

From:  Philip Layfield <philip@zenith-law.com>

To:  Kevin McCready <kevin@ushype.com>

Kevin

I need to arrange for shipment of the boxes my wife had sent to the hype warehouse. The address to send to is 115 millers run, Millsboro, DE the 19966. It can be sent ups ground in the same boxes they were shipped. Please provide a tracking number. It is imperative that these be sent by Friday.

Let's not make this anymore complicated than it needs to be.

Thank you.

Sent from my iPhone

# **EXHIBIT 3**

# Attempted Service on Maximum Legal (Costa Rica), S.R.L.

From:  Mr Philip Layfield <phil@maximum.global>

To:  Ed Shipe <eshipe@howardhowardlaw.com>

Bcc:  Tina M. Talarchyk, Esq. <tmt@palmbeachbk11.com>

Cc:  John Jansheski <jj@ushype.com>

Dear Mr. Shipe:

I am writing you in an attempt to meet and confer before I am forced to take actions adverse to you and your client. First and foremost, I have previously advised you that it is a violation of the automatic stay to wrongfully hold my personal property. I provided you with access to my bankruptcy case number, I provided you with the authority for why it is improper for your client to continue to exercise dominion and control over my property and I gave you a reasonable deadline to comply. In fact, I provided you with the location where your client was directed to return my property. Rather than comply with what should have been a simple request, both you and your client chose to ignore my warnings. In fact, rather than return the property, you chose to commence litigation against me in blatant violation of the automatic stay as well as litigation against Layfield & Barrett, which is also in bankrutpcy. Now, you have apparently dismissed the claims against me personally and Layfield & Barrett yet your client continues to hold my personal property. As you and your client are aware, your client is wrongfully withholding approximately 9 cases of custom Layfield Estate wine valued at approximately $5,000 as well as numerous brand new items purchased from amazon.com and delivered to your client's home in Miami.

At this point, I am going to give you one more opportunity to cease your willful violations of the automatic stay. If the property is not returned by Thursday, September 13, 2018, I will immediately file a motion to find you and your client in willful violation of the automatic stay. This motion will seek actual damages, fees, costs and punitive damages. Please advise as to whether you will comply with my requests or if you will require me to proceed with my motion.

Finally, with respect to your attempted service on me of a lawsuit against Maximum Legal (Costa Rica), S.R.L., please be advised that your service of process is defective. Because

Maximum Legal (Costa Rica), S.R.L. is a Costa Rican entity, and Costa Rica is a signatory to the Hague Convention, the only acceptable method of service is via The Hague Convention. Therefore, unless and until you comply with the strict requirements of The Hague, any judgment you may seek to obtain is simply void as a matter of law. Furthermore, Costa Rica will never recognize the validity of your judgment because you have failed to comply with the most basic requirements. Since you apparently are not aware of these rules, I am attaching a link to you regarding the Hague service so you can become educated.

Again, I am not sure why you continue to advise Mr. Jansheski to pursue what will ultimately be a losing and expensive litigation strategy, but as he can probably already tell from your first two flops, your litigation strategy is coming apart at the seams. I am willing to have a discussion of an amicable resolution, but my tolerance for your amatuerish gamesmanship is running thin.

https://www.haguelawblog.com/2016/11/hague-service-option-period/

# **EXHIBIT 4**

Sent at: 9/18/2018 8:21:59 AM

# Fw: In re Philip James Layfield-Case No. 2:18-bk-15829-NB

From:  Mr Philip Layfield <phil@maximum.global>
  To:  Ed Shipe <eshipe@howardhowardlaw.com>
  Cc:  John Jansheski <jj@ushype.com>

Dear Mr. Shipe:

Please be advised that the attached Motion for Sanctions and Punitive Damages against
Michel LeBlanc. Please be further avised that as of today, I still have not received any
response for my demand to turn over the property your client is wrongfully continuing to
withhold. If I am mistaken and those items have been returned, please advise immediately.
Otherwise, a similar motion will be filed by close of business today against your client.

I truly hoped to avoid protracted and costly litigation with your client over this simple issue,
but it is only you who can advise your client to cease his willful violations of the automatic
stay.

------ Forwarded Message --------
From: Philip Layfield <phil@maximum.global>
Date: 9/18/2018 8:10:33 AM
Subject: In re Philip James Layfield-Case No. 2:18-bk-15829-NB
To: wes@averytrustee.com, bgaschen@wgllp.com, kadele@wgllp.com, jgolden@wgllp.com,
ustpregion16.la.ecf@usdoj.gov, wickham@scmv.com, mpagay@pszjlaw.com,
jsumpter@epiqtrustee.com, jsumpter@cbiz.com

Please find attached Alleged Debtor's Expedited Motion for Entry of an Order Finding
Michel LeBlanc in Willful Violation of the Automatic Stay and Assessing Sanction Including
Actual and Punitive Damages

Attachments:

2018.9.17 Motion for Sanctions re LeBlanc.pdf (538 KB)

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
102 Moores Crossing #7, Millsboro, DE 19966

A true and correct copy of the foregoing document entitled (*specify*): Layfield Reply Re Expedited Motion for Sanctions
to Find Jansheksi in Violation of the Automatic Stay

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/12/2018          , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Beth Gaschen bgaschen@wgllp.com, kadele@wgllp.com, vrosales@wgllp.com, cbmeeker@gmail.com, cyoshonis@wgllp.com, Faye Rasch frasch@wgllp.com, tziemann@wgllp.com, Jeffrey Golden: jgolden@wgllp.com Malhar S. Pagay: mpagay@pszjlaw.com Wesley Avery wes@averytrustee.com, c117@ecfbis.com, lucy@averytrustee.com, alexandria@averytrustee.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*)   10/12/2018          , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Bankruptcy Court Filing Window
United States Bankruptcy Court
Roybal Federal Building
255 E. Temple Street
Los Angeles, CA 90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 09/09/2018          , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Megan Baer  megan.h.baer@gmail.com
Overnight Mail to:
Michael LeBlanc, 3831 Yazoo Drive, Lake Havasu City, AZ 86404 and to

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 10/12/2018 | Christine Layfield | |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT TO PROOF OF SERVICE

1.  **CONTINUED SERVICE LIST:**

    **Jeffrey L Sumpter**   jsumpter@epiqtrustee.com, jsumpter@cbiz.com

    **United States Trustee (LA)**  ustpregion16@la.ecf@usdoj.gov

    **Dennis J. Wickham**  wickham@scmv.com, nazari@scmv.com