1

Philip J. Layfield
8 The Green
2   Suite 6426
Dover, Delaware 19901
3   Telephone: (302) 401-6804
phil@maximum.global
4

**FILED**

**NOV 27 2018**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

5   Alleged Debtor

6

7                   **UNITED STATES BANKRUPTCY COURT**

8                    **CENTRAL DISTRICT OF CALIFORNIA**

9                         **LOS ANGELES DIVISION**

10

11  In re:                              Case No.: 2:18-bk-15829-NB
          v.
12                                       Chapter 7
    Philip James Layfield,
13                                       Assigned to: Hon. Neil Bason
          Debtor
14                                       **ALLEGED DEBTOR PHILIP J. LAYFIELD'S**
                                         **OPPOSITION TO WELLGEN'S MOTION FOR**
15                                       **SUMMARY JUDGMENT**

16                                       **HEARING DATE: DECEMBER 6, 2018**
                                         **HEARING TIME: 10:00 AM**
17                                       **PLACE:  Courtroom 1545**
                                                  **255 E. Temple Street**
18                                                **Los Angeles, CA 90012**

19

20  **TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE;**

21  **WESLEY H. AVERY-INTERIM, CHAPTER 7 TRUSTEE; AND THE OFFICE OF THE**

22  **UNITED STATES TRUSTEE:**

23          Alleged debtor, Philip J. Layfield (hereinafter "Layfield" or "Mr. Layfield Debtor"), hereby

24  submits this Opposition to Wellgen's Motion for Summary Judgment ("MSJ").  This Opposition is

25  made and based upon the following points and authorities, the Separate Statement of Undisputed

26  Facts, the Declaration of Philip J. Layfield with supporting exhibits filed in support hereof (the

27  "Layfield Declaration"), the pleadings and papers on file with the Court in this matter and any and

28  all related matters (i.e. In Re Layfield & Barrett, APC, In re Maximum Legal (California), LLP),

1

1    alternate direct testimony by declaration pursuant to Rule 9017 for all witnesses to be identified on

2    any Final Witness List, all declarations and excerpts of transcripts and exhibits to be used at any

3    evidentiary hearing, and any oral argument the Court may entertain at the hearing at the date and

4    time set forth above.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 1. **INTRODUCTION**

This involuntary bankruptcy proceeding is the product of a fraud perpetrated by Jeffery Golden on the United States District Court and on this Court. Mr. Golden committed a crime in obtaining a default judgment against Mr. Layfield by falsifying a proof of service with blatant disregard for the honor of the District Court and then used Mr. Layfield's unfortunate circumstances to further his fraud by engaging in a flurry of filings to obtain additional orders for the sole purpose of placing himself in an advantageous position to prevent Mr. Layfield from exposing his conduct. Ultimately, on January 14, 2018, United States District Court Judge Andrew Guilford will hold an evidentiary hearing on this matter. Alleged Debtor has requested that as a sanction for Mr. Golden's outrageous conduct, that Judge Guilford set aside the default judgment and dismiss the complaint in its entirety with prejudice. Once this happens, Mr. Golden and his client will have NO claim against alleged debtor because Mr. Golden chose to engage in a fraud on the court and both he and his client will and should suffer those consequences.

At the evidentiary hearing, Mr. Layfield will call the following witnesses to prove that Mr. Golden intentionally lied and committed a fraud on the court. First, Special Agent Mark Speidel ("Speidel") of Homeland Security Investigations will testify that Mr. Layfield was not in the United States at any point during the month of September 2017 when Mr. Layfield was allegedly personally served with the subject lawsuit. Speidel will testify that he examined all of the federal travel databases and the passport records of Mr. Layfield and that Mr. Layfield was not in the United States. Even though this court made an off-handed remark at the October 24, 2018 hearing that Mr. Layfield could have "snuck into the country by boat" in September, for purposes of this motion and other proceedings, we will assume the court was simply trying to make a joke about the absurdity of the entire situation. Second, Mr. Layfield will call the owner of 118 Union Jack Mall, which is the property Mr. Layfield used to own. The current owner will testify that he has never met Mr. Layfield, he has never allowed Mr. Layfield into his home and that Mr. Layfield could not and was not served at the time, date and place asserted by Mr. Golden. Mr. Layfield will also call the process server, Mr. Golden's associates and Mr. Golden. At the conclusion of the hearing, Judge Guilford will be left with no choice but to rule in Mr. Layield's favor.

