1

WEILAND GOLDEN GOODRICH LLP
Jeffrey I. Golden, State Bar No. 133040

2

jgolden@wgllp.com
Faye Rasch, State Bar No. 253838

3

frasch@wgllp.com
650 Town Center Drive, Suite 600

4

Costa Mesa, California 92626
Telephone 714-966-1000

5

Facsimile 714-966-1002

6

7

BRADLEY ARANT BOULT CUMMINGS LLP
Roger G. Jones (admitted *pro hac vice*)

8

1600 Division Street
Suite 700

9

Nashville TN  37219
615-252-2323

10

rjones@bradley.com

11

Attorneys for Wellgen Standard, LLC

12

**UNITED STATES BANKRUPTCY COURT**

13

**CENTRAL DISTRICT OF CALIFORNIA**

14

**LOS ANGELES DIVISION**

15

In re:

16

PHILIP JAMES LAYFIELD,

17

Debtor.

18

19

20

21

22

23

24

25

26

27

28

) Case No. 2:18-bk-15829-NB
)
) Chapter 7
)
) Hon. Neil W. Bason
)
) **REPLY IN SUPPORT OF**
) **WELLGEN STANDARD, LLC'S**
) **MOTION FOR SUMMARY**
) **JUDGMENT**

DATE: December 6, 2018
TIME: 10:00 A.M.
CTRM: 1545
        255 E. Temple Street
        Los Angeles, California 90012

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR AND PARTIES IN INTEREST:**

On May 21, 2018, Wellgen Standard, LLC ("Wellgen"), successor in interest to Advocate Capital, Inc. ("Advocate"), Alliance Legal Solutions, LLC ("Alliance"), and Richard M. Pachulski, Chapter 11 Trustee (the "L&B Trustee") of Layfield & Barrett, APC ("L&B") filed an involuntary petition (the "Involuntary Petition") against the alleged debtor, Mr. Philip James Layfield ("Mr. Layfield"). On October 30, 2018, Wellgen moved for summary judgment and for entry of the order for relief requested in the Involuntary Petition ("Wellgen's Summary Judgment Motion"). (Docket No. 100.)

On November 27, 2018, Mr. Layfield filed his Opposition to Wellgen's Motion for Summary Judgment ("Mr. Layfield's Opposition"), his Statement of Genuine Issues of Material Fact in Opposition to Wellgen's Motion for Summary Judgment ("Mr. Layfield's Statement of Facts"), and his Objections to Evidence Filed by Wellgen in Opposition to Wellgen's Motion for Summary Judgment ("Mr. Layfield's Evidentiary Objections"). (Docket Nos. 131, 132 and 133.) Attached hereto as Exhibit A are excerpts from Mr. Layfield's Deposition on November 27, 2018 ("Layfield Dep.").

Wellgen files this reply in support of Wellgen's Summary Judgment Motion (the "Reply"). In support of this Reply, Wellgen submits the following Memorandum of Points and Authorities.

## **TABLE OF CONTENTS**

I.      STANDARD OF REVIEW                                                                1

II.     Mr. Layfield's EVIDENTIARY OBJECTIONS                                             2

III.    MR. LAYFIELD'S DECLARATION                                                       5

    A.   Wellgen's Claim.................................................................................5

    B.   Alliance's Claim................................................................................8

    C.   L&B Trustee's Claim .........................................................................8

IV.     ARGUMENT                                                                          8

    A.   Section 303's Requirements Are Not Jurisdictional........................................8

    B.   Wellgen's Claim is Not Subject to *Bona Fide* Dispute.................................9

    C.   Alliance's Claim is Not Subject to *Bona Fide* Dispute................................11

    D.   The L&B Trustee's Claim is Not Subject to Bona Fide Dispute. ................12

    E.   Mr. Layfield is Not Entitled to Additional Discovery. ...............................14

V.      Joinders in Involuntary Petition                                                 15

VI.     Conclusion                                                                       16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addisu v. Fred Meyer, Inc.*,
    198 F.3d 1130 (9th Cir. 2000)...............................................................1

*Advocate Capital, Inc. v. Layfield*,
    Case No. SACV 17-01628 AG (DFM) (C.D. Cal. 2017) ...........................2

*In re AMC Investors, LLC*,
    406 B.R. 478 (Bankr. D. Del. 2009) ........................................11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................1

*Asdar Group v. Pillsbury, Madison & Sutro*,
    99 F.3d 289 (9th Cir. 1996).....................................................3

*Beazley Insurance Company, Inc. v. Niami*,
    2012 WL 12845104 (C.D. Cal. 2012)....................................14

*Daniels–Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ...................................................4

*Far Out Productions, Inc. v. Oskar*,
    247 F.3d 986 (9th Cir. 2001)................................................1, 6

*Gerritsen v. Warner Bros. Entertainment Inc.*,
    112 F.Supp.3d 1011 (C.D. Cal. 2015)......................................4

*Gruntz v. County of Los Angeles (In re Gruntz)*,
    202 F.3d 1074 (9th Cir.2000)..................................................9

*Ingersoll–Rand Financial Corp. v. Miller Mining Co.*,
    817 F.2d 1424 (9th Cir. 1987)................................................9

*Josephine Nguyen v. Philip Layfield*,
    Case No.: 30-2017-00930393-CU-BC-CJC..............................4

*Madden v. Cate*,
    No. CV 11–5652 ......................................................................3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ......................................................1, 10, 12

*In re O'Neil*,
    1997 WL 615661 (Bankr. Minn. 1997)..................................12

(i)

*Platinum Fin. Servs. Corp. v. Byrd (In re Byrd)*,
   357 F.3d 433 (4th Cir. 2004).................................................................................11

*Retired Employees Ass'n of Orange County, Inc. v. County of Orange*,
   632 F.Supp.2d 983 (C.D. Cal. 2009) ............................................................3

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006)..........................................................................2

*Roberson v. City of Los Angeles*,
   220 Fed.Appx. 522 (9th Cir.2007) ................................................................3

*Rodriguez v. Disner*,
   688 F.3d 645 (9th Cir. 2012)..........................................................................3

*Rosal v. First Fed. Bank of California*,
   671 F.Supp.2d 1111 (N.D. Cal. 2009) ..........................................................3

*Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*,
   594 F.2d 730 (9th Cir. 1979).......................................................................1, 6

*U.S. v. $133,420.00 in U.S. Currency*,
   672 F.3d 629 (9th Cir. 2012)........................................................................15

*Viola v. Krisch*,
   2016 WL 4011314 (N.D. Cal. 2016)..............................................................8

*In re Zulueta*,
   520 Fed.Appx. 558 (9th Cir. 2013) ...............................................................3

**Statutes**

11 U.S.C. § 303(c)....................................................................................................15

11 U.S.C. § 362(a)(1)..................................................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WELLGEN STANDARD, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**Other Authorities**

Fifth Amendment .................................................................................................. 13, 15

Fed. R. Civ. P. 56(c)(1) ....................................................................................... 1, 10, 12

Fed. R. Civ. Pro. 12(b)(6) ............................................................................................ 5

Fed. R. Civ. Pro. 56(c)(1) and (2) ............................................................................ 2, 4

Fed R. Civ. Pro. 56(d) ............................................................................................... 14

Fed. R. Evid. 201 ................................................................................................... 2, 3, 4

Fed. R. Evid. 201(b) .................................................................................................... 4

Federal Rule of Civil Procedure 56(a) ........................................................................ 1

**Suspects**

2013 WL 5741781, *3 n. 5 (C.D. Cal. Oct. 22, 2013) ................................................ 3

Chapter 11 ................................................................................................................... 5

Section 303's ............................................................................................................... 8

*Id.*, *3 ........................................................................................................................ 9

Bankruptcy Code ....................................................................................................... 11

WELLGEN STANDARD, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STANDARD OF REVIEW

Summary judgment is warranted under Fed. R. Civ. Pro. 56(a) "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50 (1986). Where, as here, the moving party has carried its initial burden of informing the court of the basis for its motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

> If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. The underlying substantive law governing the claims determines whether or not it is material. … There must be enough doubt for a "reasonable trier of fact" to find for [non-moving party] in order to defeat the summary judgment motion.

*Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The non-moving party may not rest on mere allegations or denials. Instead, the nonmoving party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986). Conclusory and speculative affidavits that fail to set forth specific facts are insufficient to raise a genuine issue of material fact. *See, e.g.*, *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001); *Thornhill Publ'g Co., Inc. v. Gen. Tel.*

1

*& Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conclusory statements in an affidavit will not defeat a motion for summary judgment. *Yufa v. TSI Inc.*, 2014 WL 11398761, *4 (C.D. Cal. 2014).  fa

## II.   MR. LAYFIELD'S EVIDENTIARY OBJECTIONS

Mr. Layfield objects to Wellgen's reliance on various pleadings filed in *Advocate Capital, Inc. v. Layfield*, Case No. SACV 17-01628 AG (DFM) (C.D. Cal. 2017) (the "District Court Action").  Mr. Layfield objects to Wellgen's reliance on Docket Nos. 1, 35, 41, 50, 52 and 53, which consist of the complaint, default judgment, Advocate's assignment of its default judgment to Wellgen and the pleadings related to Mr. Layfield's efforts to set aside the default judgment.  Mr. Layfield's objection to these docket entries is frivolous given that Mr. Layfield admits that the default judgment was entered, that he filed, and the District Court denied, his first motion to set aside the default judgment and that he recently filed a second motion to set aside the default judgment.  (Mr. Layfield's Evidentiary Objections at pp. 5-7.)  Mr. Layfield's Declaration, which is attached to Mr. Layfield's Statement of Facts, admits that the default judgment was entered and that Mr. Layfield has moved to set the default judgment aside based on an alleged lack of proper service.   (Mr. Layfield's Decl. at ¶ 12.)

Even in the absence of Mr. Layfield's admissions, Fed. R. Civ. Pro. 56(c)(1) and (2) permit the moving party to rely on any documents and other materials as long as the documents and other materials can be presented in a form that would be admissible in evidence.  Docket Nos. 1, 35, 41, 50, 52 and 53 are admissible in evidence under Rule Fed. R. Evid. 201.  Pleadings filed and orders issued in related litigation are proper subjects of judicial notice under Rule 201. *See Reyn's Pasta Bella, LLC v. Visa USA,*

*Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record"); *In re Zulueta*, 520 Fed.Appx. 558, 559 (9th Cir. 2013) (taking judicial notice of the docket in an underlying bankruptcy proceedings); *Rodriguez v. Disner*, 688 F.3d 645, 660 n. 11 (9th Cir. 2012) (taking judicial notice of briefs filed in related case); *Roberson v. City of Los Angeles*, 220 Fed.Appx. 522, 523 (9th Cir.2007) (taking judicial notice of the state court docket sheet in the underlying action); *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n. 1 (9th Cir. 1996) (court may take judicial notice of the pleadings and court orders in earlier related proceedings); *Madden v. Cate*, 2013 WL 5741781, *3 n.5 (C.D. Cal. Oct. 22, 2013) (taking judicial notice of the California Supreme Court docket); *Rosal v. First Fed. Bank of California*, 671 F.Supp.2d 1111, 1120–21 (N.D. Cal. 2009) (taking judicial notice of plaintiff's bankruptcy petition, an order granting a motion for relief from the automatic stay, and the bankruptcy court's order of dismissal); *Retired Employees Ass'n of Orange County, Inc. v. County of Orange*, 632 F.Supp.2d 983, 985 (C.D. Cal. 2009) (taking judicial notice of a bankruptcy court order under Rule 201).

Even if this Court were to exclude Docket Nos. 1, 35, 41, 50, 52 and 53, the fact that Advocate obtained a default judgment against Mr. Layfield, the amount of the default judgment and Advocate's assignment of the default judgment to Wellgen are all set forth in detail in the Declaration of Paul Myers previously filed in this case (Docket No. 102) ("Mr. Myers' Declaration") and the Declaration of Dan A. Taussig previously filed in this case (Docket No. 73) ("Mr. Taussig's Declaration"). The facts set forth in Mr. Myers and Mr. Taussig's Declarations are undisputed. Thus, the exclusion of Docket Nos. 1, 35, 41, 50, 52 and 53 would not impact Wellgen's entitlement to summary judgment.

Mr. Layfield also objects to Wellgen's reliance on the Decision and Order of Involuntary Inactive Enrollment entered by the California State Bar Court on May 18, 2018 (the "State Bar Court Order"), the Minute Order entered March 28, 2018 (the "Minute Order"), by the California Superior Court, County of Orange, in the matter entitled *Josephine Nguyen v. Philip Layfield*, Case No.: 30-2017-00930393-CU-BC-CJC (the "Nguyen Proceeding"), and the Affidavit of Mark E. Speidel (the "Speidel Affidavit").[1] The State Bar Court Order, the Minute Order and the Speidel Affidavit are all the subject of the Request for Judicial Notice of Petitioning Creditor, Richard M. Pachulski, filed in this case (Docket No. 83) and are all admissible under Fed. R. Civ. Pro. 56(c)(1) and (2) and Fed. R. Evid. 201.

Mr. Layfield's **sole** argument is that this Court cannot take judicial notice of the various pleadings because they have not been authenticated by a custodian of records. Official public records do not require such authentication. Judicial notice is appropriate where the document is an official public document "capable of accurate and ready determination" and "not subject to reasonable dispute." Fed. R. Evid. 201(b); *see Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (finding it appropriate to take judicial notice of information made publicly available on government websites where the authenticity of the information was not challenged) *Gerritsen v. Warner Bros. Entertainment Inc*., 112 F.Supp.3d 1011, 1033-34 (C.D. Cal. 2015) (same). Here, all the pleadings to which Mr. Layfield objects are publicly available on government websites and at government offices, the authenticity of each

---

[1] At his recent deposition, Mr. Layfield expressly relied on Mr. Speidel's Affidavit with respect to his travel between Costa Rica and California and the amounts owed to L&B's clients. (Layfield Dep. at pp. 68, Line, 4-70, Line 9.)

WELLGEN STANDARD, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

pleading is capable of accurate and ready determination, and Mr. Layfield has not

challenged the authenticity of any of the pleadings to which he objects.    No

authentication is required.