1      Faced with the reality of his behavior, Mr. Golden has attempted to thwart Mr. Layfield's

2    attempts to prove the misconduct through a series of actions. First, Mr. Golden has attempted to

3    cause Judge Guilford to stay those proceedings, which he has refused to do and most recently Mr.

4    Golden has attempted to delay the hearing by claiming one of the witnesses is on a "pre-paid"

5    vacation to Newark, New Jersey on the date of the hearing. A closer examination of Mr. Golden's

6    assertions show that the witness booked the travel AFTER Judge Guilford ordered her to appear.

7      At the conclusion of the evidentiary hearing, it will be unequivocally shown that Mr.

8    Golden obtained a fraudulent default judgment and then used that fraudulently obtained judgment

9    to begin these instant bankruptcy proceedings. Not only has Mr. Golden advanced the interests of

10   his client Advocate Capital through the perpetration of a fraud, but he now attempts to advance the

11   interests of his latest purported client, Wesley Avery, the Interim Chapter 7 Trustee, to further

12   inflict harm on the Alleged Debtor. If this Court had any true concern for the fair administration of

13   this alleged bankruptcy estate it would squarely reject Mr. Golden's behavior, stay all proceedings

14   and issue an order preventing Mr. Golden from taking any further actions that could harm alleged

15   debtor until Judge Guilford determines whether Mr. Golden obtain his judgment through fraud. To

16   be blunt, if the situation were reversed and it were Mr. Layfield accused of this conduct, this Court

17   would be bending over backwards to send Mr. Layfield to the gallows. Instead, this court has taken

18   every opportunity to ridicule alleged debtor, who is in pro per, and allow Mr. Golden to continue to

19   abuse these proceedings to advance his own improper purpose. Since this Court is unwilling to

20   stop Mr. Golden's behavior, alleged debtor has basically accepted that he will never get a fair ruling

21   in this court and has conceded that it will take an appellate court to properly look at this matter.

22   Forcing alleged debtor to oppose a Motion for Summary Judgment without having the opportunity

23   to conduct discovery on short notice and while this court and opposing counsel knew alleged debtor

24   was unavailable for 3 weeks while out of town at an employment related training is nothing more

25   than prejudicial, outrageous and a blatant signal that alleged debtor is about to get railroaded by this

26   court while this court turns a blind eye to the criminal conduct of Mr. Golden.

27     Once an objective party looks at what has transpired here, the tide will eventually change.

28   Let's examine some outrageous conduct that has occurred since April of this year.

1.  Mr. Golden obtains a fraudulent judgment through perjury and subornation of perjury in the Advocate Capital matter pending before Judge Guilford;

2.  Mr. Golden solicits the L&B Trustee to join him in an Involuntary Petition against Layfield in May 2018.

3.  Mr. Golden obtains orders from this Court without the knowledge of alleged debtor and while alleged debtor is incarcerated and while alleged debtor is denied his constitutional due process rights to defend himself and be heard;

4.  Mr. Golden tricks this court into appointing him as counsel for the interim-trustee;

5.  At the same time Mr. Golden is purported to represent the Ch. 7 Trustee, Mr. Golden is pursing lawsuits against alleged debtor's wholly-owned businesses in other related matters in Tennessee on behalf of Advocate Capital. Mr. Golden's actions on behalf of Advocate Capital are designed to impair the value of assets held by alleged debtor. Mr. Golden's actions are harming other creditors of alleged debtor at the time Mr. Golden is supposed to be acting in a disinterested manner on behalf of the Interim Trustee.