### III.    MR. LAYFIELD'S DECLARATION

The only evidence offered by Mr. Layfield is his Declaration, which consists

almost entirely of conclusory statements that would not survive a motion to dismiss

under Fed. R. Civ. Pro. 12(b)(6), let alone defeat a motion for summary judgment.

### A.    Wellgen's Claim

Mr. Layfield's Declaration does not dispute or contradict any of the facts set

forth in Mr. Myers' and Mr. Taussig's Declarations except Mr. Layfield claims he does

not believe that the Amended and Restated Master Loan and Security Agreement

executed by L&B and dated August 7, 2016, was actually executed by L&B on August

7, 2016.  (Layfield Decl. ¶ 3.)  Mr. Layfield believes that L&B executed the Amended

and Restated Master Loan and Security Agreement sometime after August 7, 2016.

(*Id.*)

Mr. Layfield's Declaration contains the conclusory allegations that Advocate

was "prohibited from falsifying a proof of service," that Advocate "cooperated" with

Mr. Wakefield and Mr. Barrett in inflicting harm on Mr. Layfield, that Mr. Layfield was

not personally served with Advocate's complaint "in Marina del Rey," that Advocate

and the Chapter 11 Trustee for L&B "have engaged in self-dealing and have wasted the

L&B estate assets for their own benefit."  (Layfield Decl. ¶¶ 5, 7, 9 and 12.)  None of

these conclusory allegations are supported by any facts or detail. (*Id.*)  Mr. Layfield also

states his legal conclusion that Wellgen's default judgment is void.  (*Id.*, ¶ 12.)  Mr.

Layfield's conclusory allegations and legal conclusions do not set forth any specific

facts and are insufficient to raise a genuine issue of material fact.  *See, e.g., Far Out*

*Productions*, 247 F.3d at 997; *Thornhill Publ'g Co.*, 594 F.2d at 738.   Conclusory

statements in an affidavit will not defeat a motion for summary judgment.  *Yufa*, 2014

WL 11398761, *4.

Mr. Layfield's Declaration admits that he guaranteed repayment of Advocate's

loan to L&B but claims he did not execute the Guaranty on December 17, **2017**.

(Layfield Decl. ¶ 4.)   However, Mr. Layfield does not dispute Paragraph 12 of Mr.

Myers' Declaration, which provides as follows:

> On December 17, **2015**, Mr. Philip J. Layfield ("Mr. Layfield") executed a Guaranty in favor of Advocate ("Guaranty").  A copy of the Guaranty is attached to the Complaint as Exhibit B.  Under the Loan Agreement and the Guaranty, Mr. Layfield guaranteed payment and performance of L&B's indebtedness and obligations under the Loan Agreement (the "Obligations") and agreed that he would be jointly and severally liable for the Obligations.

(Docket No. 102, ¶ 12 (*emphasis added*).)

Mr. Layfield claims that he reviewed the Guaranty attached as Exhibit B to Mr.

Myers' Declaration, and that the Guaranty does not contain a waiver of suretyship

defenses including impairment of recourse and impairment of collateral.   (Layfield

Decl. ¶ 6.)  Mr. Layfield's claim is simply false.  The Guaranty provides as follows:

> This Guaranty is and will continue to be absolute and unconditional. I knowingly waive any and all claims, counterclaims and defenses that I may now and in the future have against Borrower, or you, or against all Additional Guarantors, that may cause you to lose any of your rights against me or against my property or assets, or require you to marshal collateral or otherwise order or defer the exercise of your rights. This includes waiver or any exemptions from seizure, and of borrower/guarantor defenses and creditor claims generally, that I might otherwise be entitled to assert under applicable law. I am

WELLGEN STANDARD, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

waiving: (a) notice of your acceptance of this Guaranty; (b) any right to o require you to notify me of any nonpayment relating to the Obligations, or any Collateral securing the Obligations, and any other action or inaction on your part, or by Borrower or any Additional Guarantor; *(c) any rights to require you to proceed against Borrower, or any Additional Guarantor, or any Collateral securing the Obligations before proceeding against me, or to exorcise diligence to the extent you may so proceed*; **(d) any right to require you to notify me or to obtain my consent to any change in the terms and conditions relating to the Obligations, including without limitation, any change in the terms of repayment, any release or substitution of Collateral**, or any release, substitution of any party or parties that may be liable for repayment; (e) any "one action" or "anti-deficiency" law or other law which may prevent you from bringing an action against me, including, without limitation, a claim for deficiency before or after or in lieu or your commencement or completion of any collection or foreclosure action; *(f) any election of remedies or other actions or inaction on your part that may impair your recourse against any collateral, my rights of subrogation, or my rights to obtain reimbursement from or against Borrower, or against any Additional Guarantor, including without limitation, any loss or my rights by reason of any law limiting, qualifying, or discharging the Obligations*; (g) any statute of limitations if at any time you file suit against me there is any outstanding Obligation which may be barred by any applicable statute of limitations; (h) any disability or other defense that Borrower, or any Additional Guarantor, or any other person, may assert against you with regard to payment of the Obligations; and (i) any rights that I may have to require Borrower or any Additional Guarantor to provide me with collateral security.

(Myers Decl., Ex. B, at pp. 3 and 4 (*emphasis added*).)  The Guaranty is governed by Tennessee law, and the waivers contained therein are enforceable under Tennessee law. *See, e.g., Nashville Electric Supply Co., Inc. v. Kay Industries, Inc.*, 533 S.W.2d 306, 309 (Tenn. App. 1975) (*perm. app. denied*).

WELLGEN STANDARD, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**B.    Alliance's Claim**

Mr. Layfield's Declaration does not dispute or contradict any of the facts set forth in the Declaration of Cheryl Kaufman previously filed in this case (Docket No. 73) except that Mr. Layfield claims that, Mr. Wakefield, rather than Mr. Layfield, pursued financing from Alliance and that he believes Alliance's loan should be characterized as an investment.  (Layfield Decl. ¶¶ 10 and 11.)

**C.    L&B Trustee's Claim**

Mr. Layfield's Declaration does not dispute or contradict any of the facts or evidence relied on by Wellgen with respect to the L&B Trustee's claim.   Instead, Mr. Layfield notes that the Minute Order was entered after L&B's bankruptcy filing and that the L&B Trustee has not provided Mr. Layfield with a "Bill of Particulars," whatever that means.  (Layfield Decl. ¶¶ 13 and 14.)