6.  This Court refuses to extend the automatic stay to entities owned by alleged debtor, which should have been done at the commencement of this case. Instead, this Court has allowed Mr. Golden to profit handsomely from his own misconduct, while harming Mr. Layfield's bankruptcy estate.

7.  Mr. Golden attempts to interfere with alleged debtor's exemption property and this court simply delays rulings on those matters despite clear and unequivocal evidence that two parties are actively violating the automatic stay;

8.  Faced with a well taken Motion to Dismiss, Mr. Golden files a Motion for Summary Judgment while he knows alleged debtor is out of town for three weeks on a work-related training and requests shortened time, which this court grants without question.

1  **2. FACTUAL BACKGROUND**

2    A.    **Bona Fide Disputes with Layfield & Barrett, APC and Pachulski**

3        Pachulski makes the bold and unsupported statement that he has an undisputed claim

4  against me for approximately $1 million dollars based solely on an inappropriate interpretation of a

5  minute order that has no force or effect.  Offering no support or documentation, Pachulski's claims

6  fail.  Pachulski attempts to claim that as a result of a minute order obtained in the Nguyen matter,

7  which was ultimately reduced to a default judgment after the automatic stay was in place, he

8  somehow has a cognizable claim.  Pachulski fails to recognize that not only was the default

9  judgment obtained after the commencement of the automatic stay in this case, but any adverse

10  ruling that could potentially impact L&B is void as a matter of law because the Nguyen case was

11  stayed as to L&B at the time of the minute order.  Therefore, Pachulski's claim that a ruling against

12  alleged debtor personally, which was not entered until after the bankruptcy stay became effective

13  somehow forms the basis for a claim is simply nonsensical and should be rejected.  Pachulski is

14  trying to argue that a state court judge should be permitted to invalidate a legal representation

15  agreement entered into between L&B and Nguyen in the context of a default judgment prove-up

16  hearing in a matter solely related to Layfield.  This assertion is clearly inconsistent with the

17  operation of the automatic stay as to L&B and definitely violative of the automatic stay as to Mr.

18  Layfield since the Nguyen default judgment was obtained after the automatic stay was in place.

19

20    B.    **Bona Fide Dispute with Advocate Capital/Wellgen**

21        The amounts at issue with Advocate/Wellgen are in dispute and the entire claim is currently

22  hanging by a thread in front of Judge Guilford.  First and foremost, even if the default judgment

23  obtained were not void as a result of the failure to serve me personally on September 23, 2017, the

24  amount at issue is in dispute.  Advocate/Wellgen's claim has been reduced as a result of monies

25  that have already been collected or applied to the account and the interest calculations are not valid.

26  Considering that the default judgment is void under the Federal Rules of Civil Procedure, valid

27  defense exists with respect to that claim.  Advocate not only failed to mitigate its own damages, but

28  it failed to exercise reasonable diligence in the face of a pending default on the underlying loan.

1   Advocate failed to take reasonable steps to protect its liens and to date has utterly failed in every

2   respect to trace the cases where funds were advanced using the advocate line of credit.  Finally,

3   until Judge Guilford rules at the evidentiary hearing on January 14, 2018, this bankruptcy petition

4   should be dismissed or stayed at a minimum.  Judge Guildford clearly understands the issues.  In

5   fact, Judge Guilford admonished Mr. Golden at the October 22, 2018 hearing and advised Mr.

6   Golden that he was aware that without the default judgment, no bankruptcy would exist.  Judge

7   Guildford is aware of the stay and elected to proceed with the motion despite Mr. Golden asserting

8   the stay as a defense.  Since the District Court is a supervisory court over this bankruptcy court as a

9   result of its Article III powers, Judge Guilford's decision to proceed with the January 14, 2018

10  hearing trumps any attempt by this court to stop those proceedings and should be respected by this

11  Court.  Attempting to allow summary judgment to proceed in the face of an evidentiary hearing set

12  on January 14, 2018 is clear and convincing evidence that a bona fide dispute exists.