**IV.    ARGUMENT**

**A.    Section 303's Requirements Are Not Jurisdictional.**

Mr. Layfield's argument that Section 303's requirements are jurisdictional is simply wrong.  As the court in *Viola v. Krisch*, 2016 WL 4011314 (N.D. Cal. 2016), explained:

> Mr. Kirsch's position is frivolous because, as the bankruptcy court noted in its January 2011 order, the Ninth Circuit has indicated that 11 U.S.C. § 303, which governs involuntary petitions, does not impose subject matter jurisdictional requirements. *See In re Rubin*, 769 F.2d 611, 614 (9th Cir. 1985) (noting, e.g., that "a debtor in an involuntary proceeding waives the requirement [in § 303] for three petitioning creditors if he fails to raise the issue in his answer"; as a waiver was permitted, this "indicates that the requirements were not truly prerequisites to subject matter jurisdiction, since parties cannot confer subject matter jurisdiction on a federal court by their consent"); *see also In re Zarnel*, 619 F.3d 156, 169 (2d Cir. 2010) (concluding that "the restrictions

8

1
2
3
4
5
6
7
8
9

of § 303 fall decisively on the nonjurisdictional side"); *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1042-46 (11th Cir. 2008) (*en banc*) (holding that "§ 303(b)'s requirements are not subject matter jurisdictional" under the Supreme Court's test as articulated in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006)4); Docket No. 9 (Order at 4) (noting that Mr. Violà 's reliance on *In re Quality Laser Works*, 211 B.R. 936 (9th Cir. 1997), was unavailing as it did not hold that "a failure to check a box means that there is no subject matter jurisdiction"). Rather, § 303 simply contains elements that "must be established to sustain an involuntary proceeding." *Rubin*, 769 F.2d at 615 (noting that a bankruptcy court has jurisdiction to determine whether the § 303 requirements have been met).

10   *Id.*, *3.

11   **B.   <u>Wellgen's Claim is Not Subject to *Bona Fide* Dispute.</u>**

12   Mr. Layfield mistakenly argues that Wellgen's claim is the subject of a *bona*

13   *fide* dispute because Mr. Layfield recently moved, for the second time, to set aside

14   Wellgen's default judgment against Mr. Layfield.  Mr. Layfield filed his second motion

15

16   to set aside Wellgen's default judgment after the fling of the Involuntary Petition and in

17   blatant violation of the automatic stay.  Under 11 U.S.C. § 362(a)(1), the filing of an

18   involuntary petition stays the commencement or continuation of any action against the

19   debtor that was or could have been commenced prior to the filing of the involuntary

20   petition.  11 U.S.C. § 362(a)(1); *see also Ingersoll–Rand Financial Corp. v. Miller*

21   *Mining Co.*, 817 F.2d 1424, 1426 (9th Cir. 1987).  Wellgen's action against Mr.

22

23   Layfield is obviously an action against the debtor, and it was obviously commenced

24   prior to the filing of the Involuntary Petition.  Thus, Wellgen's action against Mr.

25   Layfield was stayed, and, therefore, Mr. Layfield's second motion to set aside

26   Wellgen's default judgment is a legal nullity.  Legal proceedings in violation of the

27   automatic stay are void. *See, e.g., Gruntz v. County of Los Angeles (In re Gruntz)*, 202

28

WELLGEN STANDARD, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

F.3d 1074, 1082 (9th Cir.2000) ("actions taken in violation of the automatic stay are void").

Mr. Layfield recently moved the District Court to enter an order *ex parte* staying this case. The District Court denied Mr. Layfield's motion finding that the District Court Action was stayed by the filing of the Involuntary Petition. (Docket No. 59.) A copy of the District Court's Order is attached hereto as **Exhibit B.**

Mr. Layfield's Opposition contains a plethora of unsupported, conclusory allegations that Advocate and its counsel perpetrated a fraud on the District Court, that, as the result of such fraud, the District Court will ultimately set aside Wellgen's default judgment, and that, as a sanction for such fraud, the District Court will dismiss Wellgen's claim against Mr. Layfield with prejudice. [2] (Mr. Layfield's Opposition at pp. 1-5.) Mr. Layfield did not include these conclusory allegations in his Declaration and the record is utterly devoid of any evidentiary support for these conclusory allegations. Mr. Layfield's Declaration says only that he was not personally served with Advocate's complaint "in Marina del Rey." Mr. Layfield's conclusory allegations, which are unsupported by any evidence whatsoever, are insufficient to raise a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586 n.11. Conclusory statements in an affidavit will not defeat a motion for summary judgment. *Yufa*, 2014 WL 11398761, *4.

---

[2] Mr. Layfield has claimed he could not possibly have been in California at the time of service because he was in Costa Rica. However, at his recent deposition, he testified that he "frequently traveled back and forth between Costa Rica to California." (Layfield Dep. at p. 65, Lines 4-13.) According to Mr. Layfield, he was "coming back and forth regularly." (*Id.*)

WELLGEN STANDARD, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Even if, as Mr. Layfield alleges, he was not properly served, there is no requirement that a creditor have obtained a final judgment for a bankruptcy court to determine that the creditor's claim is not subject to a *bona fide* dispute. All that is required is the establishment of a right to payment. *See, e.g., In re AMC Investors, LLC*, 406 B.R. 478, 485–486 (Bankr. D. Del. 2009); *see also Platinum Fin. Servs. Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 438 (4th Cir. 2004) (definition of "claim" under the Bankruptcy Code includes a "right to payment, whether or not such right is reduced to judgment." Therefore, the definition of claim "permits some creditors who have not reduced their claims to judgment to file involuntary petitions."). Mr. Layfield admits he guaranteed the $4,000,000 loan that Advocate, Wellgen's predecessor, made to L&B. (Declaration of Philip Layfield, Case No. 2:17-bk-19548-NB (Docket No. 18, ¶ 29)). Moreover, as discussed above, Mr. Layfield's Declaration does not raise any disputed issue of fact or any *bona fide* dispute regarding the validity his debt to Wellgen or the amount of that debt.[3]

## C.  Alliance's Claim is Not Subject to *Bona Fide* Dispute.

Mr. Layfield's Opposition to Wellgen's Summary Judgment Motion contains the following unsupported, conclusory allegations regarding Alliance's claim:

> Even if a judgment may or may not be in existence, the calculations supporting the balance due are not accurate because the amounts owed are not accurate. It is impossible to determine what cases have been collected on since the L&B bankruptcy, what the interest rate should be and what amounts if any have or should be satisfied by proceeds coming into the L&B estate.

---

[3] At his recent deposition, Mr. Layfield invoked his Fifth Amendment privilege when asked whether he submitted fraudulent draw requests to Advocate. (Layfield Dep. at pp. 149, Line 19-150, Line 9.)

WELLGEN STANDARD, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

(Mr. Layfield's Opposition at p. 7.)   Mr. Layfield did not include these conclusory allegations in his Declaration and the record is utterly devoid of any evidentiary support for these conclusory allegations.   Mr. Layfield's conclusory allegations, which are unsupported by any evidence whatsoever, are insufficient to raise a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586 n.11.   Conclusory statements in an affidavit will not defeat a motion for summary judgment.   *Yufa*, 2014 WL 11398761, *4.

### D.    The L&B Trustee's Claim is Not Subject to Bona Fide Dispute.

Mr. Layfield's lone argument regarding the L&B Trustee's claim is that the Minute Order entered on March 28, 2018, in the Nguyen Proceeding could not have possibly impacted L&B because L&B's bankruptcy case was pending and the automatic stay was in effect at the time.   In the Minute Order, the court found that, as the result of Mr. Layfield's misappropriation of Ms. Nguyen's settlement proceeds, L&B was not entitled to recover any attorney's fees from the recovery.   Regardless of when the Minute Order was entered, it is undisputed that Mr. Layfield's conversion of Ms. Nguyen's settlement proceeds deprived L&B of the right to receive any attorney's fees from Ms. Nguyen's recovery.