13        **C.**      **Bona Fide Dispute with Alliance Legal Funding, LLC**

14        To date, it is unclear whether Alliance has obtained any judgment with respect to its claims.

15  Even if a judgment may or may not be in existence, the calculations supporting the balance due are

16  not accurate because the amounts owed are not accurate.  It is impossible to determine what cases

17  have been collected on since the L&B bankruptcy, what the interest rate should be and what

18  amounts if any have or should be satisfied by proceeds coming into the L&B estate.

19  **3. LEGAL ARGUMENT**

20  **A. STANDARD FOR MOTION FOR SUMMARY JUDGMENT**

21  "The grant of a motion for summary judgment is a drastic remedy and should be used with caution

22  so as not to serve as a substitute for a trial on the merits." *Nelson v. A. H. Robins Co.,* 515 F. Supp.

23  623, 627 (N.D. Cal. 1981). In order to obtain summary judgment on a claim or affirmative defense,

24  the moving party must show "that there is no genuine dispute as to any material fact and the movant

25  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. This is a "heavy burden" on the

26  moving party. *Ambat v. City & Cty. of San Francisco,* 757 F.3d 1017, 1031 (9th Cir. 2014).

27        In addition to having the initial burden of production on a motion for summary judgment, where

28  the moving party is seeking summary judgment on an affirmative defense the moving defendant

1  must make an evidentiary showing sufficient for the Court to hold that no reasonable jury could

2  find for anyone other than the moving party. *S. California Gas Co. v. City of Santa Ana*, 336 F.3d

3  885, 888 (9th Cir. 2003); *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). "If a

4  moving party fails to carry its initial burden of production, the nonmoving party has no obligation

5  to produce anything…." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099,

6  1102–03 (9th Cir. 2000). Otherwise, the nonmoving party prevails merely by showing that there is

7  a genuine issue as to any material fact. *Id.* at 1103.

8

9  In reviewing the evidence, all evidence presented by the non-moving Plaintiffs must be believed

10  and all reasonable inferences from any evidence before the Court must be drawn in Plaintiffs'

11  favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The Court does

12  not weigh conflicting evidence or make credibility determinations. *All Star Seed v. Nationwide*

13  *Agribusiness Ins. Co.*, No. 12CV146 L BLM, 2014 WL 1286561, at *2 (S.D. Cal. Mar. 31, 2014).

14  Here, the alleged debtor is substituted for non-moving Plaintiffs in this instant matter.

15      Federal Rule of Bankruptcy Procedure 1011(b) allows an alleged debtor to contest an

16  involuntary petition through the manner set forth in Federal Rule of Civil Procedure 12. Rule

17  12(b)(1) sets fort the defense of lack of subject matter jurisdiction as a ground for complete

18  dismissal of an involuntary petition. Eligibility of a petitioning creditor goes to the standing of the

19  creditor to have filed the petition in the first place. In re Seko Inv., Inc., 156 F.3d 1005, 1007, 1008

20  (9th Cir. 1998) ("A creditor does not have standing to file an involuntary Chapter 7 petition if its

21  claim is 'contingent as to liability or the subject of a bona fide dispute.'") (quoting Section 303(b)

22  prior to BAPCPA amendments); In re ELRS Loss Mitigation, LLC, 325 B.R. 604, 624 (Bankr.

23  N.D. Okla 2005) ("Initially, the court must determine that the creditors who brought the petition are

24  eligible to do so. If the petitioning creditors lack standing, the bankruptcy court lacks jurisdiction

25  over the case, and the case must be dismissed."); In re Rosenberg, 414 B.R. 826, 840 (Bankr. S.D.

26  Fla 2009) (same); In re Miller, 444 B.R. 446, 463 (Bankr. N.D. Okla. 2011)(same), rev'd in part on

27  other grounds, 2012 WL 10295334 (N.D. Okla. Mar 26, 2012); In re Elsa Designs, Ltd., 155 B.R.