Mr. Layfield does not address Wellgen's argument that Mr. Layfield misappropriated and converted $2,314,942.15 of Ms. Nguyen's settlement proceeds and is liable to L&B for the amount that be misappropriated and converted.   There is no dispute that Mr. Layfield misappropriated $2,314,942.15 of Mrs.  Nguyen's settlement proceeds.   As set forth in Wellgen's Summary Judgment Motion, the California State Bar Court found that Mr. Layfield misappropriated $2,314,942.15 of Ms. Nguyen's settlement proceeds and that finding is binding on Mr. Layfield.   L&B is liable to Ms.

Nguyen for Mr. Layfield's misappropriation, and, in turn, Mr. Layfield is liable to L&B. *See In re O'Neil*, 1997 WL 615661 (Bankr. Minn. 1997) (lawyer that misappropriated client funds liable to law firm for amounts misappropriated under doctrines of conversion, indemnity and implied contract).

Mr. Layfield previously claimed that he is not liable to L&B for conversion of Ms. Nguyen's settlement proceeds because he did not personally benefit from such conversion. Mr. Layfield makes no such assertion in his opposition to Wellgen's Summary Judgment Motion or in his Declaration. Indeed, Mr. Layfield's Declaration makes no mention of Ms. Nguyen other than his note that the Minute Order was entered after L&B's bankruptcy was filed.

Mr. Layfield offers no evidence to contradict Mr. Speidel's Affidavit that Ms. Nguyen's settlement proceeds were transferred from L&B's trust account to L&B's operating account and that at least $1,000,000 of Ms. Nguyen's settlement proceeds were then transferred from L&B's operating account to Mr. Layfield's personal account. Between August 30, 2016, and December 12, 2016, Mr. Layfield transferred first from L&B's trust account to an L&B operating account and then to his personal USAA bank account the aggregate amount of $685,000. (Speidel Affidavit ¶ 31.) Between October 16, 2016, and February 28, 2017, Mr. Layfield wired from L&B's trust account directly to Mr. Layfield's personal USAA account, the aggregate amount of $317,500. *Id.*

At his recent deposition, Mr. Layfield exercised his Fifth Amendment privilege and refused to answer any questions regarding Ms. Nguyen's or her settlement proceeds. (Layfield Dep. at pp. 77, Line 24-78-4, 123, Line 15-125, Line 22.) When asked whether he transferred Ms. Nguyen's settlement proceeds to himself, Mr.

Layfield exercised his Fifth Amendment privilege and refused to answer the questions. (*Id.*)  Similarly, when asked whether he converted assets of L&B and/or L&B's clients, Mr. Layfield exercised his Fifth Amendment privilege and refused to answer the questions.  (*Id.*)  Wellgen is entitled to the adverse inference that Mr. Layfield did in fact convert L&B's assets and Ms. Nguyen's settlement proceeds.  *See, e.g., Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) (adverse inference may be drawn from invocations of the privilege against self-incrimination where silence is countered by independent evidence of the fact being questioned).

**E.    Mr. Layfield is Not Entitled to Additional Discovery.**

In Mr. Layfield's Opposition, Mr. Layfield claims that he needs additional discovery, but he did not even attempt to comply with Fed R. Civ. Pro. 56(d).

> A party invoking Rule 56(d) "bears the burden of showing 'what facts [it] hopes to discover to raise a material issue of fact.'" *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991) (quoting Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1306, n.1 (9th Cir. 1986)). "Compliance with [Rule 56(d)] requires more than a perfunctory assertion that the party cannot respond because it needs to conduct discovery. In that regard, references in memoranda and declarations positing a need for discovery do not constitute a proper motion under [Rule 56(d)]. Rather, that rule requires affidavits setting forth with particularity: (1) why the party opposing summary judgment cannot respond; (2) the particular facts that the party reasonably expects to obtain in further discovery; and (3) how the information reasonably expected from its proposed discovery requests could be expected to create a genuine issue of material fact that would defeat the summary judgment motion." *Adams v. Allstate Insurance Co.*, 187 F. Supp. 2d 1207, 1213 (C.D. Cal. 2002); *see also Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) ("A party requesting a continuance pursuant to [Rule 56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."). "The party

WELLGEN STANDARD, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

seeking additional discovery also bears the burden of showing that the evidence sought exists." *Terrell*, 935 F.2d at 1018. "Failure to comply with the requirements of [Rule 56(d)] is a proper ground for denying discovery and proceeding to summary judgment." *Brae Transportation, Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986). "Moreover, even where these prerequisites are met, a court may refuse to continue hearing a summary judgment motion where a party has had the opportunity to conduct discovery in a diligent fashion, but failed to do so." *Adams*, 187 F. Supp. 2d at 1213 *citing Stitt v. Williams*, 919 F.2d 516, 526 (9th Cir. 1990).

*Beazley Insurance Company, Inc. v. Niami,* 2012 WL 12845104, *1 (C.D. Cal. 2012). Mr. Layfield not only failed to comply with Rule 56(d), Mr. Layfield admitted at his recent deposition that, although he could have done so, he has made no effort whatsoever to obtain discovery in this case.  (Layfield Dep. at pp. 166, Line 14-167, Line 4.)

## V.    JOINDERS IN INVOLUNTARY PETITION

Since the filing of the Involuntary Petition, four (4) additional creditors of Mr. Layfield have joined in the Involuntary Petition pursuant to 11 U.S.C. § 303(c). These creditors are Mr. Mitchell Middleton, Mr. Art Hosmer, Mr. Bert Rosenquist and Mr. Rodney Pimentel.  (Docket Nos. 121, 122, 123, 124, 134 and 135).  All four (4) creditors are former clients of L&B, and all four (4) creditors hold unsecured claims against Mr. Layfield arising from Mr. Layfield's conversion of their settlement proceeds.  (*Id.*).   Mr. Middleton holds an unsecured claim in the amount of $450,414.96, Mr. Hosmer holds an unsecured claim in the amount of $225,000.00, Mr. Rosenquist holds an unsecured claim in the amount of $14,451.00, and Mr. Pimentel holds an unsecured claim in the amount of $742,442.15.  (*Id.*)  All four (4) claims are properly supported by declarations.  (*Id.*)

WELLGEN STANDARD, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Moreover, Mr. Pimentel's claim was a subject of the State Bar Court Order where Mr. Layfield was found to have misappropriated Mr. Pimentel's funds and was ordered to make restitution. (*See* State Bar Court Order.) At his recent deposition, Mr. Layfield testified he had not made restitution to Mr. Pimentel. (Layfield Dep. at p. 133, Lines 4-15.)

Mr. Layfield cannot dispute any of these claims. At his recent disposition, Mr. Layfield exercised his Fifth Amendment privilege and refused to answer any questions regarding the claims of any of these creditors. (Layfield Dep. at pp. 166, Line 3-168, Line 2.) Having done so, Mr. Layfield cannot now offer his own contrary testimony regarding the claims of any of these creditors. The Fifth Amendment privilege cannot be invoked as a shield to refuse to answer questions in a deposition while discarding it for the limited purpose of making statements to defeat summary judgment. *See, e.g.*, *U.S. v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 641 (9th Cir. 2012). Moreover, because the creditors' claims that Mr. Layfield converted their settlement proceeds are supported by other evidence, Wellgen is entitled to the adverse inference that Mr. Layfield did in fact convert their settlement proceeds. *See, e.g., Glanzer*, 232 F.3d at 1264 (adverse inference may be drawn from invocations of the privilege against self-incrimination where silence is countered by independent evidence of the fact being questioned).