28  859, 862-63 (Bank. S.D.N.Y. 1993) (discussing how challenge to the eligibility of petitioning

1   creditors may be raised in motion to dismiss challenging court's jurisdiction); In re Bank of

2   America, N.A., 2011 WL 2493056, 5 (Bankr. D. Colo. 2011); In re Green Hills Development Co.,

3   LLC, 445 B.R. 647, 656 (Bankr. S.D. Miss 2011).  Standing of a plaintiff goes to a court's subject

4   matter jurisdiction.  Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975);

5   Aydin Corp. v. Union of India, 940 F.2d 527, 527-529 (9th Cir. 1991); Hillblom v. United States,

6   896 F.2d 426, 430-431 (9th Cir. 1990).  The decision to file an involuntary petition against an

7   alleged debtor is a highly aggressive and risky proposition and if you get it wrong, the

8   consequences are severe.  Unlike in typical Rule 12 Motions, the petitioning creditors have no

9   ability to amend.  They either get it right or they get it wrong upon the initial filing.  The ability to

10  go back and fix mistakes or find additional qualifying creditors is not available in the context of a

11  motion to dismiss.  Id.

12          **B. There are No Eligible Petitioning Creditors**

13          11 U.S.C. § 303(b) establishes the procedure for commencing an involuntary bankruptcy

14  case.  AS relevant here, section 303(b) provides:

15

16                  An involuntary case against a person is
        commenced by the filing with the bankruptcy court of a
17      petition under chapter 7 or 11 of this title-(1) by three
        or more entities, each of which is either a holder of a
18      claim against such person that is not contingent as to
        liability or the subject of a bona fide dispute as to
19      liability or amount...if such noncontingent, undisputed
        claims aggregate at least $14,425 mor ethan the value
20      of any lien on property of the debtor securing such
        claims held by the holders of such claims...(emphasis
21      added)

22          The petitioning creditors bear the burden of showing that no bona fide dispute exists

23  concerning their alleged claims, either as to liability or amount.  In re Vortex Fishing Systems, Inc.,

24  277 F.3d 1057, 1064 (9th Cir. 2002).  In fact, the petitioning creditors bear the burden of

25  establishing all the requirements of section 303(b).  In re C&C Jewelry Mfg., Inc., 2001 WL

26  36340326, 6 (B.A.P. 9th Cir. 2009).

27          **(1) What Constitutes a Bona Fide Dispute?**

28

1       Judge Mike K. Nakagawa, (sitting on the Bankruptcy Appellate Panel for the Ninth Circuit)

2  has elaborated on what constitutes a bona fide dispute after considering the Ninth Circuit's brief

3  discussion of the term in In re Vortex. Specifically, in In re Marciano, Judge Nakagawa, albeit in

4  dissent, discussed how determining whether a "bona fide dispute" exists is resolved by "focusing

5  on genuineness rather than on subjective good faith" of the dispute in issue. In re Marciano, 459

6  B.R. 27, 60 (B.A.P. 9th Cir. 2011) (Markell, J.((in dissent) (citing In re Vortex).[1] The Ninth Circuit

7  In re Vortex discussed how a bona fide dispute exists if there is "an objective basis for either a

8  factual or legal dispute as to the validity of the debt." In re Vortex, 277 F.3d at 1064 (quoting In re

9  Busick, 831 F.2d 745, 750 (7th Cir. 1987)). In determining whether an objective basis for a dispute

10  exists, "[t]he court need not 'evaluate the potential outcome of a dispute' but must 'determine

11  whether there are facts that give rise to a legitimate disagreement over whether money is owed, or,

12  in certain cases, how much.'" In re C&C Jewelry Mfg., Inc., 2001 WL 36340326, 6 (quoting

13  Vortex, 277 F.3d at 1064). Most recently, the Ninth Circuit in In re Marciano determined that a

14  claim was undisputed if the "debtor's immediate liability cannot be disputed under governing state

15  law..."In re Marciano, 708 F.3d 1123, 1127 (9th Cir. 2013). The logical negative inference from

16  this rule is that if a debtor's claim can be immediately disputed under "governing state law" then

17  the claim is disputed for purposes of 11 U.S.C. § 303(b).