## VI.    <u>CONCLUSION</u>

For the reasons set forth above, Wellgen prays that this Court grant Wellgen's Summary Judgment Motion, enter the order for relief requested in the Involuntary

WELLGEN STANDARD, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Petition and grant such further relief as it deems just and proper.

Dated:  December 3, 2018                WEILAND GOLDEN GOODRICH LLP

                                        By:____/S/ JEFFREY GOLDEN____
                                            Jeffrey I. Golden
                                            Attorneys for Wellgen Standard,
                                            LLC

                                        BRADLEY ARANT BOULT CUMMINGS
                                        LLP

                                        By:____/S/ ROGER G. JONES_____
                                            Roger G. Jones
                                            Attorneys for Wellgen Standard,
                                            LLC

WELLGEN STANDARD, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1      UNITED STATES BANKRUPTCY COURT

2      CENTRAL DISTRICT OF CALIFORNIA

3         LOS ANGELES DIVISION

4           -  -  -

5
  IN RE:  PHILIP JAMES LAYFIELD, Debtor
6

7   Case NO. 2:18-bk-15829-NB

8           -  -  -

9           November 27, 2018

10           -  -  -

11      Oral deposition of PHILIP J. LAYFIELD,

12   taken pursuant to notice, held at Regus, 1000

13   N. West Street, Suite 1200, Wilmington,

14   Delaware  19801, commencing at 9:30 a.m., on

15   the above date, before Jennifer P. Miller, RPR,

16   CCR, CRR #30XI00235100 and Notary Public.

17

18

19

20

21

22

23

24

25
          2

1  A P P E A R A N C E S:

2  BRADLEY, ARANT, BOULT CUMMINGS, LLP

3  ROGER G. JONES, ESQUIRE

4  1600 Division Street

5  Suite 700

6  Nashville, TN 37219

7  (615) 252-2323

8  Rjones@bradley.com

9  Counsel for Wellgen Standard, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1             I N D E X

2   WITNESS:                    PAGE

3   PHILIP J. LAYFIELD

4          BY MR. JONES        5

5              -   -   -

6         E X H I B I T S

7   NUMBER         DESCRIPTION          PAGE

8   Exhibit 1   Notice of Deposition       12

9   Exhibit 2   Form Agreement          78

10  Exhibit 3   Guaranty           83

11  Exhibit 4   Document           127

12  Exhibit 5   Disbarment Document      136

13  Exhibit 6   Document           127

14  Exhibit 7   Document           127

15  Exhibit 8   Response Document       168

16  Exhibit 9   Response Document       170

17  Exhibit 10  Declaration         171

18  Exhibit 11  Motion           192

19

20

21

22

23

24

25
              4

1  would have been significantly more funds

2  available to pay your clients, to pay the

3  clients of Layfield & Barrett.

4         And if that had happened, I

5  could have stayed involved in the process.  I

6  could have assisted.  I would have frequently

7  traveled back and forth from Costa Rica to

8  California.  And then the United States

9  government would not have been able to float

10  the false allegation that I had fled the

11  country because I had never intend to flee the

12  country.  I was coming back and forth

13  regularly.

14         And so had we taken a different

15  path, Mr. Jones, the U.S. Attorney's office,

16  who apparently is nothing more than a bunch of

17  lemons because they follow any idiot that tells

18  them something, the U.S. Attorney's Office

19  would not have been giving the ammunition to

20  call me a flight risk and to allege that I had

21  stolen $11 million and hidden that $11 million

22  in secret offshore accounts that I was going to

23  use to live a life on the lam for the rest of

24  my life.

25         And so that's what -- that's

65

1      A.  I'll give you an example of a

2  calculation.  I know you want to jump ahead.

3      Q.  I want a number.

4      A.  I'm going to give you a number.  I'm

5  going to give you the support for that number

6  as well.

7          What I understand is that the

8  sum of all of the clients that complained to

9  the California State Bar, there was a number

10  that was included in Special Agent Speidel's

11  affidavit, which mentioned something around

12  $8.9 million.

13      Q.  It was 8.6.

14      A.  Okay.  Now, of that 8.6, those are

15  gross settlement proceeds.  Okay?  So from what

16  I understand is that that number was the total

17  amount the clients were claiming were their

18  settlement amounts.

19          Now, when you take those

20  settlement amounts and you reduce those

21  settlement amounts for attorney's fees and you

22  reduce those settlement amounts for cost

23  advance, which obviously would have been used

24  to compensate your client, the net number,

25  assuming every one of those claims was valid,

68

1   the number would have been probably less than

2   four million.  Now when a closer examination of

3   that schedule that was provided by Speidel will

4   show that there were certain duplicate entries

5   of that 8.7.

6           There were entries that were

7   also completely false.  As an example, there

8   was 1,086,000 of that 8.7 was a complaint by a

9   client named Timothy Blevins.  Mr. Blevins was

10  paid in full.  He had a dispute of about

11  $30,000 based on liens, cost, et cetera, he

12  made his complaint, and it was listed in that

13  8.7, you know, 1,086,000, but he had been paid

14  everything that he was entitled to other than

15  $30,000.  So when you take out Mr. Blevins's

16  number, which shouldn't have been included, you

17  now go down to 7.7.

18          There were duplicate entries

19  with respect to the Pimentel matter.  There was

20  a gross amount with Pimentel, and there was an

21  attorney that was entitled referral fees.  He

22  doubled it up.  The Pimentel matter, which only

23  settled for a million dollars, was listed in

24  there at, like, 1.7 million because there were

25  two entries.  And there were several of these

                          69

1   where there was duplicate entries, so I can't

1  where there was duplicate entries, so I can't

2  tell you for sure without having, like, the

3  forensic accountant go through and verify every

4  single one of one the numbers that was included

5  in Speidel's number, and so I think it's

6  substantially less than four million.

7      Q.  Do you know whether Mr. Speidel's

8  number was a gross or net number?

9      A.  It was gross.

10            -  -  -

11          (Whereupon, an off-the-record

12      discussion was held.)

13            -  -  -

14  BY MR. JONES:

15      Q.  How do you know that?

16      A.  Well, when I looked at the first few

17  entries, like the Blevins and the Pimentel,

18  those appeared to be the gross numbers.

19      Q.  You don't have that document in your

20  possession or control?

21      A.  I don't.

22      Q.  Why were the Layfield & Barrett

23  clients owed anything?

24      A.  Because they had settlement monies

25  that were checked by Layfield & Barrett.

                    70

1  declaration in support of the involuntary

2  petition including accounting all of its

3  documents.  Did you review that?

4      A.  I probably did review it at some

5  point.

6      Q.  Do you have any basis as we sit here

7  today to dispute anything Alliance said in that

8  declaration?

9      A.  Other than verifying the

10  calculations, no.