18       In Marciano, it was explained that determining whether an "objective" basis for a bona fide

19  dispute exists within the In re Vortex framework does not require the courts to actually "resolve the

20  merits of the bona fide dispute, but simply determine whether one exists." In re Marciano, 459

21  B.R. at 61 (quoting Platinum Fin. Serv. Corp. v. Byrd (In re Byrd), 357 F.3d 433, 437 (4th Cir.

22  2004)).

23       Further, the Marciano Court noted, "[w]hile the existence of a genuine issue of fact or a

24  defensible legal argument might be some evidence of subjective good faith [which is not relevant],

25  the two are not equivalent, and the existence of factual or legal issues just as easily could support an

26  ───────────────

[1]       Mr. Layfield recognizes that a divided panel of the Ninth Circuit Court of

27  Appeals affirmed the majority BAP panel in In re Marciano. In re Marciano, 708 F.3d 1123 (9th Cir. 2013). However, the narrow issue affirmed by the Court of Appeals does not in any way

28  overrule or contradict this Court's general discussion of what constitutes a "bona fide dispute" in its dissenting opinion in Marciano.

1  objective determination that the claim is subject to a bona fide dispute." Id at 62.

2       **(2)**     **To Be Eligible to File an Involuntary Petition, a Petitioning Creditor's Claim**

3                 **Must be Undisputed as to Liability <u>and</u> Amount**

4       The fact that Judge Guilford is holding an evidentiary hearing on January 14, 2018 to

5  determine whether Mr. Golden engaged in fraud in obtaining a default judgment should be satisfy

6  alleged-debtor's burden to show that a bona-fide dispute exists.  That proceeding is enough to

7  qualify as a bona fide dispute and the inquiry should end there.  However, for some reason this

8  court insists on finding any possible way to force alleged-debtor to remain in bankruptcy and is

9  over-reaching in its attempt to protect Mr. Golden from facing the consequences of his actions.

10  Although this may work in the short-term, Golden will eventually be forced to answer for his

11  conduct and when the Advocate case is ultimately dismissed.  The only thing this court will have

12  accomplished is an enhancement of the damages being suffered by alleged debtor at the hands of

13  Mr. Golden's conduct.  Currently alleged debtor is severely damaged on a daily basis by the

14  existence of this bankruptcy in California.  Alleged debtor has been forced to spend hundreds of

15  hours fighting this bankruptcy, thousands of dollars in filing fees, postage, copying, and travel

16  expenses that alleged debtor desperately needs to support his family.  Alleged debtor is unable to

17  obtain life insurance as a result of the bankruptcy and unable to function in a normal business

18  matter while under the cloud of this bankruptcy.  This court is simply enhancing the damages

19  alleged debtor is suffering when this Court should be focusing its inquiry on whether Mr. Golden

20  truly obtained a default judgment by fraud and by criminal behavior.  This is a bona fide dispute.

21       Prior to the BAPCPA amendments to Bankruptcy Code section 303(b)(1), the Ninth Circuit

22  limited its analysis under section 303(b) to the presence of a "bona fide dispute" in the aggregate of

23  the undisputed portion of the creditor's claim.  The focus at that time was that, so long as the claims

24  in the aggregate that were undisputed totaled the amounts required under section 303(b), a

25  petitioning creditor could not be disqualified because of the existence of a dispute as to some

26  additional potential liability.  In re Focus Media, 378 F.3d at 926 ("a dispute as to the amount of the

27  claim gives rise to a bona fide dispute only when (1) it does not arise from a wholly separate

28  transaction; and (2) netting out the claims of the debtors could take the petitioning creditors below

1    the amount threshold of 11 U.S.C. § 303").