11      Q.  Now, you say in your declarations for

12  your motion to dismiss that Mr. Pachulski has

13  no viable claims against you personally?

14      A.  Correct.

15      Q.  Now, as you will recall,

16  Mr. Pachulski, the trustee's claim, arises out

17  of the allegation or the fact that Ms. Nguyen's

18  monies, client funds, were transferred from the

19  L&B account trust account to the L&B operating

20  account and then transferred to you; do you

21  recall that?

22      A.  Do I recall that there's an

23  allegation by Nguyen about monies?

24      Q.  Were her funds, client funds,

25  transferred to the L&B operating account and

                    123

1  then in turn transferred to you.

2      A.  So, again, as it specifically relates

3  to matters that are subject to the indictment,

4  I'm not going to answer.

5          However, what I have answered is

6  that -- I've answered this previously -- is

7  that because the Nguyen matter was stayed as to

8  Layfield & Barrett, there has been no adverse

9  determination on any level regarding the Nguyen

10  matter vis-a-vis Layfield & Barrett.  And so

11  the trustee has made these claims that somehow

12  the minute order invalidates the

13  attorney-client agreement that was signed with

14  Nguyen, but because of the stay, it's improper

15  for a state court judge to issue any rulings

16  that impact Layfield & Barrett in a state court

17  case where there is a stay currently applicable

18  to Layfield & Barrett.

19      Q.  Mr. Layfield, the claim that the

20  trustee makes against you in the involuntary

21  petition is the conversion of L&B's funds, the

22  transfer of Ms. Nguyen's client funds, to the

23  L&B account and then to you.  That's the claim

24  of conversion.  Did that occur or did it not?

25      A.  As I previously stated, money is

                      124

1   fungible.  I had an employment agreement.  So

2   when I had previously explained that issue, as

3   I've explained is, without a full accounting of

4   all of the monies that went into Layfield &

5   Barrett by me or on my behalf and all of the

6   money that went out of Layfield & Barrett, it

7   is virtually impossible to determine whether

8   what I received was greater than or less than

9   what I was entitled to under my employment

10   compensation arrangement.

11      Q.  That's not my question.  Let's go

12   back and let's be sure whether you will or will

13   not answer the question.

14          Isn't it true, Mr. Layfield,

15   that Layfield & Barrett at your direction

16   transferred money from Mrs. Nguyen's client

17   funds in the trust account to the operating

18   account and then in turn to you; is that not

19   true?

20      A.  On the advice of counsel, I'm not

21   going to answer that specific question related

22   to the indictment.

23      Q.  Okay.  So when you say in your

24   declaration that you did not personally benefit

25   from the misappropriation of Nguyen's funds,

                        125

1  received notice of the bar date.

2          Can I ask you to take look at

3  paragraph 37 of Exhibit 4.  In paragraph 37, it

4  says Layfield personally benefited from JN's

5  settlement proceeds via wire transfers and kept

6  such usage from JN by personally and without

7  involvement associated with L&B concealing his

8  activity; do you see that?

9      A.  I saw it, yeah.

10      Q.  Do you disagree with those

11  allegations?

12      A.  Anything that you asked me related to

13  this criminal complaint, I'm going to plead the

14  Fifth on.

15      Q.  Now, you say you were owed

16  compensation, correct?  How often was that

17  compensation paid, was there a schedule for

18  payment of compensation?

19      A.  I think that there was sort of a

20  general sort of hopeful schedule, but it wasn't

21  adhered to.

22      Q.  Okay.  So is it true that you were

23  paid whenever L&B could find some money to make

24  a payment to you?

25      A.  I wouldn't say that that assessment

                    133

1   there, yet you are continuing to play this

2   game.

3                   - - -

4               (Whereupon, Exhibit 6 was

5       marked for identification.)

6                   - - -

7   BY MR. JONES:

8       Q.  Could I ask you to take a look at

9   what the Court Reporter has marked as Exhibit

10  6.

11      A.  Okay.

12      Q.  Do you recognize Exhibit 6?

13      A.  I don't.

14      Q.  Would you take a look at it.

15      A.  I'm taking a look at it.

16      Q.  Now, do you recognize exhibit 6?

17      A.  It looks like one of the standard

18  documents that was created.

19      Q.  When you requested this draw for a

20  1,144,305.17 from Advocate, did you disclose to

21  them that you had been using or were using

22  client funds to fund your operations?

23      A.  As it relates to this specific

24  document, which has relation to pending

25  criminal matters, I'm going to exercise my

                        149

1   Fifth Amendment

1  Fifth Amendment.

2      Q.  In fact, Mr. Layfield, isn't it true

3  that at the time you submitted this withdraw

4  request, Layfield & Barrett had been using

5  client funds to finance its operations for

6  sometime, correct?

7      A.  Again, because it relates to a

8  pending criminal matter, I'm going to exercise

9  my Fifth Amendment.

10      Q.  Do you recall providing financial

11  statements to Advocate shortly before

12  submitting this draw request?

13      A.  I don't recall that.

14      Q.  Do you recall whether those financial

15  statements disclosed the fact that you were

16  using client funds to finance your operations?

17      A.  Again, without having the financial

18  statements and without knowing the context, I

19  can't say.

20      Q.  But, Mr. Layfield, you represented in

21  here that the representations and warranties of

22  borrower contained in the agreement are true

23  and correct as of the date of this request for

24  advance.

25      A.  Again, because it relates to a

150

1      A.  The accounting team in India

2   generated projections.

3      Q.  The accounting team in India?

4      A.  Yes.

5      Q.  Did you review those projections?

6      A.  At different times, yes.

7      Q.  Did you do any diligence to determine

8   whether or not they were correct?

9      A.  Yeah, to the best of my ability.

10      Q.   You believed them to be correct at

11   the time?

12      A.  I believed that there were always

13   areas that needed improvement in projections.

14   And so I can't tell you at what specific time

15   what I believed and didn't believe, but I

16   believed that we were constantly working

17   towards getting the best possible projections

18   that were available.

19      Q.  What precautions did you take to make

20   sure that L&B creditors were paid in the event

21   that your protections turned out to be

22   incorrect?

23      A.  Well, there's always the notion of

24   growing concern.  There was always the notion

25   that to the extent there was shortfalls there

161

1   Fifth Amendment?

2        A.   Correct.

3        Q.   Mr. Layfield, do you recognize the

4   name Art Hosmer, H-O-S-M-E-R?

5        A.   Sounds familiar, but I can't place

6   him.

7        Q.   Do you recall whether he was a client

8   of Layfield & Barrett?

9        A.   I can't recall.

10       Q.   Mr. Hosmer asserts that you converted

11   $225,000 of settlement proceeds that belonged

12   to him.

13       A.   Fifth Amendment.

14       Q.   You're refusing to answer any

15   questions about Mr. Hosmer's claim?

16       A.   Fifth Amendment.

17       Q.   Mr. Layfield, do you recognize the

18   name Mitchell Tyler Middleton?

19       A.   I do.

20       Q.   Was he a client of Layfield &

21   Barrett?

22       A.   Most likely.

23       Q.   Do you know?

24       A.   I don't know what the legal argument

25   was regarding two dash 200s or representation

166

EXHIBIT A  PAGE  32

2      Q.  Mr. Middleton asserts that you

3  converted approximately $450,000 of his client

4  funds.  Did you do that?