2        BAPCPA changed this analysis by adding the phrase "as to liability or amount" to

3    Bankruptcy Code section 303(b)(1).  Bankruptcy courts have made it clear that, as a result of this

4    additional language to section 303(b)(1), an eligible petitioning creditor's claim must not be subject

5    to a bona fide dispute as to either liability <u>or</u> amount.  <u>In re Vortex</u>, 277 F.3d 1057; <u>In re Rosenberg</u>,

6    414 B.R. 826, 845-46 (Bankr. S.D. Fla. 2009) ("the primary purpose of disqualifying a creditor

7    whose claim is subject to a bona fide dispute from filing an involuntary petition is to prevent such

8    creditors from using involuntary petitions as a club to coerce the debtor to satisfy judgments when

9    substantial questions remain concerning the debtor's liability"); <u>In re Euro-American Lodging</u>

10   <u>Corp.</u>, 357 B.R. at 712 n. 8 (BAPCPA amendment "presumably" eliminated second part of the old

11   test when dispute as to the amount of claim gives rise to bona fide dispute); <u>In re C&C Jewelry</u>

12   <u>Mfg., Inc.</u>, 2001 WL 36340326, 6 (citing <u>In re Dairies Inc.</u>, 372 B.R. at 634 (rejecting petitioning

13   creditors' argument that while some amount of its claim may be in dispute, 11 U.S.C. § 303(b)

14   threshold amount was not)).

15       In short, it is simply not sufficient for Mr. Layfield to be undisputedly liable to any of the

16   petitioning creditors for them to be eligible creditors under section 303(b); <u>the amount</u> of Mr.

17   Layfield's ultimate liability must also be objectively undisputed.  As discussed herein, the amount

18   of Mr. Layfield's liability to all of the original petitioning creditors was objectively disputed at the

19   time the involuntary petition was filed and was known by all petitioning creditors to be

20   unequivocally disputed.

21

22       **(3)    The Claims of all Three Petitioning Creditors Were and Are Objectively**

23            **Disputed as to Amount**

24       For the involuntary petition to be valid, it must have been filed by three petitioning creditors

25   whose claims are undisputed as to liability or amount.  11 U.S.C. § 303(b)(1).[2]

26       Applying the "objective" standard set forth in <u>Marciano</u> and <u>Vortex</u> leads to the conclusion

27   _____

28   2        11 U.S.C. § 303(b)(2) is not applicable because at the time the petition was
     filed, Mr. Layfield had more than 12 undisputed creditors whose claims exceeded $14,425.

1   that a bona fide dispute exists with respect to the amounts of any and all of the three petitioning

2   creditors' claims.

3

4   **4.      CONCLUSION**

5          WHEREFORE, for the reasons set forth herein, Mr. Layfield respectfully requests that this

6   Court deny Wellgen's Motion for Summary Judgment

7                                                      Respectfully submitted,

8

9   Dated: November 25, 2018

10

                                                       Philip Layfield

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
102 Moores Crossing #7, Millsboro, DE 19966

A true and correct copy of the foregoing document entitled (specify): <u>Opposition to Motion for Summary Judgment</u>

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) <u>11/26/2018</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Beth Gaschen bgaschen@wgllp.com, kadele@wgllp.com, vrosales@wgllp.com, cbmeeker@gmail.com, cyoshonis@wgllp.com, Faye Rasch frasch@wgllp.com, tziemann@wgllp.com, Jeffrey Golden: jgolden@wgllp.com Malhar S. Pagay: mpagay@pszjlaw.com Wesley Avery wes@averytrustee.com, c117@ecfbis.com, lucy@averytrustee.com, alexandria@averytrustee.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On (date) <u>11/26/2018</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
Bankruptcy Court Filing Window
United States Bankruptcy Court
Roybal Federal Building
255 E. Temple Street
Los Angeles, CA 90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) <u>11/26/2018</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Wesley Avery, Chapter 7 Trustee
758 E. Colorado Blvd., Suite 210, Pasadena, CA 91101

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 11/26/2018 | Christine Layfield | |
| _Date_ | _Printed Name_ | _Signature_ |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT TO PROOF OF SERVICE

1.  **CONTINUED SERVICE LIST:**

**Jeffrey L Sumpter**    jsumpter@epiqtrustee.com, jsumpter@cbiz.com

**United States Trustee (LA)**  ustpregion16@la.ecf@usdoj.gov

**Dennis J. Wickham**  wickham@scmv.com, nazari@scmv.com