5      A.  Fifth Amendment.

6      Q.  You're refusing to answer any

7  questions about Mr. Middleton's claims based on

8  Fifth Amendment?

9      A.  Fifth Amendment.

10      Q.  Mr. Layfield, you do recognize the

11  name Rodney A. Pimentel, do you not?

12      A.  I recognize the name.

13      Q.  Was he a client of Layfield &

14  Barrett?

15      A.  What the exact relationship was, I

16  can't tell you for certain.

17      Q.  Mr. Pimentel asserts that you

18  converted $742,000 in settlement proceeds that

19  belonged to him; isn't that true?

20      A.  Fifth Amendment.

21      Q.  Mr. Layfield, do you recognize the

22  name Bert Rosenquist?

23      A.  No.

24      Q.  Do you recall whether he was a client

25  of Layfield & Barrett?

167

1      A.  I can't recall.

2      Q.  Like the others, Mr. Rosenquist

3  asserts that you converted his settlement

4  proceeds.  Did you do that?

5      A.  Fifth Amendment.

6              - - -

7          (Whereupon, Exhibit 8 was

8       marked for identification.)

9              - - -

10  BY MR. JONES:

11     Q.  Just to be clear, Mr. Layfield, you

12  are refusing to answer any questions regarding

13  the claims of former L&B clients that I just

14  mentioned on the grounds of Fifth Amendment; is

15  that correct?

16     A.  Correct.

17     Q.  Do you recognize Exhibit 8,

18  Mr. Layfield?

19     A.  I do.

20     Q.  What is Exhibit 8?

21     A.  Fifth Amendment.

22     Q.  Exhibit 8 is the Fifth Amendment?

23  It's longer than I recall.

24     A.  Since it's relating to a criminal

25  matter, Fifth Amendment.
                          168

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 17-01628 AG (DFMx) | Date | November 28, 2018 |
|---|---|---|---|
| Title | ADVOCATE CAPITAL, INC. v. PHILIP J. LAYFIELD | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |

**Proceedings:**      **[IN CHAMBERS] ORDER REGARDING DEFENDANT'S
*EX PARTE* APPLICATION (DKT. 58)**

Philip Layfield's *ex parte* application is DENIED. The January 14, 2019 hearing is VACATED
due to an automatic stay during bankruptcy proceedings against Layfield. A status conference
will be held on **April 29, 2019 at 9:00 a.m.**

This case concerns a commercial guaranty dispute. Plaintiff Advocate Capital, Inc. agreed to
lend money to Defendant Philip Layfield's law firm, Layfield & Barrett, APC ("L&B").
Defendant guaranteed the loan. When an involuntary bankruptcy petition was filed regarding
L&B, Plaintiff unsuccessfully sought repayment of the loan from Layfield. Plaintiff then filed
this lawsuit against Layfield. Layfield never appeared. The Court eventually entered a default
judgment for Plaintiff. (Dkt. 35.) Representing himself, Layfield then filed a motion to set
aside the default judgment. (Dkt. 41.) The Court denied that motion.

Layfield moved for reconsideration of the order denying his motion to set aside judgment,
and a hearing was held on October 22, 2018. (Dkt. 53.) The Court questioned Layfield under
oath regarding service of process in this action, but the hearing was continued to January 14,
2019 to allow for further questioning of Layfield and other potential witnesses. Layfield now
moves *ex parte* for a protective order, temporary stay of ancillary proceedings, and an order to
compel witness appearances at the evidentiary hearing. (Dkt. 58.) Plaintiff did not file an
opposition.

In short, Layfield broadly accuses several people associated with Advocate Capital, including
its lead counsel, of engaging in perjury or other unlawful behavior. Confident that he will

EXHIBIT B  PAGE  35

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 17-01628 AG (DFMx) | Date | November 28, 2018 |
|---|---|---|---|
| Title | ADVOCATE CAPITAL, INC. v. PHILIP J. LAYFIELD | | |

prevail on his motion for reconsideration, Layfield urges that discovery in a related involuntary bankruptcy proceeding against him should be stayed pending resolution of this action. *See In re Layfield*, Case No. 2:18-bk-15829-NB (Bankr. C.D. Cal. 2018). He also seeks a court order compelling five witnesses to appear at the continued hearing on his reconsideration motion.

Though no notice of automatic bankruptcy stay was filed in this Court, Plaintiff's position is that the filing of an involuntary bankruptcy petition against Layfield on May 21, 2018 effected an automatic stay of this case. *See* Plaintiff's November 16, 2018 Status Report (Dkt. 57) (attaching Order Appointing Interim Trustee). Under 11 U.S.C. § 362(a), such a filing "operates as a stay" of any actions against the debtor. Plaintiff's status report explains that the bankruptcy court is set to hear several motions regarding Layfield's bankruptcy – including a motion to dismiss the bankruptcy and to give Layfield (instead of a trustee) the ability to litigate it – which might affect the automatic stay of this action. Plaintiff suggests that the evidentiary hearing set for January 14, 2019 be stayed until after the bankruptcy motions are resolved.

Though it would have been prudent for Plaintiff to file a notice of stay as soon as bankruptcy proceedings were filed, the Court finds this action is subject to an automatic stay. The evidentiary hearing set for January 14, 2019 is VACATED. If there is a change in the Layfield bankruptcy that lifts the automatic stay, Plaintiff must immediately notify the Court. At that point, the Court will set a hearing date on Layfield's reconsideration motion.

Regarding Layfield's other arguments and requests for relief, the Court finds them to be without merit and DENIES Layfield's *ex parte* application. (Dkt. 58.)

                                                                    :    0

                                        Initials of Preparer    lmb

---

EXHIBIT B  PAGE  36

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 600, Costa Mesa, California 92626**

A true and correct copy of the foregoing document entitled (*specify*):  **REPLY IN SUPPORT OF WELLGEN STANDARD, LLC'S MOTION FOR SUMMARY JUDGMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) **December 3, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On (*date*) **December 3, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served)**:**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **December 3, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Neil Bason, 255 E. Temple Street, Los Angeles, CA  90012

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| December 3, 2018 | Kelly Adele | *(signature)* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
0.0

**F 9013-3.1.PROOF.SERVICE**

**VIA EMAIL**
Philip J. Layfield
c/o Maximum Legal Holdings, LLC
8 The Green, Suite 6426
Dover, DE 19901
Email: phil@maximum.global

**Electronic Mail Notice List**
Wesley H Avery (TR)    wes@averytrustee.com,
C117@ecfcbis.com;lucy@averytrustee.com;alexandria@averytrustee.com
Beth Gaschen    bgaschen@wgllp.com,
kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com
Jeffrey I Golden    jgolden@wgllp.com, kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com
Yana G Henriks    yhenriks@law-mh.com, rmcmurray@law-mh.com
Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
Faye C Rasch    frasch@wgllp.com, kadele@wgllp.com;tziemann@wgllp.com
Jeffrey L Sumpter    jsumpter@epiqtrustee.com, jsumpter@cbiz.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Dennis J Wickham    wickham@scmv.com, nazari@scmv.com