| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Yana G. Henriks (SBN 250638)<br>yhenriks@law-mh.com<br>MCMURRAY HENRIKS, LLP<br>811 Wilshire Blvd., Suite 1640<br>Los Angeles, California 90017<br>Telephone: (323) 931-6200<br>Facsimile: (323) 931-9521<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Rodney Pimentel | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>Philip James Layfield<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:18-bk-15829-NB<br><br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(ACTION IN NONBANKRUPTCY FORUM)** |
| | DATE: 06/24/2021<br>TIME: 1:00 pm<br>COURTROOM: ZoomGov |

**Movant**: Rodney Pimentel

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701

   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367          ☐ 1415 State Street, Santa Barbara, CA 93101

   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☐ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☒ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*)  06/23/2021   and (*time*)  10:00 am    ; and, you may appear at the hearing.

    a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b. ☒ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c. ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  06/16/2021 

MCMURRAY HENRIKS, LLP
Printed name of law firm (if applicable)

Yana G. Henriks
Printed name of individual Movant or attorney for Movant

/s/ Yana G. Henriks
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO NONBANKRUPTCY ACTION

1. **In the Nonbankruptcy Action, Movant is:**

   a. ☒  Plaintiff

   b. ☐  Defendant

   c. ☐  Other (*specify*):

2. **The Nonbankruptcy Action:** There is a pending lawsuit or administrative proceeding (Nonbankruptcy Action) involving the Debtor or the Debtor's bankruptcy estate:

   a. *Name of Nonbankruptcy Action*: Rodney Pimentel v. Joseph Barrett et al.

   b. *Docket number*: BC701615

   c. *Nonbankruptcy forum where Nonbankruptcy Action is pending*:
   Los Angeles County Superior Court

   d. Causes of action or claims for relief (Claims):
   Breach of Fiduciary Duty, (Constructive Fraud), Fraudulente Business Practices, Conversion, Breach of Contract, Negligence-Legal Malpractice, False Advertising

3. **Bankruptcy Case History:**

   a. ☐ A voluntary  ☒ An involuntary  petition under chapter  ☒ 7 ☐ 11 ☐ 12 ☐ 13
   was filed on (*date*)  05/21/2018  .

   b. ☐ An order to convert this case to chapter  ☐ 7 ☐ 11 ☐ 12 ☐ 13
   was entered on (*date*) _____.

   c. ☐ A plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:** Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Nonbankruptcy Action to final judgment in the nonbankruptcy forum for the following reasons:

   a. ☐  Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.

   b. ☐  Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   c. ☐  Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   d. ☒  The Claims are nondischargeable in nature and can be most expeditiously resolved in the nonbankruptcy forum.

   e. ☒  The Claims arise under nonbankruptcy law and can be most expeditiously resolved in the nonbankruptcy forum.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

f. ☐ The bankruptcy case was filed in bad faith.

    (1) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

    (2) ☐ The timing of the filing of the bankruptcy petition indicates that it was intended to delay or interfere with the Nonbankruptcy Action.

    (3) ☐ Multiple bankruptcy cases affect the Nonbankruptcy Action.

    (4) ☐ The Debtor filed only a few case commencement documents.  No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

g. ☐ Other (*specify*):


5. **Grounds for Annulment of Stay.**  Movant took postpetition actions against the Debtor.

    a. ☐ The actions were taken before Movant knew that the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

    b. ☐ Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed in the Nonbankruptcy Action in prior bankruptcy cases affecting the Nonbankruptcy Action as set forth in Exhibit. _____.

    c. ☐ Other (*specify*):


6. **Evidence in Support of Motion:  (*Important Note:  declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.*)**

    a. ☒ The DECLARATION RE ACTION IN NONBANKRUPTCY FORUM on page 6.

    b. ☐ Supplemental declaration(s).

    c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the Debtor's case commencement documents are attached as Exhibit. _____.

    d. ☒ Other evidence (*specify*):

    Declaration of Yana G. Henriks attached hereto as "Attachment 2"; Request for Judicial Notice attached hereto as "Attachment 3"

7. ☒ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**Movant requests the following relief:**

1. Relief from the stay pursuant to 11 U.S.C. § 362(d)(1).

2. ☒ Movant may proceed under applicable nonbankruptcy law to enforce its remedies to proceed to final judgment in the nonbankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against the Debtor or property of the Debtor's bankruptcy estate.

3. ☐ The stay is annulled retroactively to the bankruptcy petition date.  Any postpetition acts taken by Movant in the Nonbankruptcy Action shall not constitute a violation of the stay.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified, or annulled as to the co-debtor, on the same terms and condition as to the Debtor.

5. ☐ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

6. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Nonbankruptcy Action.

7. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be, without further notice

8. ☐ Other relief requested.

Date:  06/16/2021                          MCMURRAY HENRIKS, LLP
                                           Printed name of law firm (*if applicable*)

                                           Yana G. Henriks
                                           Printed name of individual Movant or attorney for Movant


                                           /s/ Yana G. Henriks
                                           Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                          Page 5                          **F 4001-1.RFS.NONBK.MOTION**

## DECLARATION RE ACTION IN NONBANKRUPTCY FORUM

I, (*name of Declarant*) Yana G. Henriks                                                                        , declare as follows:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding (Nonbankruptcy Action) because:

    ☐ I am the Movant.

    ☒ I am Movant's attorney of record in the Nonbankruptcy Action.

    ☐ I am employed by Movant as (*title and capacity*):

    ☐ Other (*specify*):

2.  I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Nonbankruptcy Action. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

3.  In the Nonbankruptcy Action, Movant is:

    ☒ Plaintiff

    ☐ Defendant

    ☐ Other (*specify):*

4.  The Nonbankruptcy Action is pending as:

    a.  *Name of Nonbankruptcy Action*: Rodney A. Pimentel v. Joseph Barrett et al.
    b.  *Docket number*: BC701615
    c.  *Nonbankruptcy court or agency where Nonbankruptcy Action is pending*:
        Los Angeles County Superior Court

5.  **Procedural Status of Nonbankruptcy Action**:

    a.  The Claims are:
        See Attachments 1 and 2, Exhibit 1

    b.  True and correct copies of the documents filed in the Nonbankruptcy Action are attached as Exhibit  1    .

    c.  The Nonbankruptcy Action was filed on *(date)*  04/10/2018    .

    d.  Trial or hearing began/is scheduled to begin on *(date)*  10/25/2021    .

    e.  The trial or hearing is estimated to require  7      days (*specify*).

    f.  Other plaintiffs in the Nonbankruptcy Action are (*specify*):
        None

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                   Page 6                                   **F 4001-1.RFS.NONBK.MOTION**

g.   Other defendants in the Nonbankruptcy Action are (*specify*):

Joseph Barrett; The Barrett Law Firm, a Professional Corporation; Todd Wakefield (not appeared); and Does 1-10

6.   **Grounds for relief from stay:**

a.   ☐   Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

b.   ☐   Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

c.   ☐   Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.  The insurance carrier and policy number are (*specify*):

d.   ☒   The Nonbankruptcy Action can be tried more expeditiously in the nonbankruptcy forum.

(1)  ☒   It is currently set for trial on (*date*)  10/25/2021  .

(2)  ☐   It is in advanced stages of discovery and Movant believes that it will be set for trial by (*date*) _____.  The basis for this belief is (*specify*):

(3)  ☐   The Nonbankruptcy Action involves non-debtor parties and a single trial in the nonbankruptcy forum is the most efficient use of judicial resources.

e.   ☐   The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Nonbankruptcy Action.

(1)  ☐   Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

(2)  ☐   The timing of the filing of the bankruptcy petition indicates it was intended to delay or interfere with the Nonbankruptcy Action based upon the following facts (*specify*):

(3)  ☐   Multiple bankruptcy cases affecting the Property include:

(A) Case name:
Case number:                              Chapter:
Date filed:              Date discharged:              Date dismissed:
Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not  granted.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

(B) Case name:
    Case number:                  Chapter:
    Date filed:         Date discharged:         Date dismissed:
    Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not  granted.

(C) Case name:
    Case number:                  Chapter:
    Date filed:         Date discharged:         Date dismissed:
    Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not  granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Nonbankruptcy Action.

☐ See attached continuation page for additional facts establishing that this case was filed in bad faith.

f. ☒ See attached continuation page for other facts justifying relief from stay.

7. ☐ Actions taken in the Nonbankruptcy Action after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with the Nonbankruptcy Action enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/16/2021 | Yana G. Henriks | /s/ Yana G. Henriks |
|---|---|---|
| *Date* | *Printed name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 8             **F 4001-1.RFS.NONBK.MOTION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
811 Wilshire Blvd., Suite 1640, Los Angeles, California 90017

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (ACTION IN NONBANKRUPTCY FORUM)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
 06/17/2021   , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

 See attached.

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  06/17/2021   , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/17/2021 | Steven Ridgill | /s/ Steven Ridgill |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**To be served by Electronic Transmission and Notice of Electronic Filing (NEF):**

Wesley H. Avery (TR), wes@averytrustee.com (chapter 7 trustee)

United States Trustee, ustpregion16.la.ecf@usdoj.gov

Wesley H Avery (TR)
wes@averytrustee.com,
C117@ecfcbis.com;lucy@averytrustee.com;alexandria@averytrustee.com

Ryan W Beall on behalf of Trustee Wesley H Avery (TR)
rbeall@lwgfllp.com,
vrosales@wgllp.com;kadele@wgllp.com;lbracken@wgllp.com;rbeall@ecf.courtdrive.com

Derrick F Coleman on behalf of Creditor Fred A. Hickey
derrick@colemanfrost.com, melissa@colemanfrost.com;marissa@colemanfrost.com

Derrick F Coleman on behalf of Plaintiff Fred A. Hickey
derrick@colemanfrost.com, melissa@colemanfrost.com;marissa@colemanfrost.com

Beth Gaschen on behalf of Interested Party Courtesy NEF
bgaschen@wgllp.com,
kadele@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com;lbracken@wgllp.com;bgaschen@ecf.courtdrive.com

Beth Gaschen on behalf of Petitioning Creditor Wellgen Standard LLC
bgaschen@wgllp.com,
kadele@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com;lbracken@wgllp.com;bgaschen@ecf.courtdrive.com

Beth Gaschen on behalf of Trustee Wesley H Avery (TR)
bgaschen@wgllp.com,
kadele@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com;lbracken@wgllp.com;bgaschen@ecf.courtdrive.com

Jeffrey I Golden on behalf of Petitioning Creditor Wellgen Standard LLC
jgolden@wgllp.com, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com

Jeffrey I Golden on behalf of Plaintiff Wesley H. Avery
jgolden@wgllp.com, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com

Jeffrey I Golden on behalf of Trustee Wesley H Avery (TR)
jgolden@wgllp.com, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com

Karen Goodman on behalf of Creditor Mitchell Tyler Middleton
legalstaff1@goodman-law.com

James KT Hunter on behalf of Plaintiff Richard M. Pachulski, Chapter 11 Trustee of the
Bankruptcy Estate of Layfield & Barrett, APC
jhunter@pszjlaw.com

i

Roger G Jones on behalf of Petitioning Creditor Wellgen Standard LLC
rjones@bradley.com

Joel A Osman on behalf of Petitioning Creditor Daniel Tontini
osman@parkermillsllp.com, gonzalez@parkermillsllp.com

Malhar S Pagay on behalf of Petitioning Creditor Richard M Pachulski
mpagay@pszjlaw.com, bdassa@pszjlaw.com

Faye C Rasch on behalf of Petitioning Creditor Wellgen Standard LLC
frasch@wgllp.com, kadele@wgllp.com;lbracken@wgllp.com

Faye C Rasch on behalf of Trustee Wesley H Avery (TR)
frasch@wgllp.com, kadele@wgllp.com;lbracken@wgllp.com

Damion Robinson on behalf of Petitioning Creditor Joseph M. Barrett
dr@agzlaw.com, efiling@agzlaw.com

Jeffrey L Sumpter on behalf of Financial Advisor CBIZ Valuation Group, LLC
jsumpter@epiqtrustee.com, jsumpter@cbiz.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Dennis J Wickham on behalf of Creditor BofI Federal Bank
wickham@scmv.com, nazari@scmv.com


**To be served by Overnight Mail:**

Brian R. England, bre@agzlaw.com, Affeld Grivakes LLP, 2049 Century Park East, Suite 2460, Los Angeles, CA 90067 (counsel for defendants Joseph Barrett, The Barrett Law Firm in nonbankruptcy action)

Philip J. Layfield, c/o Maximum Legal Holdings LLC, 8 The Green, Suite 6426, Dover, Delaware 19901 (debtor)


**To be served by Electronic Mail:**

Brian R. England, bre@agzlaw.com, (counsel for defendants Joseph Barrett, The Barrett Law Firm in nonbankruptcy action)

Philip J. Layfield, phil@maximum.global (debtor)

# **ATTACHMENT 1**

# **TABLE OF CONTENTS**

I.    INTRODUCTION .......................................................................1

II.   SUMMARY OF FACTS .............................................................2

III.  GOOD CAUSE EXISTS TO GRANT RELIEF FROM STAY ...................4

IV.   GOOD CAUSE EXISTS TO HEAR THIS MATTER ON SHORTENED

NOTICE...................................................................................8

IV.   CONCLUSION .........................................................................9

MCMURRAY HENRIKS, LLP
811 WILSHIRE BOULEVARD, SUITE 1640
LOS ANGELES, CA 90017

ATTACHMENT 1 TO APPLICATION FOR RELIEF FROM STAY – MEMORANDUM OF POINTS AND
AUTHORITIES

# TABLE OF AUTHORITIES

## CASES

*Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013) ------------------------------ 8

*Christensen v. Tucson Estates, Inc.,* 912 F.2d 1162 (9th Cir. 1990) ----------------- 5

*In re Bryan Road, LLC,* 382 B.R. 844 (Bankr. S.D. Fla. 2008) --------------------- 5

*In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984) ----------------------------------- 5

*In re Kronemeyer*, 405 B.R. 915 (9th Cir. BAP 2009) ------------------------------ 6

*In re Landmark Fence Co., Inc.*, 2011 WL 6826253 (C.D. Cal. Dec. 9, 2011) ---- 7

*In re Lusk*, 589 B.R. 678 (Bankr. E.D. Cal. 2018) --------------------------------- 8

*In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551 (Bankr. C.D. Cal.2004) ---- 6

*In re United Imports, Inc.,* 203 B.R. 162 (Bankr. D. Neb. 1996) -------------------- 7

*Santa Clara County Fair Assoc., Inc. v. Sanders,* 180 B.R. 564 (9th Cir. BAP
1995) ------------------------------------------------------------------- 5

## STATUTES

11 U.S.C. § 362 ------------------------------------------------------------- 5, 9

11 U.S.C. § 523 ------------------------------------------------------------- 8

## OTHER AUTHORITIES

Black's Law Dictionary (11th ed. 2019) ----------------------------------------- 8

McMURRAY HENRIKS, LLP
811 WILSHIRE BOULEVARD, SUITE 1640
LOS ANGELES, CA 90017

ATTACHMENT 1 TO APPLICATION FOR RELIEF FROM STAY – MEMORANDUM OF POINTS AND
AUTHORITIES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Creditor Rodney Pimentel ("Pimentel") hereby requests for relief from stay on the grounds that good cause exists for granting such relief. The debtor Philip J. Layfield ("Layfield") and his law firm Layfield & Barrett APC ("L&B") previously represented Pimentel in a personal injury brought by Pimentel in the Los Angeles County Superior Court, stemming from severe physical injuries sustained in an automobile collision. Pimentel sued Layfield and other former attorneys of L&B for fraud, breach of fiduciary duty, and legal malpractice in the state court action entitled *Rodney Pimentel vs. Joseph Barrett, et al.*, Los Angeles County Superior Court case no. BC701615 ("State Court Action"). Pimentel's claims against Layfield are that Layfield, together with his law partner Joseph Barrett, stole settlement proceeds due to Pimentel in connection with a favorable jury verdict for $3.6 million in an underlying personal injury lawsuit, among other things.

Importantly, Layfield's liability to his former client for fraud and misappropriation and the amount of damages has already been determined and as *res judicata* based on a judgment of the State Bar Court finding Layfield committed violated statutory law and ethical rules by, among other things,

McMurray Henriks, LLP
811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017

ATTACHMENT 1 TO APPLICATION FOR RELIEF FROM STAY – MEMORANDUM OF POINTS AND AUTHORITIES

**"intentionally misappropriating client funds"** in Pimentel's case and a confirmatory judgment of the California Supreme Court ruling that **"Philip James Layfield must make restitution to … Rodney A. Pimentel in the amount of $742,442.15 plus 10 percent interest per year from June 20, 2017"** (State Bar Court Order at pp. 4-6, Supreme Court Judgment, Exhibits 2 and 3.)

Cause exists to grant this relief because Pimentel's claims can be decided more efficiently in the pending State Court Action, Layfield's debt to Pimentel is and/or will be nondischargeable in bankruptcy, Pimentel has requested a jury trial, and is asserting exclusively state law claims that cannot be brought under the jurisdiction of the bankruptcy court.

The resolution of Pimentel's state law claims in the State Court Acton would not interfere with the pending adversary proceeding – *Rodney Pimentel vs. Philip James Layfield*, C.D. Cal. Bankr. No. 2:19-ap-01069 – in which Pimentel is seeking a declaration of the non-dischargeability of Layfield's restitution debt, the avoidance of discharge of any fraudulently transferred funds, and constructive trust, if proper. (Adversary Complaint, Exhibit 4.)

Pimentel requests that the Court's order indicate that Pimentel's judgment against Layfield in the State Court Action will be collectible as a non-dischargeable debt against the debtor.

## II.    <u>SUMMARY OF FACTS</u>

MCMURRAY HENRIKS, LLP
811 WILSHIRE BOULEVARD, SUITE 1640
LOS ANGELES, CA 90017

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McMurray Henriks, LLP
811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017

Pimentel filed his complaint in the State Court Action on April 10, 2018. (Declaration of Yana G. Henriks, ¶ 2.) As against Layfield, the operative First Amended Complaint asserts several causes of action arising out of Layfield's intentional and fraudulent misappropriation of Pimentel's client funds, including breach of fiduciary duty, fraudulent business practices, conversion, breach of contract, negligence—legal malpractice, and false advertising. (Henriks Decl., ¶ 3.)

Pimentel's operative first amended complaint alleges that Layfield defrauded and breached his fiduciary and contractual duties to Pimentel when he, among other things, Layfield, together with his law partner Joseph Barrett, stole settlement proceeds due to Pimentel in connection with a favorable jury verdict for $3.6 million in an underlying personal injury lawsuit, among other things. (Henriks Decl., ¶ 3; First Amended Complaint at ¶¶ 1-41, Exhibit 1 to Henriks Decl.)

In the State Court Action, Pimentel has requested a trial by jury on all of his claims. (Henriks Decl., ¶ 5.) The case is set for trial on October 25, 2021. (*Ibid.*)

On May 18, 2018, the State Bar Court of California issued a Decision and Order finding Philip Layfield, among other things, intentionally misappropriated Pimentel's client funds, willfully failed to account for those funds, and willfully failed to pay to Pimentel anything of what was due. The State Bar Court

ATTACHMENT 1 TO APPLICATION FOR RELIEF FROM STAY – MEMORANDUM OF POINTS AND AUTHORITIES

recommended that Layfield be made to pay restitution to Pimentel. (State Bar

Court Decision and Order, pp. 4-6, Exhibit 2, *see* Request for Judicial Notice.)

On September 27, 2018, the Supreme Court of California, acting *en banc*,

issued an order confirming the State Bar Court's Decision and Order and requiring

Layfield to make restitution to Pimentel for the Debt. (Supreme Court Order,

Exhibit 3, *see* Request for Judicial Notice.)

## III.    GOOD CAUSE EXISTS TO GRANT RELIEF FROM STAY

The automatic bankruptcy stay may be lifted for cause. 11 U.S.C. §

362(d)(l). What constitutes "cause" is determined by the bankruptcy court on a

case-by-case basis. *Christensen v. Tucson Estates, Inc.,* 912 F.2d 1162, 1166 (9th

Cir. 1990). The bankruptcy court will consider the totality of the circumstances in

each case when making this determination. *In re Bryan Road, LLC,* 382 B.R. 844,

854 (Bankr. S.D. Fla. 2008).

With respect to a creditor's request for relief from the stay to enable a

proceeding against the debtor in another forum, "Congress has stated" the

following:

> [I]t will often be more appropriate to permit proceedings
> to continue in their place of origin when no great
> prejudice to the bankruptcy estate would result, in order
> to leave the parties to their chosen forum and to relieve
> the bankruptcy court from many duties that may be
> handled elsewhere.

*Santa Clara County Fair Assoc., Inc. v. Sanders,* 180 B.R. 564, 566 (9th Cir. BAP

McMURRAY HENRIKS, LLP
811 WILSHIRE BOULEVARD, SUITE 1640
LOS ANGELES, CA 90017

1995) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 50, reprinted in 1978

U.S.C.C.A.N. 5787, 5836).

As set forth in *In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984),

the factors a bankruptcy court may consider in determining whether there is

"cause" for a relief from the automatic stay include the following: (1) Whether the

relief will result in a partial or complete resolution of the issues; (2) The lack of

any connection with or interference with the bankruptcy case; (3) Whether the

foreign proceeding involves the debtor as a fiduciary; (4) Whether a specialized

tribunal has been established to hear the particular cause of action and whether

that tribunal has the expertise to hear such cases; (5) Whether the debtor's

insurance carrier has assumed full financial responsibility for defending the

litigation; (6) Whether the action essentially involves third parties, and the debtor

functions only as a bailee or conduit for the goods or proceeds in question; (7)

Whether the litigation in another forum would prejudice the interests of other

creditors, the creditors' committee and other interested parties; (8) Whether the

judgment claim arising from the foreign action is subject to equitable

subordination under Section 510(c); (9) Whether movant's success in the foreign

proceeding would result in a judicial lien avoidable by the debtor under Section

522(f); (10) The interests of judicial economy and the expeditious and economical

determination of litigation for the parties; (11) Whether the foreign proceedings

ATTACHMENT 1 TO APPLICATION FOR RELIEF FROM STAY – MEMORANDUM OF POINTS AND
AUTHORITIES

have progressed to the point where the parties are prepared for trial; and (12) The

impact of the stay on the parties and the "balance of hurt." *In re Plumberex*

*Specialty Prods., Inc.*, 311 B.R. 551, 559–660 (Bankr. C.D. Cal.2004); *see In re*

*Kronemeyer*, 405 B.R. 915 (9th Cir. BAP 2009). "[W]hile the Curtis factors are

widely used to determine the existence of 'cause', **not all of the factors are**

**relevant in every case, nor is a court required to give each factor equal**

**weight.**" *In re Landmark Fence Co., Inc.*, 2011 WL 6826253 at *4 (C.D. Cal.

Dec. 9, 2011) (emphasis added).

In addition, in determining whether cause exists under such circumstances,

"the bankruptcy court must balance the potential hardship that will be incurred by

the party seeking relief if the stay is not lifted against the potential prejudice to the

debtor and the bankruptcy estate." *In re United Imports, Inc.,* 203 B.R. 162, 166

(Bankr. D. Neb. 1996). The totality of the circumstances here favors permitting

relief from stay requested by Pimentel.

***First****,* Pimentel will be prejudiced since he has viable claims against

Layfield for breach of fiduciary duty, fraudulent business practices, and

conversion, which are each based on allegations that Layfield was *consciously*

engaged in fraudulent scheme whereby he misappropriated client funds to his own

personal purposes, intercepted and misappropriated Pimentel's settlement funds in

furtherance of that fraudulent scheme, lied to Pimentel that the reason the funds

had not been disbursed was due to lien negotiations, and ultimately failed to pay anything to Pimentel or provide an account. FAC ¶¶ 24-29, 37, 46-47, 65, 69-70, and pp. 11:26-13:12, Exhibit 1.

**_Second_**, the potential prejudice to Layfield should not be a factor since (i) Layfield is the cause of the harm to Pimentel; and (ii) Pimentel's claims for breach of fiduciary, fraudulent business practices, and conversion are non-dischargeable because, if proven, they will establish that Layfield committed "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). "Defalcation" is "[t]he fraudulent misappropriation of money held in trust; financial wrongdoing involving a breach of trust" (Black's Law Dictionary (11th ed. 2019)), but "also includes the failure by a fiduciary to account for money or property that has been entrusted to him" provided the debtor also has a "culpable state of mind" (*In re Lusk*, 589 B.R. 678, 685 (Bankr. E.D. Cal. 2018), citing *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013)).

That Layfield in fact committed "fraud or defalcation" with respect to Pimentel has already been established by the State Bar Court's Decision finding Layfield was guilty of, among other things:

- …"intentionally misappropriating [Pimentel's] client funds of $742,442.15";

- … "willfully … failing to provide an account regarding the $1.35 million

ATTACHMENT 1 TO APPLICATION FOR RELIEF FROM STAY – MEMORANDUM OF POINTS AND AUTHORITIES

McMURRAY HENRIKS, LLP
811 WILSHIRE BOULEVARD, SUITE 1640
LOS ANGELES, CA 90017

settlement funds upon the clients multiple demands"; and

- … "willfully … failing, upon the client's multiple requests, to promptly pay any portion of the $742,500…."

State Bar Court Decision, pp. 4-6 (emphasis added), Exhibit 2. This was confirmed by the California Supreme Court's *En Banc* Order requiring Layfield to make restitution to Pimentel "in the amount of $742,442.15 plus 10 percent interest per year from June 20, 2017." Supreme Court Order, Exhibit 3.

    ***Third***, claims may be decided more efficiently in the pending State Court Action than requiring the resolution in bankruptcy court.

    ***Fourth***, Pimentel has requested a jury trial (FAC, p. 26, Exhibit 1), which is unavailable in the bankruptcy court, and is asserting exclusively state law claims that cannot be brought under the jurisdiction of the bankruptcy court.

## IV. GOOD CAUSE EXISTS TO HEAR THIS MATTER ON SHORTENED NOTICE

    In the State Court Action, Joseph Barrett, a co-defendant of debtor Philip Layfield, has filed a motion seeking a stay of the State Court Action against all non-debtor defendants due to the automatic stay of Pimentel's action against Layfield and the Layfield & Barrett ("L&B") firm under 11 U.S.C. § 362. That motion is set to be heard June 25, 2021. Henriks Decl., ¶ 12, Exhibit 5.

    Due to the greater efficiency and propriety of litigating Pimentel's claims

McMurray Henriks, LLP
811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017

against Layfield in the state court action (as discussed above), the closeness of the trial date in the State Court Action (October 25, 2021), and the need to provide guidance to the State Court prior to its determination of non-debtor co-defendant Barrett's motion on June 25, 2021, a ruling by this Court on Pimentel's instant motion for relief from the automatic stay is needed prior to June 25, 2021. Henriks Decl., ¶ 14.

## IV.    **CONCLUSION**

For all the foregoing reasons, Pimentel respectfully requests that this Court grant him relief from the automatic stay to maintain his claims against Layfield in the State Court Action. Pimentel requests that the Court's order indicate that Pimentel's judgment against Layfield in the State Court Action will be collectible as a non-dischargeable debt against the debtor.

Respectfully submitted:

DATED: June 16, 2021                    **MCMURRAY HENRIKS, LLP**

By: _____
Yana G. Henriks, Esq.
Attorneys for Rodney A. Pimentel

ATTACHMENT 1 TO APPLICATION FOR RELIEF FROM STAY – MEMORANDUM OF POINTS AND AUTHORITIES

# ATTACHMENT 2

# DECLARATION OF YANA G. HENRIKS

I, Yana G. Henriks, do declare as follows:

1.      I am an attorney duly licensed to practice law before the courts of the State of California and before the United States District Court for the Central District of California. I am an attorney of McMurray Henriks, LLP, counsel of record for creditor Rodney A. Pimentel ("Pimentel") in this action. I have personal knowledge of all facts asserted herein and if called I could and would competently testify thereto. I give this declaration in support of Pimentel's motion for relief from the automatic stay.

2.      On April 10, 2018, Pimentel filed a complaint in the Los Angeles County Superior Court entitled *Rodney A. Pimentel vs. Joseph Barrett et al.,* Case No. BC682657 ("State Court Action"). The State Court Action asserts claims for conversion, breach of fiduciary duty, fraudulent business practices, breach of contract, and legal malpractice against the debtor Philip J. Layfield ("Layfield") and other former attorneys of Layfield & Barrett ("L&B"), arising out of their representation of Pimentel in a personal injury action entitled *Pimentel v. Avila*, Los Angeles County Superior Court, Case No. SC115454 ("underlying action").

3.      In the State Court Action, in the operative First Amended Complaint,

McMURRAY HENRIKS, LLP
811 WILSHIRE BOULEVARD, SUITE 1640
LOS ANGELES, CA 90017

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MᶜMURRAY HENRIKS, LLP
811 WILSHIRE BOULEVARD, SUITE 1640
LOS ANGELES, CA 90017

Pimentel has alleged that Layfield, together with his law partner Joseph Barrett, stole settlement proceeds due to Pimentel in connection with a favorable jury verdict for $3.6 million in an underlying personal injury lawsuit, among other things.

4.     **Exhibit 1** hereto is a true and correct copy of the operative First Amended Complaint filed in the State Court Action.

5.     In the State Court Action, Pimentel has requested a trial by jury on all of his claims. The parties have engaged in discovery. Plaintiff has taken multiple depositions. The case is set for trial on October 25, 2021.

6.     On May 18, 2018, the State Bar Court of California issued a Decision and Order finding Philip Layfield, among other things, intentionally misappropriated Pimentel's client funds, willfully failed to account for those funds, and willfully failed to pay to Pimentel anything of what was due. The State Bar Court recommended that Layfield be made to pay restitution to Pimentel.

7.     **Exhibit 2** hereto is a true and correct copy of the State Bar Court Decision and Order.

8.     On September 27, 2018, the Supreme Court of California, acting *en banc*, issued an order confirming the State Bar Court's Decision and Order and requiring Layfield to make restitution to Pimentel for the Debt.

9.     **Exhibit 3** hereto is a true and correct copy of the Supreme Court

ATTACHMENT 2 TO APPLICATION FOR RELIEF FROM STAY – DECLARATION OF YANA G. HENRIKS

Order.

10.    On March 15, 2019, Pimentel filed an adversary complaint against dischargeability in relation to debtor Layfield, *Rodney Pimentel vs. Philip James Layfield*, C.D. Ca. Bankr. No. 2:19-ap-01069 ("adversary proceeding").

11.    **Exhibit 4** hereto is a true and correct copy of the operative First Amended Complaint in the adversary proceeding.

## <u>Need for Shortened Notice</u>

12.    In the State Court Action, Joseph Barrett, a co-defendant of debtor Philip Layfield, has filed a motion seeking a stay of the State Court Action against all non-debtor defendants due to the automatic stay of Pimentel's action against Layfield and the Layfield & Barrett ("L&B") firm under 11 U.S.C. § 362. That motion is set to be heard June 25, 2021.

13.    **Exhibit 5** hereto is a true and correct copy of Barrett's motion for a stay of the State Court Action.

14.    Due to the greater efficiency and propriety of litigating Pimentel's claims against Layfield in the state court action (as discussed above), the closeness of the trial date in the State Court Action (October 25, 2021), and the need to provide guidance to the State Court prior to its determination of non-debtor co-defendant Barrett's motion on June 25, 2021, a ruling by this Court on Pimentel's instant motion for relief from the automatic stay is needed prior to June

McMurray Henriks, LLP
811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017

ATTACHMENT 2 TO APPLICATION FOR RELIEF FROM STAY – DECLARATION OF YANA G. HENRIKS

25, 2021.

15.     On June 16, 2021, this Court provisionally granted an oral request by Pimentel to shorten time for notice of the instant motion. Doc. 316.

16.     Counsel for Pimentel completed and attempted to file these moving papers on June 16, 2021, through the Central District of California Bankruptcy CM/ECF internet portal. Technical difficulties prevented counsel from accessing the portal and, due to the hour, the CM/ECF help desk was unstaffed and unavailable to render assistance until the following day.

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct. Executed this date of June 17, 2021, at Los Angeles, California.

_____
Yana G. Henriks
Declarant

McMurray Henriks, LLP
811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017

4

**EXHIBIT 1**

<table>
<tr><td>1</td><td>Yana G. Henriks, Esq. (SBN 250638)</td></tr>
</table>

1   Yana G. Henriks, Esq. (SBN 250638)
      *yhenriks@law-mh.com*
2   Randy H. McMurray, Esq. (SBN 126888)
      *rmcmurray@law-mh.com*
3   **McMURRAY HENRIKS, LLP**
4   5670 Wilshire Blvd., Suite 1450
    Los Angeles, California 90036
5   Telephone: (323) 931-6200
    Facsimile: (323) 931-9521
6   Attorneys for Plaintiff, RODNEY PIMENTEL

CONFORMED COPY
ORIGINAL FILED BY
Superior Court of California
County of Los Angeles

JUL 2 0 2018

Sherri R. Carter, Executive Officer/Clerk
By Raul Sanchez, Deputy

7
8   **SUPERIOR COURT OF THE STATE OF CALIFORNIA
    FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

9   RODNEY PIMENTEL, an individual,

10          Plaintiff,

11      vs.

12  JOSEPH BARRETT, an individual (a/k/a
13  "Joseph M. Barrett" or "Joseph Martin
    Barrett"); THE BARRETT LAW FIRM, A
14  PROFESSIONAL CORPORATION, a
    California professional corporation; PHILIP
15  LAYFIELD, f/k/a "Philip Pesin," an
16  individual; TODD WAKEFIELD, an
    individual; and DOES 1-10, inclusive,
17
18          Defendants.
19

Case No.: **BC701615**
*[Assigned to the Honorable Steven J. Kleifield, Dept. 57]*

**FIRST AMENDED COMPLAINT FOR DAMAGES:**
   **(1) BREACH OF FIDUCIARY DUTY;**
   **(2) CONSTRUCTIVE FRAUD;**
   **(3) UNFAIR, UNLAWFUL &
       FRAUDULENT BUSINESS
       PRACTICES, Cal. Bus. & Prof.
       Code § 17200;**
   **(4) CONVERSION;**
   **(5) BREACH OF CONTRACT;**
   **(6) NEGLIGENCE; and**
   **(7) FALSE ADVERTISING, Cal. Bus.
       & Prof. Code § 17500.**

**DEMAND FOR JURY TRIAL**

*(left margin, vertical text:)* McMURRAY HENRIKS, LLP  5670 WILSHIRE BOULEVARD, SUITE 1450  LOS ANGELES, CA 90036

20
21
22              **NATURE OF THE CASE**

23      1.      This case arises from the injuries that plaintiff Rodney Pimentel (herein
24  "Plaintiff" or "Pimentel") suffered in having been defrauded and deprived of his recovery in
    connection with the underlying personal injury lawsuit *Rodney Alexander Pimentel vs. Joaquin
25  Garcia Avila et al.*, Los Angeles County Superior Court case number SC115454 (herein, the
26  "*Avila* case" or "personal injury case" or "underlying case").

27      2.      Unbeknownst to Pimentel, the law firm he hired to represent him at trial in the
28  *Avila* case, Layfield & Barrett, APC (herein "L&B"), had become insolvent and L&B's upper
    management, including shareholder and director Philip Layfield, partner and shareholder Joseph

1

Barrett, and chief counsel, Tod Wakefield, conspired to perpetrate and were perpetrating a

scheme of financial mismanagement and misappropriation to conceal the insolvency and for

personal gain. As part of this scheme, the conspirators misappropriated client property,

improperly funded firm operations and cases by diverting client case proceeds and withholding

payment to clients.

3.       The conspirators also planned and did funnel client property into a series of

domestic and foreign limited liability companies and limited liability partnerships and other law

firms, where they would be obscured from creditors and/or rightful owners. The end game was

to allow a defunct L&B to be subjected to bankruptcy proceedings, to allow Layfield, after

fleeing the country, to take full responsibility for alleged "accounting errors," and to conceal the

involvement of Barrett. In return, Barrett agreed to pay Layfield $8 million.

4.       Meanwhile, at trial in the *Avila* case, Pimentel won a jury verdict of

approximately $3.6 million. However, on information and belief, Barrett and Layfield, having

conspired together, without consulting or informing Pimentel, arranged a mediation with State

Farm Mutual Automobile Insurance Company, Inc. ("State Farm"), insurer for the *Avila*

defendants, wherein they agreed to reduce Pimentel's verdict to $1.35 million in exchange for

making the payment within *48 hours* of receipt of the settlement agreement.

5.       Barrett originally told Pimentel that jury's award was a strong and defendable

verdict. A true and correct copy of Barrett's 12/16/16 email to Pimentel regarding the jury

verdict is attached as **Exhibit 1**.

6.       However, Barrett now presented the agreement to reduce the verdict by about

half as a *fait accompli* which Pimentel must sign in order to avoid the likely prospect of losing

the entire verdict. A shocked Pimentel reluctantly signed in reliance on Barrett's statements,

believing he had no other reasonable choice.

7.       Pimentel has not received any proceeds from the case from the Defendants.

8.       Pimentel now sues to recover for the injuries he sustained (1) when his jury

verdict of $3.6 million was fraudulently and/or ineptly negotiated down to $1.35 million and

Pimentel was wrongfully induced to sign the settlement agreement; and (2) when Pimentel's

attorney either fraudulently or ineptly failed to remit any case proceeds to him. Pimentel also

McMURRAY HENRIKS, LLP
5670 WILSHIRE BOULEVARD, SUITE 1450
LOS ANGELES, CA 90036

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1   sues to void any fraudulent transfers of funds belonging to Pimentel away from the possession

2   and control of Defendants. Pimentel seeks related equitable relief also.

3                                   **THE PARTIES**

4        9.      Plaintiff Rodney Pimentel (herein "Plaintiff") brings this action on behalf of

5   himself. Plaintiff was, at all time material hereto, an individual residing in San Diego County,

6   California.

7        10.     Defendant, Joseph Barrett (a/k/a "Joseph M. Barrett" or "Joseph Martin Barrett")

8   (herein "Barrett") is an individual and resident of California. At all times relevant herein,

9   Barrett presented himself to the public as an equity partner and director of the law firm Layfield

10  & Barrett, APC (herein "L&B"). Several press releases were made to the public bolstering

11  Layfield and Barrett's partnership.

12       11.     Defendant The Barrett Law Firm, A Professional Corporation (herein "Barrett-

13  PC") is a California professional corporation and law firm operating in the County of Los

14  Angeles, State of California. Defendant Barrett is the director and, on information and belief,

15  sole shareholder of The Barrett Law Firm, A Professional Corporation.

16       12.     Defendant Philip Layfield (f/k/a "Philip Pesin") is, upon information and belief,

17  is an inmate at Metropolitan Correctional Center in Los Angeles, California.

18       13.     Defendant Todd Wakefield ("Wakefield") is an individual and resident of Utah.

19  Wakefield formerly was the general counsel for L&B, and purported sole partner of Maximum

20  Legal California.

21       14.     Plaintiff is informed and believes, and thereon alleges, that there exists, and at all

22  times herein there existed, a unity of interest and ownership between Barrett and Barrett-PC that

23  any individuality and separateness between them has ceased, such that they are each the alter

24  ego of the other.

25       15.     Plaintiffs are informed and believe, and thereon allege that, at all times herein

26  mentioned, each defendant was the alter ego, agent, principal, employee, partner, joint venture,

27  co-conspirator, and/or representative of each other defendant, and in doing the acts herein

28  alleged, were acting within the course and scope of such relationship, and/or with actual and/or

    apparent authority to do so. "[A] professional corporation cannot be used to shield a

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

professional from malfeasance through the corporate structure. … [A] professional person cannot avoid personal liability for his or her *own* malpractice or tortious conduct through incorporation … such a tortfeasor is always liable for his or her own acts, even if performed on behalf of another." (*T & R Foods, Inc. v. Rose* (1996) 47 Cal.App.4th Supp. 1, 9.)  An attorney may not take advantage of his own wrong by hiding behind a corporate shield. (*See* Civ. Code, § 3517.)

16.    The true names and capacities, whether individual, corporate, or otherwise, of the defendants named herein as DOES 1 through 10, inclusive, are presently unknown to Plaintiff. Plaintiff therefore sues such DOE defendants by fictitious names, but on the discovery of the true names and capacities, Plaintiff may amend his Complaint accordingly. Plaintiff is informed and believes, and based thereon alleges, that the fictitiously named defendants, and each of them, are in some manner liable and responsible for the conduct alleged herein, and are subject to the jurisdiction of this Court for the relief prayed for herein.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction over this suit under California Code of Civil Procedure section 410.10. The amount in controversy exceeds the Superior Court's minimum jurisdictional limit of $25,000.

18.    Venue in this Court is proper under California Code of Civil Procedure section 395 et seq. because Defendants' residences and/or principal places of business are/is in the County of Los Angeles; the obligations alleged below were entered into, and were to be performed, in the County of Los Angeles; and/or the tortious conduct of Defendants and the injuries to Plaintiff took place primarily in the County of Los Angeles.

## GENERAL ALLEGATIONS

**A.    BACKGROUND: L&B INSOLVENCY AND FINANCIAL MISMANAGEMENT.**

19.    During Plaintiff's representation, L&B claimed to be a personal injury law firm with approximately 35 lawyers and 150 employees. Defendant Barrett started L&B with Philip Layfield, formerly of the law firm Layfield & Wallace. Defendant Barrett was an equity partner and a director of L&B from approximately autumn 2015 until at least April of 2017.

20.    At one point, L&B had offices in: Los Angeles, Irvine, San Diego, and San

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

4

Francisco, California; Park City, Utah; Scottsdale, Arizona; and India. Plaintiff is informed and believes, and on that basis alleges, that L&B claimed to be one of the biggest plaintiff's firms in the country, and claimed that many of its attorneys "earn[ed] in excess of $1 million per year." The firm extensively advertised Barrett presidency/former-presidency of the Consumer Attorneys Association of Los Angeles to attract referrals.

21.     Nevertheless, no later than December 2016 or January 2017 the firm was in such dire financial crisis that management announced to the entire firm that it could not make payroll. The firm was by that time insolvent.

22.     For the sake of personal gain and to conceal their insolvency, both Layfield and Barrett routinely and deliberately engaged in a pattern of fraudulent and unethical, and Ponzi scheme-like practices that included but were not limited to the following:

a.     The L&B partners routinely used settlement proceeds belonging to the firm's clients to pay their overhead expenses by not disclosing to clients that their settlement proceeds were received and for the purpose of delaying the disbursement. Often the clients were lied to about the delayed disbursement of their proceeds, claiming that the delay was due to lien negotiations.

b.     For example, Layfield and Barrett had the general practice of improperly withholding and/or delaying the payment of the client's share of case proceeds and fees agreed to be remitted to co-counsel for the sake of financing their ongoing operations and concealing the financial insolvency and mismanagement of the firm. For example, in August 2016, Layfield and Barrett deposited into the firm's account(s) a $3.9 million settlement check in connection with the personal injury lawsuit of former L&B client Josephine Nguyen. L&B deposited the check without obtaining Nguyen's signature, even though the check was made jointly payable to Nguyen and the trust account. Despite Nguyen's numerous inquiries into the status of her disbursement, L&B continued to assure Nguyen that her file "close out" was imminent. Layfield and Barrett eventually issued Nguyen a $25,000 "advance" on her settlement, but no other funds were received. The general contours of Nguyen's ordeal match Pimentel's in several important aspects. A true and correct copy of a pertinent portion of Ms. Nguyen's complaint in *Josephine Nguyen v. Philip Layfield et al.*, Orange County Superior

MCMURRAY HENRIKS, LLP
5670 WILSHIRE BOULEVARD, SUITE 1450
LOS ANGELES, CA 90036

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

McMURRAY HENRIKS, LLP
5670 WILSHIRE BOULEVARD, SUITE 1450
LOS ANGELES, CA 90036

1    Court case no. 30-2017-00930393, is attached as **Exhibit 2**.

2              c.       The United States of America is currently prosecuting Layfield for mail

3    fraud and money laundering with regard to the Nguyen case. Layfield was arrested and is

4    currently in federal custody in connection with the criminal prosecution. A true and correct copy

5    of a pertinent portion of the criminal complaint and affidavit of probable cause in *United States*

6    *of America v. Philip James Layfield*, U.S. District Court for the Central District of California

7    case no. 2:18-cr-00124, is attached as **Exhibit 3**.

8              d.       Joseph Barrett became aware of their insolvency, financial

9    mismanagement, and pattern of fraudulent and unethical practices as early as April 20, 2016, if

10   not earlier, when, according to the complaint of former client Jeffery Young, Barrett sent Mr.

11   Young an email misrepresenting the amount of litigation costs advanced by L&B on Mr.

12   Young's case. A true and correct copy of a pertinent portion of Mr. Young's complaint in

13   *Jeffrey Young v. Layfield & Barrett, APC et al.*, Los Angeles County Superior Court case no.

14   BC654028, is attached as **Exhibit 4**.

15             e.       The L&B finance team, was engaged in a pattern and practice of

16   spreading out the amounts of firm losses and/or general overhead as "miscellaneous" charges on

17   open individual case accounts—but would waive such "miscellaneous" charges if clients

18   complained.

19             f.       L&B's upper management would "fake" costs or "mark up" costs to the

20   case cost bill, so that they could obtain additional attorneys' fees or "profits" that were not

21   disclosed to their clients or co-counsel with whom they were to split fees.

22             g.       The firm charged, on at least one occasion, an illegal 40% attorney fee on

23   a Federal Tort Claim Act case, where federal law limits fees to a maximum of 25% and imposes

24   criminal penalties, including up to one year in prison, for violations of the statute. See 28 U.S.C.

25   § 2677.

26       23.     In an email dated January 20, 2017 from former employee Steven Weinberger to

27   general counsel Todd D. Wakefield – which was also received by Rita Mims, long time legal

28   assistant and confidant to Joseph Barrett and L&B's director of operations at that time – Mr.

Weinberger stated the following:

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

[A]s you know (and Rita and Kat before you), I've waited long enough for this money, after having been wrongfully delayed for up to 7 months on some of these funds. There is no excuse for the non-payment. While Phil mentions a "temporary case crunch" as something the firm is currently experiencing, we all know that the case crunch is not temporary and not current. It has been going on since at least last July – need I remind you of the fact that the firm has not paid some of the Shields Plaintiffs' remaining $60,000 which was deposited in the trust account last June. You, as the firm's General Counsel, know this is not an isolated incident. You, as the firm's General Counsel, have a fiduciary duty and obligation to ensure our clients receive their funds as quickly as possible – why then are our clients waiting for, in some cases up to 7 or more months, to receive their money; furthermore, why did our experts go for months and months without being paid; why aren't referral fees (even to the firm's own employees) paid; why are inspections at Rest Your Case (and our Arizona Storage Specialists) cancelled due to non-payment of evidence storage fees – I could go on but these examples typify what has been going on since early last summer. The firm has no money. … The firm is insolvent. That became clear to me about a month ago when Phil told me he had to deposit $250k of his own money to make payroll, as well as his recent email where he said that the firm is upside down by millions of dollars. I've litigated financial mismanagement cases before – I know what insolvency is and means. …

A true and correct copy of the 1/20/2017 Weinberger email is attached as **Exhibit 5**.

**B.**    **BARRETT AND LAYFIELD'S SCHEME AND CONSPIRACY TO DEFRAUD CREDITORS AND CLIENTS.**

24.    On information and belief, as early as April 20, 2016 in not earlier, Barrett became aware of and began to participate in L&B's financial mismanagement and fraudulent practices described in the previous section. Barrett also agreed with Layfield and with Wakefield to perpetrate a scheme to further defraud the clients and creditors of L&B. The scheme was as follows: A separate entity, "Maximum Legal, LLP," would be formed. L&B would transfer its non-case assets and 75% of its attorney's fees in pending cases to the other entity. Barrett and Wakefield would each become members in the entity. L&B would be allowed to become completely defunct and go through bankruptcy. L&B's creditors would obtain limited recovery, if any, through the bankruptcy process. The firm's bankruptcy would be blamed by Layfield on "accounting errors," for which Layfield agreed to take all responsibility, including the likely loss of his license to practice law. Meanwhile, Barrett oversee the resolution of all remaining cases, which Barrett and Layfield estimated to be worth around $20 million. Finally, Barrett agreed to pay $8 million to Layfield.

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

7

25.    In furtherance of this scheme, L&B and Maximum Legal Delaware executed a Master Association Agreement dated April 15, 2017 (the "Master Assn. Agreement"). Under the Master Assn. Agreement, Maximum Legal Delaware or one of its affiliates would associate into L&B's 147 pre-litigation and pending cases and receive 75% of any fees in such cases.

26.    The Barrett Law Firm, APC, which was owned by Barrett, and Wakefield executed various agreements dated June 1, 2017, under which each purchased 25% of the membership units of Maximum Legal Delaware from Maximum Legal Holdings, LLC, a Delaware limited liability company, and executed promissory notes in favor of Maximum Legal Holdings.

27.    On information and belief, Maximum Legal is now in chapter 11 bankruptcy as part of the agreed upon scheme.

28.    Defendant Joseph Barrett has a long history, practice, and pattern of predicate behavior. During his tenure as partner in previous law partnerships, Barrett would "resign" his partnership during dissolution proceedings to avoid vicarious liability and/or would claim that he was not a "real" partner. Barrett would use contingency cases fully funded by previous partnerships as a tool for his own capitalization and would bartered them to various law firms in order to obtain the highest compensation possible. Specifically, in a case involving the dissolution of the law firm The Cochran Firm Los Angeles, Barrett successfully executed the scheme of taking fully-funded cases – some of which were ready for settlement – and settling them without paying back even the basic litigation costs in violation of the partnership agreement as well as the Court's order, while the partnership languished in receivership.

29.    On information and belief, Barrett executed a similar scheme here, taking advantage of L&B's demise and knowing that many of those cases were funded by settlement proceeds stolen from clients. One of the firms Barrett bartered cases to was Affeld Grivakes. A true and correct copy of a list prepared by L&B of former L&B cases that Barrett took control of pursuant to the scheme is attached as **Exhibit 6**.

/// ///

/// ///

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

8

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

**C.**   **BARRETT'S REPRESENTATION OF PIMENTEL IN THE *AVILA* CASE, REDUCTION OF PIMENTEL'S RECOVERY, AND NON-PAYMENT OF PIMENTEL'S SHARE OF PROCEEDS.**

30.    In September of 2014, Plaintiff retained the services of attorney Daniel Setareh ("Setareh") of Setareh Law, APLC, in relation to an automobile accident in which Plaintiff was a victim. Setareh referred Plaintiff's case to Layfield in September 2014 for further handling of Plaintiff's case.

31.    L&B litigated Plaintiff's case via L&B partner and director Joseph Barrett. Plaintiff worked almost exclusively with Barrett on the case. Plaintiff exclusively trusted and relied on the advice of Barrett with regard to the case.

32.    On December 9, 2016, a jury verdict was obtained in Plaintiff's favor in the amount of approximately $3.6 million. The defendant(s) in the underlying case were insured by State Farm Mutual Automobile Insurance Company, Inc.

33.    On information and belief, Barrett and Layfield had intended to improperly appropriate the *Avila* proceeds, including Pimentel's share of those proceeds, to finance L&B's ongoing operations and conceal L&B's insolvency in keeping with the practices described in the preceding subsection.

34.    Consequently, Barrett, without obtaining the consent of or informing Pimentel or Setareh, arranged a mediation with the *Avila* defendants. Barrett and Layfield met with counsel for the *Avila* defendants in February 2017 and agreed to reduce Pimentel's recovery in the case from approximately $3.6 million down to $1.35 million – approximately *one third* (1/3) the original amount. In exchange, the *Avila* defendants would pay the reduced amount almost immediately.

35.    After the mediation, on or around February 22, 2017, Barrett presented the terms of the provisional agreement to Pimentel. Pimentel was surprised that the mediation had taken place and was dismayed at the proposed severe reduction in the total recovery of the case. Barrett told Pimentel that if Pimentel did not sign the settlement agreement Pimentel would likely lose all recovery in the case. In reliance on Barrett's statements, Pimentel reluctantly "e-signed" the agreement which was emailed to Pimentel via the Internet, in electronic format.

McMURRAY HENRIKS, LLP
5670 WILSHIRE BOULEVARD, SUITE 1450
LOS ANGELES, CA 90036

36.    On information and belief, at the time that Barrett pressured Pimentel to sign the settlement agreement, Individual Defendants had formed their plan to defraud clients.

37.    On or about February 24, 2017, two days after Pimentel signed the settlement agreement, State Farm issued a settlement check in the amount of $1.35 million to "Rodney A. Pimentel & Layfield Barrett Trial Attorneys, his attorney." Barrett did not advise Pimentel that the check had been received. Nor did Pimentel sign or endorse the check. Upon later discovery, Pimentel's name appears to have been forged on the check. Upon information and belief, it was Barrett who forged Pimentel's signature and deposited the settlement check into L&B's client trust account. On information and belief true and correct copies of the front and back of the settlement check are attached as **Exhibit 7**.

38.    Subsequently, Barrett falsely represented to Pimentel that a check would be issued approximately 30 days after the signing of the settlement agreement and that Pimentel would not receive disbursement until after liens were subsequently negotiated. Barrett made these representations knowing that the check had already been received by Layfield and misappropriated. Barrett also knew that Pimentel had very few liens in the case and that they would not exceed 5% of the settlement amount even without negotiation.

39.    Subsequently, Pimentel was "led along" for several months by several false representations from Barrett, Wakefield, and Layfield that the disbursement was forthcoming and was being delayed due to alleged extended lien negotiations, as seen in the following timeline of communications:

- **April 25, 2017** – After sixty (60) days have passed and no disbursement has been received, Pimentel calls both Barrett and L&B's general counsel, Tod Wakefield, and leaves messages asking what the status of the disbursement is.

- **April 26, 2017** – Barrett returns Pimentel's call and tells Pimentel that Barrett will contact Wakefield and will make sure that Pimentel receives his proceeds. During the conversation, Barrett tells Pimentel, "It's my job to make sure that you get your money. It's your money!"

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

- **May 5, 2017** – Wakefield sends Pimentel an email stating that disbursement has been delayed because lien negotiations are still ongoing.

- **May 18, 2017** – Pimentel emails Wakefield and asks for an update on the status of the disbursement. No response is received.

- **May 24, 2017** – More than ninety (90) days from the date of settlement, Pimentel emails Wakefield and Barrett and asks whether there is someone else whom Pimentel should be contacting for information on the status of the disbursement.

- **June 1, 2017** – Wakefield responds by email stating that the continued delay was due to ongoing lien negotiations and that the lien negotiating work had been outsourced to a company in India. Wakefield's email ius copied to Barrett and to Layfield. Pimentel notices that the domain name for Barrett's email address was now "maximum-legal.com."

- **June 12, 2017** – Pimentel sends a follow up email to Wakefield asking about status of the lien negotiations.

- **June 13, 2017** – Wakefield responds that the lien negotiation has been taken over locally and that they expect to have his case accounting finalized by the end of the week so that Layfield can disburse the settlement proceeds. Subsequently, Pimentel learns that Barrett and Wakefield have "resigned" from L&B and are now working for "Maximum Legal LLP," an entity formed by Philip Layfield.

- **June 16, 2017** – Pimentel sends an email to Layfield asking about the status of the disbursement and advising Layfield that Pimentel has been contacted by an expert witness on the case who had not been paid.

- **June 20, 2017** – Layfield responds by email stating that lien negotiations are not complete and are "a little behind due to some turnover," but that Pimentel will receive the full disbursement "as soon as we resolve the liens." Layfield advises that, "[w]e have one lien in another case that's

11

been in resolution for over 8 months. Some resolve in 3 weeks." Layfield knew that these statements were false: that he was not negotiating with any lienholders, and that he had no intention to pay Plaintiff, or any lienholders, because they funds had already been misappropriated long ago.

- **June 23, 2017** – Pimentel sends another email to Layfield advising that he would like Setareh to take over the remaining lien negotiations on the *Avila* case.

- **June 27, 2017** – No response having been received, Pimentel sends an email to Barrett, Layfield, and Wakefield stating that no response has been received from any of them, advising that he is still receiving calls from an unpaid expert witness, and **requesting proof within twenty-four (24) hours of the email that the *Avila* settlement proceeds remain in trust, otherwise Pimentel would file formal complaints with the California State Bar against Barrett, Wakefield, and Layfield**.

- **June 27, 2017** – Barrett responds by email apologizing for the delay, urging that "[t]he current delay to my knowledge is explainable," and insisting that Layfield is "a man of high integrity" and implying that there is nothing untoward in the delay and that Pimentel will be paid.

- **June 28, 2017** – Layfield sends Pimentel an email stating only that, "I am working with our director of operations [Rita Mims] and our liens team on your close out. I am hoping to get you some updates shortly."

- **June 29, 2017** – Barrett sends an email stating that, among other things, that, "Layfield & Barrett isn't doing business beyond Phil and his staff winding it up. I resigned. I've tried to help you and Rodney. I had nothing to do with, or control over finances." Barrett concludes his email by stating, "I never saw this coming. I still hope Phil kept the money square. I don't know. I've asked. I think it got away from him and that he's a good man with many problems from the business getting disorganized

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

12

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

somehow. I really don't know. **But I hope and believe and expect your situation to be resolved soon.**" True and correct copies of Pimentel's 6/27/17 email to Barrett, Layfield, and Wakefield and their subsequent responses are attached as **Exhibit 8**.

- **July 3, 2017** – Pimentel sends Layfield an email, copying Barrett, asking for an update on Layfield's purported efforts with L&B's director of operations to close out Pimentel's case. Pimentel asks again for confirmation that the settlement funds remain in the client trust account.

- **July 4, 2017** – Layfield sends Pimentel an email stating that the lien issue continues to prevent L&B from finalizing Pimentel's case, offering to issue a check to Pimentel from "$25k right away" and to send "a much more substantial distribution within 2 weeks."

- **July 4, 2017** – Pimentel responds by email stating that he does not want an advance, insisting on payment of the full amount owed, and stating that he cannot wait any longer. True and correct copies of the 7/3/17 and 7/4/17 emails between Pimentel, Layfield, and Barrett are attached as **Exhibit 9**.

40.    Pimentel never received any disbursement of his share of the settlement proceeds.

41.    On information and belief, and as described the previous section, throughout these events Barrett knew or should have known that the entire amount of the *Avila* settlement proceeds had been or were intended to be transferred to accounts held by Maximum Legal, LLP and or other entities and that there was no intention on the part of Barrett, Layfield, or Wakefield to disburse Pimentel's share of the proceeds in a reasonably timely manner.

### **FIRST CAUSE OF ACTION**

[BREACH OF FIDUCIARY DUTY]

(Against Barrett, Barrett-PC, Layfield, Wakefield, and Does 1-10)

42.    Plaintiff incorporates paragraphs 1 through 41 as though set forth in full in this

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

---

13

1  cause of action.

2      43.    Attorneys in California owe a fiduciary duty to their clients. *See T&R Foods Inc.*

3  *v. Rose* (Cal. Super. 1996) 47 Cal.App.4th Supp. 1, 56 Cal.Rptr.2d 41.

4      44.    An attorney-client relationship existed between Plaintiff and defendants Barrett,

5  Barrett-PC, Layfield, and Wakefield ("Individual Defendants") as attorneys and/or

6  representatives of L&B, from around September of 2014 until present. By virtue of Plaintiff

7  having placed his confidence in the fidelity and integrity of Individual Defendants, and having

8  entrusted and contracted with these attorneys, through L&B, to represent his interests in his

9  litigation for personal injuries sustained when he was hit by a truck, a confidential and fiduciary

10  relationship existed between Plaintiff and Individual Defendants during that time, such that

11  Barrett and Barrett-PC owed Pimentel fiduciary duties and obligations, including the duties of

12  competence, of loyalty, and of disclosure of material facts.

13      45.    Plaintiff is informed and believes, and on that basis alleges, that Barrett and

14  Barrett-PC breached their fiduciary duties to him under the California Rules of Professional

15  Conduct Rule 4-100 ("Preserving Identity of Funds and Property of a Client"), and other Rules

16  of Professional Conduct, as alleged herein, by, among other things:

17      a.    As a partner and director of L&B, Barrett knew or should have known

18  that L&B was insolvent, was engaged in financial mismanagement and fraudulent and unethical

19  practices as to client accounting and case proceeds. Barrett knew or should have known that

20  such information would have been material to Pimentel's decision to retain and to continue the

21  employment of L&B on his case and to settle the case. Nevertheless, Barrett failed to disclose

22  this information to Pimentel.

23      b.    Barrett knew or should have known that L&B's partners, shareholders,

24  and/or upper management intended to appropriate Pimentel's case proceeds and withhold them

25  from Pimentel for the purpose of concealing the insolvency of L&B. Barrett knew or should

26  have known that such information would have been material to Pimentel's decision to retain and

27  to continue the employment of L&B on his case and to settle the case. Nevertheless, Barrett

28  repeatedly failed to disclose this information to Pimentel and, in fact, represented otherwise in

his several communications with Pimentel.

14

1    c.    Barrett knew or should have known that the settlement check in the *Avila*

2   case had been issued by State Farm on February 22, 2017 and, on information and belief, had

3   been received and deposited into L&B's trust or other bank account(s) soon thereafter. Barrett

4   knew or should have known that such information would have been material to Pimentel's

5   decision to rely on Barrett's and the other Defendants' representations that Pimentel's case

6   disbursement was forthcoming Nevertheless, Barrett repeatedly failed to disclose this

7   information in his several subsequent communications with Pimentel.

8    46.    Plaintiff is informed and believes, and on that basis alleges, that Individual

9   Defendants, and each of them, breached their fiduciary duties to him under the California Rules

10  of Professional Conduct Rule 4-100 ("Preserving Identity of Funds and Property of a Client"),

11  and other Rules of Professional Conduct, as alleged herein, by, among other things:

12    a.    Counseling, advising, and/or pressuring Plaintiff to agree to the

13  settlement agreement;

14    b.    Failing to deposit all funds received or held for Plaintiff's benefit,

15  including advances for costs and expenses, in an identifiable bank account labeled "Trust

16  Account" or "Client's Funds Account," or words of similar import, maintained in the State of

17  California;

18    c.    Repeatedly failing to promptly notify Plaintiff of the receipt of trust funds

19  held for his benefit when Individual Defendants knew or should have known that funds had

20  been received;

21    d.    Failing to maintain complete records of all funds of Plaintiff's coming

22  into the possession of Individual Defendants, and failing to render appropriate accounts to him

23  regarding those funds; and/or

24    e.    Failing to promptly pay or deliver, as he requested, any funds in the

25  possession, custody, or control of Individual Defendants that Plaintiff was entitled to receive.

26    47.    On information and belief, Defendant Barrett, who was the only attorney that

27  Plaintiff trusted and knew at L&B, knew as early as 48 hours after the execution of the

28  settlement agreement by the Plaintiff that Plaintiff would never see a penny of the settlement

proceeds because Layfield had withdrawn the proceeds from the trust account. On information

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

15

1  and belief, Barrett knew that at least some of those funds were transferred for Layfield's use in

2  Costa Rica. Yet Barrett failed to disclose to Plaintiff the fraud being committed upon him and/or

3  failed to advise him to make a report to law enforcement authorities in order to stop Layfield

4  and possibly recover the proceeds. Defendant Barrett remained silent and continued drawing a

5  salary of approximately $300,000.00 per year from L&B.

6      48.    By engaging in the conduct delineated herein, Individual Defendants engaged in

7  intentional, reckless, and/or negligent conduct to the detriment of Plaintiff, resulting in a breach

8  of their fiduciary duties of loyalty and care to Plaintiff.

9      49.    As a direct and proximate result of their breaches of their fiduciary duties to

10  Plaintiff, Individual Defendants caused Plaintiff not to recover funds due and owing to him;

11  rather, Individual Defendants attempted to secure their own attorney fees at the expense of

12  Plaintiff, as alleged herein.

13      50.    As the direct and proximate result of Individual Defendants' breaches of their

14  fiduciary duties to their client, Plaintiff has been damaged in a sum to be determined at trial, to

15  further include attorney fees and costs according to proof at trial.

16      51.    The above described acts of Individual Defendants, carried on by and through

17  their managing agents, officers or directors, were engaged in with a deliberate, cold, callous,

18  fraudulent and intentional manner in order to injure and damage Plaintiff, and/or with a

19  conscious disregard of Plaintiff's rights. Such acts were despicable, and constitute malice, fraud

20  and/or oppression within the meaning of California Civil Code section 3294. Plaintiff therefore

21  requests an assessment of punitive damages against Individual Defendants, in an amount to be

22  proven at time of trial.

23

24                          **SECOND CAUSE OF ACTION**

25                          [CONSTRUCTIVE FRAUD]

26                  (Against Barrett, Barrett-PC and Does 1-10)

27      52.    Plaintiff incorporates paragraphs 1 through 51 as though set forth in full in this

28  cause of action.

    53.    Defendant Joseph Barrett was Plaintiff's attorney. In fact, he was the only

McMURRAY HENRIKS, LLP
5670 WILSHIRE BOULEVARD, SUITE 1450
LOS ANGELES, CA 90036

16

1  attorney at L&B that Plaintiff knew, worked with, and trusted.

2      54.    Barrett made representations to Plaintiff, described herein above, as to the

3  proposed agreement to settle the Plaintiff's case and, subsequently, as to the status of the

4  disbursements that they either knew were false, or had no reasonable basis for believing to be

5  true, and/or made the representations recklessly, without regard for their truth.

6      55.    Additionally or alternatively, Barrett concealed facts, described herein above,

7  regarding the proposed agreement to settle the Plaintiff's case and, subsequently, regarding the

8  status of disbursements which Individual Defendants knew to be material to the Plaintiff's

9  decision to sign the settlement agreement and to continue to rely on Barrett's and on L&B's

10  promises to pay Plaintiff's share of case proceeds. Among the facts Barrett wrongfully

11  concealed were the following:

12      a.    As a partner and director of L&B, Barrett knew or should have known

13  that L&B was insolvent, was engaged in financial mismanagement and fraudulent and unethical

14  practices as to client accounting and case proceeds. Barrett knew or should have known that

15  such information would have been material to Pimentel's decision to retain and to continue the

16  employment of L&B on his case and to settle the case. Nevertheless, Barrett failed to disclose

17  this information to Pimentel.

18      b.    Barrett knew or should have known that L&B's partners, shareholders,

19  and/or upper management intended to appropriate Pimentel's case proceeds and withhold them

20  from Pimentel for the purpose of concealing the insolvency of L&B. Barrett knew or should

21  have known that such information would have been material to Pimentel's decision to retain and

22  to continue the employment of L&B on his case and to settle the case. Nevertheless, Barrett

23  repeatedly failed to disclose this information to Pimentel and, in fact, represented otherwise in

24  his several communications with Pimentel.

25      c.    Barrett knew or should have known that the settlement check in the *Avila*

26  case had been issued by State Farm on February 22, 2017 and, on information and belief, had

27  been received and deposited into L&B's trust or other bank account(s) soon thereafter. Barrett

28  knew or should have known that such information would have been material to Pimentel's

decision to rely on Barrett's and the other Defendants' representations that Pimentel's case

MCMURRAY HENRIKS, LLP
5670 WILSHIRE BOULEVARD, SUITE 1450
LOS ANGELES, CA 90036

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1   disbursement was forthcoming Nevertheless, Barrett repeatedly failed to disclose this

2   information in his several subsequent communications with Pimentel.

3         56.    Barrett made these false representations and concealments with the intent that

4   Plaintiff would rely on the misrepresentations, and with the intent to thereby defraud Plaintiff,

5   by: (a) inducing their client, Plaintiff, to settle his verdict of $3.6 million for a fraction thereof;

6   (b) failing to provide a disbursement breakdown of fees and costs; and (c) failing to pay

7   Plaintiff the proceeds of the Settlement owed to him.

8         57.    Plaintiff reasonably relied upon the representations of Individual Defendants, and

9   especially of Barrett, and could not, in the exercise of due diligence, have discovered the falsity

10   of their representations. Despite repeated requests for a production of disbursements and proof

11   of funds, Individual Defendants chose to stone wall Plaintiff.

12         58.    As a proximate result of the reliance on these false representations, and the

13   failure to provide the services required by the contract, Plaintiff has been injured.

14         59.    Plaintiff's reliance on the false representations Individual Defendants was a

15   substantial factor causing the harm.

16         60.    The conduct of Individual Defendants described herein was intended to cause

17   injury to Plaintiff and intended to deprive him of money he was rightfully owed, or was

18   despicable conduct carried on by Individual Defendants with a willful and conscious disregard

19   of Plaintiff's rights.

20         61.    The conduct of Individual Defendants subjected Plaintiff to cruel and unjust

21   hardship in conscious disregard of Plaintiff's rights, and constituted intentional

22   misrepresentation, deceit, or concealment of material facts known to Individual Defendants with

23   the intention to deprive Plaintiff of property and/or legal rights, or to otherwise cause injury, so

24   as to constitute malice, oppression, or fraud under California Civil Code section 3294, and

25   thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an

26   example of Individual Defendants.

27

28   /// ///

     /// ///

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

18

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1  |  **THIRD CAUSE OF ACTION**

2  |  [VIOLATION OF BUS. & PROFS. § 17200, ET SEQ. –

3  |  UNFAIR, UNLAWFUL & FRAUDULENT BUSINESS PRACTICES]

4  |  (Against all Defendants)

5  62. Plaintiff incorporates paragraphs 1 through 61 as though set forth in full in this

6  cause of action.

7  63. California Business and Professions Code § 17200, et seq., prohibits acts of

8  unfair competition, including any "fraudulent business act or practice" and conduct which is

9  "likely to deceive" and/or is "fraudulent" within the meaning of Section 17200.

10  64. As alleged herein, Defendants' acts and practices were fraudulent, and were

11  intended to, and were likely to, deceive the Plaintiff, and other clients of L&B who were

12  similarly situated—thereby constituting fraudulent business acts or practices. Plaintiff is

13  informed and believes, and on that basis alleges, that this conduct is ongoing, and that it

14  continues to this date.

15  65. Upon information and belief, all defendants engaged in one or more of the

16  following deceptive business practices by, among other things:

17  a. Failing to provide Plaintiff a status on the disbursements.

18  b. Failing to deposit all funds received or held for the benefit of Pimentel,

19  and others similarly situated, including advances for costs and expenses, in an identifiable bank

20  account labeled "Trust Account" or "Client's Funds Account", or words of similar import,

21  maintained in the State of California.

22  c. Wrongfully commingling funds of the defendant attorneys in the trust

23  account established on behalf of Pimentel, and others similarly situated.

24  d. Wrongfully withdrawing a disputed portion of trust funds held for the

25  benefit of Pimentel, and other firm clients, when the right of the defendants Layfield, Barrett,

26  and Wakefield to receive that portion of trust funds was disputed.

27  e. Failing to promptly notify Pimentel, and other clients similarly situated,

28  of the receipt of trust funds held for his, or their, benefit.

f. Failing to maintain complete records of all funds of Pimentel's, and other

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1   firm clients, coming into the possession of defendants Barrett and/or Barrett-PC, and failing to

2   render appropriate accounts to Plaintiff and other clients regarding those funds.

3           g.      Failing to promptly pay or deliver, as requested by Pimentel, and other

4   firm clients, any funds in possession of defendants Barrett and/or Barrett-PC that Pimentel (or

5   others similarly situated) was/were entitled to receive.

6           h.      Executing and transmitting false and misleading documents, including,

7   emails, and letters to Pimentel.

8       66.     As a direct and proximate cause of the unlawful, unfair, and fraudulent acts and

9   practices of Defendants, Plaintiff has suffered monetary losses. Both Plaintiff and other

10  similarly situated California consumers of legal services have suffered, and will continue to

11  suffer, damages, if the fraudulent and deceitful practices of Defendants remain unchecked.

12      67.     By reason of the foregoing, Defendants, and each of them, have been unjustly

13  enriched, and should be required to disgorge their illicit profits, and make restitution to Plaintiff

14  and other California consumers who have been harmed. Defendants, and each of them, should

15  also be enjoined from continuing in such practices, under California Business & Professions

16  Code §§ 17203 and 17204. Plaintiff is therefore entitled to injunctive relief and attorneys' fees

17  under California Business & Professions Code § 17200 and related sections.

18

19              **FOURTH CAUSE OF ACTION**

20                  [CONVERSION]

21              (Against All Defendants)

22      68.     Plaintiff incorporates paragraphs 1 through 67 as though set forth in full in this

23  cause of action.

24      69.     Individual Defendants wrongfully exercised control over Plaintiff's property

25  when they intentionally and substantially interfered with Plaintiff's property by preventing

26  Plaintiff from having access to the Settlement proceeds owed to him, despite Defendants'

27  knowing that Plaintiff was entitled to such funds.

28      70.     Individual Defendants knew that Plaintiff did not consent to their depriving

Plaintiff of his property, and yet, they failed to pay Plaintiff despite multiple requests from

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1  Plaintiff for prompt payment.

2      71.    Plaintiff was harmed by the conduct of Individual Defendants when they failed

3  to pay Plaintiff the funds owed to him, and such conduct was a substantial fact in causing

4  Plaintiff's harm.

5      72.    The wrongful conduct of Individual Defendants is compounded by the fact that

6  they owed Plaintiff fiduciary duties to act in Plaintiff's best interest and to his benefit, yet

7  converted Plaintiff's Settlement funds for their own use or benefit.

8

9  **FIFTH CAUSE OF ACTION**

10  [BREACH OF CONTRACT]

11  (Against All Defendants)

12      73.    Plaintiff incorporates paragraphs 1 through 72 as though set forth in full in this

13  cause of action.

14      74.    Plaintiff entered into a Retainer Fee Agreement (the "Contract") with Layfield &

15  Wallace (the predecessor to L&B), on or around September 19, 2014. The Contract specified

16  the manner and timing of payment of the client's portion of case proceeds to Plaintiff.

17      75.    Individual Defendants were officers, owners, or authorized representatives of

18  L&B at all times relevant, and upon information and belief, were parties to the Contract and

19  were obligated to perform according to the terms of the Contract.

20      76.    Plaintiff is informed and believes, and thereon alleges, Individual Defendants are

21  in breach of the terms of the Contract.

22      77.    At no time did Plaintiff rescind the Contract. Plaintiff has performed all

23  conditions, covenants, and promises under the Contract that he was obligated to perform.

24      78.    Among the obligations of Individual Defendants were to ultimately pay Plaintiff

25  the proceeds of any settlement or verdict in accord with the terms of the Contract. Individual

26  Defendants have failed or refused to pay to Plaintiff any of the funds owed to him.

27      79.    As a direct and proximate result of the breach of the Contract by Individual

28  Defendants, Plaintiff has been damaged in an amount to be proven at trial, but which is no less

than $1.35M.

McMURRAY HENRIKS, LLP
5670 WILSHIRE BOULEVARD, SUITE 1450
LOS ANGELES, CA 90036

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

## SIXTH CAUSE OF ACTION

### [NEGLIGENCE]

(Against All Defendants)

80. Plaintiff incorporates paragraphs 1 through 79 as though set forth in full in this cause of action.

81. Attorneys in California owe duties of care, competence, and fiduciary loyalty to their clients.

82. An attorney-client relationship existed between Plaintiff and Defendants from around September of 2014 until present. By virtue of Plaintiff having placed his confidence in the fidelity and integrity of Defendants, and having entrusted and contracted with Defendants to represent his interests in his litigation for personal injuries sustained when he was hit by a truck, a duty of care, competence, and fiduciary loyalty existed between Plaintiff and Defendants during that time, such that Defendants owed Pimentel duties and obligations.

83. Plaintiff is informed and believes, and on that basis alleges, that Defendants, and each of them, negligently breached their duties to him by, among other things:

a. Counseling, advising, and/or pressuring Plaintiff to agree to the settlement agreement;

b. Failing to deposit all funds received or held for Plaintiff's benefit, including advances for costs and expenses, in an identifiable bank account labeled "Trust Account" or "Client's Funds Account," or words of similar import, maintained in the State of California;

c. Wrongfully withdrawing a disputed portion of trust funds held for Plaintiff's benefit, when he disputed the right of Defendants to receive that portion of those trust funds, and before that dispute had finally been resolved;

d. Failing to promptly notify Plaintiff of the receipt of trust funds held for his benefit;

e. Failing to maintain complete records of all funds of Plaintiff's coming into the possession of Defendants, and failing to render appropriate accounts to him regarding

1 | those funds; and/or

2 |       f.    Failing to promptly pay or deliver, as he requested, any funds in

3 | possession of Defendants that Plaintiff was entitled to receive.

4 |     84.    By engaging in the conduct delineated herein, Defendants engaged in intentional,

5 | reckless, and/or negligent conduct to the detriment of Plaintiff, resulting in a breach of their

6 | duties to Plaintiff.

7 |     85.    As a direct and proximate result of their breaches of their duties to Plaintiff,

8 | Defendants caused Plaintiff not to recover funds due and owing to him; rather, Defendants

9 | attempted to secure their own attorney fees at the expense of Plaintiff, as alleged herein.

10 |     86.    As the direct and proximate result of Defendants' breaches of their duties to their

11 | client, Pimentel has been damaged in a sum to be determined at trial, to further include attorney

12 | fees and costs according to proof at trial.

13 |

14 | **SEVENTH CAUSE OF ACTION**

15 | [FALSE ADVERTISING, Bus. and Prof. Code § 17500 et seq.]

16 | (Against All Defendants)

17 |     87.    Plaintiff incorporates paragraphs 1 through 86 as though set forth in full in this

18 | cause of action.

19 |     88.    Defendant Barrett caused several press releases to be issued announcing his

20 | equity partnership with Layfield. He advertised and held himself out the public as a partner of

21 | L&B inducing public trust and bolstering his credentials. When L&B clients and creditors made

22 | requests, claims, or demands to receive their proceeds, Barrett represented that he was not a real

23 | partner, but that he was a partner "for appellation only." Barrett attempted to avoid liability for

24 | the harm caused to the firm's clients by stating that he was not a "real" partner and that he was

25 | merely an employee.

26 |     89.    By the acts alleged herein, Defendants have violated, and continue to violate,

27 | Business and Professions Code § 17500 et seq. through their unlawful, unfair, fraudulent and

28 | deceptive business acts and practices, namely, false advertising.

    90.    As a direct and proximate result of Defendants unlawful, unfair and fraudulent

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1  acts, Plaintiff and members of the public have been misled and suffered financial loss and injury

2  to their business and property.

3      91.    By the unlawful, unfair and fraudulent practices described above, Defendants

4  have been unjustly enriched and have misappropriated and hold monies and property rightly

5  belonging to Plaintiff for which restitution is an appropriate remedy.  Plaintiff seeks restitution

6  of the money taken and the money and property in which Plaintiff has a vested interest and any

7  profits of Defendants in which Plaintiff has an ownership interest.

8

9                    **PRAYER FOR RELIEF**

10     WHEREFORE, Plaintiff Rodney Pimentel prays for an award in his favor on the

11  preceding claims as follows:

12     1.    A declaration determining their entitlement to settlement funds under the

13  Settlement Agreement and Referral Agreement, and for any such other declaratory relief as the

14  Court deems just and proper;

15     2.    General, special, punitive, and exemplary damages, amount to be proven at trial;

16     3.    Tracing as to all cases brought by Barrett from L&B to his current law practices

17  that may have been funded using Rodney Pimentel's wrongfully withheld settlement proceeds.

18     4.    Declaration of a constructive trust.

19     5.    Restitution to Plaintiff of all monies wrongfully retained, including from any

20  funds paid to defendant Barrett in connection with the resolution of cases brought by him to his

21  current law practice from L&B;

22     6.    Preliminary injunction enjoining Defendants from disbursing funds belonging to

23  Plaintiff or received on cases appropriated by Barrett;

24     7.    An award of costs as allowed under applicable law;

25     8.    An award of pre-judgment and post-judgment interest as allowed under

26  applicable law;

27     9.    For a preliminary and permanent injunction pursuant to California Business &

28  Professions Code §§ 17203 and 17535 preventing the unfair, unlawful, and fraudulent business

practices, and untrue and misleading statements relating to performance of services;

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

1      10.    For an order of restitution pursuant to California Business & Professions Code

2  §§ 17203 and 17535 requiring Defendants to restore and disgorge all ill-gotten gains, as well as

3  any amounts generated form the use of such funds into a common fund, constructive trust, or

4  other similar device intended for the benefit of Plaintiff;

5      11.    For an award of damages pursuant to California Business and Professions Code §

6  17500 for each violation of this section to Plaintiff;

7      12.    For attorney fees pursuant to California Code of Civil Procedure § 1021.5; and/or

8      13.    For all such other and further relief that this Court may deem just and proper

9  and/or that is available to Plaintiff under the law.

DATED: July 19, 2018                 **MCMURRAY HENRIKS, LLP**

By:  _____

Yana G. Henriks, Esq.
Randy H. McMurray, Esq.
Attorneys for Plaintiff,
RODNEY PIMENTEL

*McMurray Henriks, LLP*
*5670 Wilshire Boulevard, Suite 1450*
*Los Angeles, CA 90036*

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1

## DEMAND FOR JURY TRIAL

2

3    Plaintiff Rodney Pimentel hereby demands a jury trial.

4

DATED: July 19, 2018                          **MCMURRAY HENRIKS, LLP**

5

6                                        By: _____

7                                        Yana G. Henriks, Esq.
                                         Randy H. McMurray, Esq.
8                                        Attorneys for Plaintiff,
                                         RODNEY PIMENTEL
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MCMURRAY HENRIKS, LLP**
5670 WILSHIRE BOULEVARD, SUITE 1450
LOS ANGELES, CA 90036

**EXHIBIT 2**

**FILED**

MAY 18 2018

STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

# PUBLIC MATTER

## STATE BAR COURT OF CALIFORNIA

### HEARING DEPARTMENT – LOS ANGELES

| | |
|---|---|
| In the Matter of ) | Case Nos. 17-O-04140 (17-O-04198; |
| ) | 17-O-04754)-YDR |
| PHILIP JAMES LAYFIELD, ) | |
| ) | DECISION AND ORDER OF |
| A Member of the State Bar, No. 204836. )~ | INVOLUNTARY INACTIVE |
| ) | ENROLLMENT |
| ) | |

     Respondent Philip James Layfield (Respondent) was charged with 12 counts of violations

of the Rules of Professional Conduct and the Business and Professions Code.[1]  He failed to

appear at the trial of this case and his default was entered.  The Office of Chief Trial Counsel

(OCTC) filed a petition for disbarment under rule 5.85 of the Rules of Procedure of the State

Bar.[2]

    Rule 5.85 provides the procedure to follow when an attorney fails to appear at trial after

receiving adequate notice and opportunity.  The rule provides that, if an attorney's default is

entered for failing to appear at trial and the attorney fails to have the default set aside or vacated

---

[1] Unless otherwise indicated, all further references to section(s) refer to provisions of the
Business and Professions Code.

[2] Unless otherwise indicated, all references to rules are to this source.

kwiktag®   237 304 506


within 45 days, OCTC will file a petition requesting the court to recommend the attorney's

disbarment.[3]

In the instant case, the court concludes that the requirements of rule 5.85 have been

satisfied and, therefore, grants the petition and recommends that Respondent be disbarred from

the practice of law.

### FINDINGS AND CONCLUSIONS

Respondent was admitted to practice law in California on December 7, 1999, and has

been a member since then.

**Procedural Requirements Have Been Satisfied**

On September 26, 2017, OCTC properly filed and served a First Amended Notice of

Disciplinary Charges (NDC) on Respondent.  The NDC notified Respondent that his failure to

appear at the State Bar Court trial would result in a disbarment recommendation.

Respondent filed a response to the NDC on October 31, 2017.

At a status conference on December 21, 2017, the trial was set to start on January 24,

2018.  The December 21, 2017 order setting the trial date was served on Respondent at his

membership records address by first-class mail, postage paid.  (Rule 5.81(A).)

On January 24, 2018, OCTC appeared for trial but Respondent did not.

Finding that all of the requirements of rule 5.81(A) were satisfied, the court entered

Respondent's default by order filed January 24, 2018.  The order notified Respondent that, if he

did not timely move to set aside his default, the court would recommend his disbarment.  The

order also placed Respondent on involuntary inactive status under section 6007, subdivision (e),

---

[3] If the court determines that any due process requirements are not satisfied, including
adequate notice to the attorney, it must deny the petition for disbarment and take other
appropriate action to ensure that the matter is promptly resolved.  (Rule 5.85(F)(2).)

effective three days after service of the order, and he has remained inactively enrolled since that time.

Respondent did not seek to have his default set aside or vacated.  (Rule 5.83(C)(2) [attorney has 45 days after order entering default is served to file motion to set aside default].)

On March 21, 2018, OCTC properly filed and served the petition for disbarment on Respondent at his official membership records address.  As required by rule 5.85(A), OCTC reported in the petition that:  (1) there has been no contact with Respondent since his default was entered, except in connection with Respondent's inquiries whether OCTC would stipulate to setting aside his default and whether OCTC would grant him a 30-day extension to file a motion to set aside the default, in two separate emails from Respondent through his wife dated March 9, 2018;[4] (2) there are 91 investigations pending against Respondent; (3) Respondent has no record of prior discipline; and (4) the Client Security Fund (CSF) has not paid any claims as a result of Respondent's misconduct.

Respondent has not responded to the petition for disbarment or moved to set aside or vacate the default.[5]  The case was submitted for decision on April 25, 2018.

**The Admitted Factual Allegations Warrant the Imposition of Discipline**

Upon entry of Respondent's default, the factual allegations in the NDC are deemed admitted and no further proof is required to establish the truth of such facts.  (Rule 5.82.)  As set forth below in greater detail, the factual allegations in the NDC support the conclusion that

---

[4] OCTC declined Respondent's requests.  In the email, Respondent stated that he was "aware that a default was entered" against him.  On February 23, 2018, Respondent was arrested in New Jersey for mail fraud.  When he sent the two emails to OCTC, he was under the custody of the U.S. Marshal.

[5] The court received a letter from Respondent on March 21, 2018.  But because it did not meet filing requirements, the letter was not filed and is not considered part of the record of this proceeding.

Respondent is culpable as charged and, therefore, violated a statute, rule or court order that would warrant the imposition of discipline.  (Rule 5.85(F)(1)(d).)

**Case No. 17-O-04140 (Casas Matter)**

Count 1 – Respondent willfully violated rule 4-100(A) of the Rules of Professional Conduct (failure to maintain client funds in trust account) by failing to maintain a balance of $360,000 on behalf of Patricia Casas, Issac Cassas, and their lienholders in a client trust account.

Count 2 – Respondent willfully violated section 6106 (moral turpitude, dishonesty, or corruption) by intentionally misappropriating client funds of $359,942.15 between February 23 and June 20, 2017, that the clients and their lienholders were entitled to receive.

Count 3 – Respondent willfully violated rule 4-100(B)(3) of the Rules of Professional Conduct (failure to render accounts of client funds) by failing to provide an accounting regarding the $600,000 settlement funds upon termination of employment on March 30, 2017.

Count 4 – Respondent willfully violated rule 4-100(B)(4) of the Rules of Professional Conduct (failure to promptly pay funds to client) by failing, upon the clients' request, to promptly pay any portion of the $360,000 to Patricia Casas, Issac Cassas, or their lienholders.

**Case No. 17-O-04198 (Pimentel Matter)**

Count 5 – Respondent willfully violated rule 4-100(A) of the Rules of Professional Conduct by failing to maintain a balance of $742,500 on behalf of Rodney A. Pimentel and his lienholders in a client trust account.

Count 6 – Respondent willfully violated section 6106 by intentionally misappropriating client funds of $742,442.15 between February 24 and June 20, 2017, that the client and his lienholders were entitled to receive.

Count 7 – Respondent willfully violated rule 4-100(B)(3) of the Rules of Professional Conduct by failing to provide an accounting regarding the $1.35 million settlement funds upon the client's multiple demands between April and June 2017.

Count 8 – Respondent willfully violated rule 4-100(B)(4) of the Rules of Professional Conduct by failing, upon the client's multiple requests, to promptly pay any portion of the $742,500 to Pimentel or his lienholders.

### Case No. 17-O-04754 (Nguyen Matter)

Count 9 – Respondent willfully violated rule 4-100(A) of the Rules of Professional Conduct by failing to maintain a balance of $2.315 million on behalf of Josephine Nguyen and her lienholders in a client trust account.

Count 10 – Respondent willfully violated section 6106 by intentionally misappropriating client funds of $2,314,942.15 between August 29, 2016, and June 20, 2017, that the client and her lienholders were entitled to receive.

Count 11 – Respondent willfully violated rule 4-100(B)(3) of the Rules of Professional Conduct by failing to provide an accounting regarding the $3.9 million settlement funds upon termination of employment on June 22, 2017.

Count 12 – Respondent willfully violated rule 4-100(B)(4) of the Rules of Professional Conduct by failing, upon the client's request on June 22, 2017, to promptly pay any portion of the $2.315 million to Nguyen, her new attorney, or her lienholders.

**Disbarment Is Recommended**

Based on the above, the court concludes that the requirements of rule 5.85(F) have been satisfied and Respondent's disbarment is recommended.  In particular:

(1) The NDC was properly served on Respondent under rule 5.25.

(2) Respondent had actual notice of this proceeding and had adequate notice of the trial date prior to the entry of his default.

(3) The default was properly entered under rule 5.81.

(4) The factual allegations in the NDC, deemed admitted by the entry of the default, support a finding that Respondent violated a statute, rule or court order that would warrant the imposition of discipline.

(5) Despite adequate notice and opportunity, Respondent failed to appear for the trial of this disciplinary proceeding.

As set forth in the Rules of Procedure of the State Bar, the court recommends his disbarment.

## RECOMMENDATIONS

### Disbarment

The court recommends that Respondent **Philip James Layfield**, State Bar number 204836, be disbarred from the practice of law in the State of California and that his name be stricken from the roll of attorneys.

### Restitution

The court also recommends that Respondent be ordered to make restitution to the following payees:

(1) Patricia Casas and Issac Cassas in the amount of $359,942.15 plus 10 percent interest per year from March 30, 2017;

(2) Rodney A. Pimentel in the amount of $742,442.15 plus 10 percent interest per year from June 20, 2017; and

(3) Josephine Nguyen in the amount of $2,314,942.15 plus 10 percent interest per year from June 20, 2017.

Any restitution owed to the Client Security Fund is enforceable as provided in Business and Professions Code section 6140.5, subdivisions (c) and (d).

- 6 -

**California Rules of Court, Rule 9.20**

The court also recommends that Respondent be ordered to comply with the requirements of California Rules of Court, rule 9.20, and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of the Supreme Court order in this proceeding.

**Costs**

The court further recommends that costs be awarded to the State Bar in accordance with Business and Professions Code section 6086.10, such costs being enforceable both as provided in Business and Professions Code section 6140.7 and as a money judgment.

**ORDER OF INVOLUNTARY INACTIVE ENROLLMENT**

In accordance with Business and Professions Code section 6007, subdivision (c)(4), the court orders that **Philip James Layfield**, State Bar number 204836, be involuntarily enrolled as an inactive member of the State Bar of California, effective three calendar days after the service of this decision and order.  (Rule 5.111(D).)

Dated:  May  17 , 2018

Yvette D. Roland
Judge of the State Bar Court

## CERTIFICATE OF SERVICE

[Rules Proc. of State Bar; Rule 5.27(B); Code Civ. Proc., § 1013a(4)]

I am a Court Specialist of the State Bar Court of California.  I am over the age of eighteen and not a party to the within proceeding.  Pursuant to standard court practice, in the City and County of Los Angeles, on May 18, 2018, I deposited a true copy of the following document(s):

DECISION AND ORDER OF INVOLUNTARY INACTIVE ENROLLMENT

in a sealed envelope for collection and mailing on that date as follows:

☒    by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at Los Angeles, California, addressed as follows:

PHILIP JAMES LAYFIELD                PHILIP JAMES LAYFIELD
2720 HOMESTEAD RD STE 200            382 NE 191ST STREET
PARK CITY, UT  84098 - 4887          SUITE 42308
                                     MIAMI, FL  33179


☒    by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

Eli D. Morgenstern, Enforcement, Los Angeles

I hereby certify that the foregoing is true and correct.  Executed in Los Angeles, California, on May 18, 2018.

Angela Carpenter
Court Specialist
State Bar Court

**EXHIBIT 3**

(State Bar Court Nos. 17-O-04140 (17-O-04198; 17-O-04754))

**S250067**

**SUPREME COURT**
**FILED**

**IN THE SUPREME COURT OF CALIFORNIA**

SEP 2 7 2018

**En Banc**

**Jorge** Navarrete Clerk

**Deputy**

In re PHILIP JAMES LAYFIELD on Discipline

The court orders that Philip James Layfield, State Bar Number 204836, is disbarred from the practice of law in California and that his name is stricken from the roll of attorneys.

Philip James Layfield must make restitution to the following payees:

(1) Patricia Casas and Issac Cassas in the amount of $359,942.15 plus 10 percent interest per year from March 30, 2017;

(2) Rodney A. Pimentel in the amount of $742,442.15 plus 10 percent interest per year from June 20, 2017; and

(3) Josephine Nguyen in the amount of $2,314,942.15 plus 10 percent interest per year from June 20, 2017.

Any restitution owed to the Client Security Fund is enforceable as provided in Business and Professions Code section 6140.5, subdivisions (c) and (d).

Philip James Layfield must also comply with California Rules of Court, rule 9.20, and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 calendar days, respectively, after the effective date of this order.

Costs are awarded to the State Bar in accordance with Business and Professions Code section 6086.10 and are enforceable both as provided in Business and Professions Code section 6140.7 and as a money judgment.

I, Jorge Navarrete, Clerk of the Supreme Court of the State of California, do hereby certify that the preceding is a true copy of an order of this Court as shown by the records of my office.
Witness my hand and the seal of the Court this
_____ day of __SEP 2 7 2018__ 20_____
                          Month
By: _____
              Deputy

**CANTIL-SAKAUYE**

*Chief Justice*



kwiktag ®     241 070 169

**EXHIBIT 4**

Yana G. Henriks, Esq. (SBN 250638)
*Yhenriks@law-mh.com*
Randy H. McMurray, Esq. (SBN 126888)
*Rmcmurray@law-mh.com*
**MCMURRAY HENRIKS, LLP**
5670 Wilshire Blvd., Suite 1450
Los Angeles, California 90036
Telephone: (323) 931-6200
Facsimile:  (323) 931-9521
Attorneys for Plaintiff, RODNEY PIMENTEL

# UNITED STATES BANKRUPTCY COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In re | Case No.:  **2:18-bk-15829-NB** |
| PHILIP JAMES LAYFIELD | Chapter 7 |
| Debtor. | **Adversary No.: 2:19-ap-01069-NB** |
| | *[Assigned to the Hon. Neil Bason]* |
| RODNEY PIMENTEL, | **FIRST AMENDED COMPLAINT** |
| Plaintiff, | **AGAINST DISCHARGEABILITY:** |
| vs. | **(1) DECLARATORY RELIEF, and;** |
| | **(2) FRAUDULENT** |
| PHILIP JAMES LAYFIELD; AFFELD | **TRANSFER/CONCEALMENT.** |
| GRIVAKES LLP, a California limited | |
| liability partnership; and DOES 1-10, | Action filed: March 15, 2019 |
| inclusive, | |
| Defendants. | |

MCMURRAY HENRIKS, LLP
5670 WILSHIRE BOULEVARD, SUITE 1450
LOS ANGELES, CA 90036

COMES NOW Creditor Rodney Pimentel ("Plaintiff"), by and through his counsel, and for his complaint against the Debtor Philip James Layfield (f/k/a Philip Pesin) ("Layfield"); and Wesley H. Avery, Trustee; Affeld Grivakes LLP; and Does 1-10, inclusive, hereby alleges as follows:

## **INTRODUCTION**

1.     This case arises from the injuries that plaintiff Rodney Pimentel (herein "Plaintiff" or "Pimentel") suffered in having been defrauded and deprived of his recovery in connection with the underlying personal injury lawsuit *Rodney Alexander Pimentel vs. Joaquin Garcia Avila et al.*, Los Angeles County Superior Court case number SC115454 (herein, the "*Avila* case" or "personal injury case" or "underlying case").

2.     Pimentel now seeks a declaration of nondischargeability of the Debtor's liability to him for the injuries he sustained when his jury verdict of $3.6 million was fraudulently and/or ineptly negotiated down to $1.35 million by his attorneys and Pimentel was wrongfully induced to sign the settlement agreement; and when Pimentel's attorneys fraudulently failed to remit any case proceeds to him.

3.     Pimentel seeks an order distributing the owed funds directly to him, and/or restitution of the same.

4.     Pimentel also seeks an order avoiding fraudulent transfers by Defendant Philip Layfield to Defendant Affeld Grivakes LLP through intermediary Joseph Barrett.

5.     On information and belief, there are individuals responsible for Pimentel's damages who bear personal liability for those damages based on their own conduct and other than as fraudulent transferees. Since the debtor's property is not implicated with regard to said individuals' personal liability, the Plaintiff's claims for damages based on said individuals' conduct have been raised in a separate action, which the Plaintiff filed in the Superior Court of California for the

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

2

County of Los Angeles: *Rodney Pimentel vs. Joseph Barrett et al.*, Case No. BC701615.

## **JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334 and the reference order of the United States District Court for the Central District of California.

7.      This adversary proceeding is commenced pursuant to Rule 7001, et seq. of the Federal Rules of Bankruptcy Procedure and sections 502, 547, 548, 550, and 551 of Title 11 of the United States Code (the "Bankruptcy Code").

8.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409 as this adversary proceeding arises under and in connection with a case under Title 11 which is pending in this District.

9.      This adversary proceeding is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (B), (E), (F), and (O).

10.      This adversary proceeding relates to the Chapter 7 case of debtor Philip James Layfield, Central District Bankruptcy Case No. 2:18-bk-15829-NB, now pending before this Court.

## **PARTIES**

11.      Plaintiff Rodney Pimentel was, at all time material hereto, an individual, client, and creditor of Layfield & Barrett, APC ("L&B"), of which Debtor Philip James Layfield was the managing partner. Defendant L&B purported to be a personal injury law firm with its principal place of business located in Los Angeles, California, which is within this District.

12.      Defendant Philip James Layfield was formerly a shareholder, director, managing partner, and attorney at the law firm known as "Layfield & Barrett, APLC," (f/k/a "Layfield & Wallace") (herein "L&B") and is currently a resident of the state of Delaware.

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

13.    Defendant, Affeld Grivakes LLP (herein "A&G"), is a California limited liability partnership and law firm operating in the County of Los Angeles, in the state of California.

14.    Plaintiffs are informed and believe, and thereon allege that, at all times herein mentioned, each defendant was the alter ego, agent, principal, employee, partner, joint venture, co-conspirator, and/or representative of each other defendant, and in doing the acts herein alleged, were acting within the course and scope of such relationship, and/or with actual and/or apparent authority to do so.

15.    Specifically, at all times relevant to this lawsuit defendant and debtor Layfield was and is essentially identical with his law firm, L&B, which is a professional corporation having lost its character as a distinct entity from Layfield and there being a unity of interest between the two. The corporate formality of distinctiveness of the L&B firm was not honored by Layfield in that Layfield used L&B's assets and property held by it in trust for Layfield's own personal gain, including but not exclusively as described below:

a.  Layfield would fail to timely remit case proceeds in order to misappropriate and use those funds to satisfy his own substantial financial liabilities, including mortgages, payments for multiple luxury vehicles, personal guarantees for L&B financial obligations, and L&B's obligations that Layfield deemed necessary to keep L&B afloat and to conceal his prior misappropriation.

b.  Layfield would not use case disposition proceeds only as permitted by applicable laws but would, among other things, transfer millions of dollars from the IOLTA 2012 Account to the 2004 Operating Account and to the 1924 Personal Account to pay his own bills, including mortgage and care loans, and

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

4

pay himself compensation that exceeded what he was entitled to under his own compensation agreement with L&B.

16.     The true names and capacities, whether individual, corporate, or otherwise, of the defendants named herein as Does 1 through 10, inclusive, are presently unknown to Plaintiff. Plaintiff therefore sues such "Doe defendants" by fictitious names, but on the discovery of the true names and capacities, Plaintiff may amend his Complaint accordingly. Plaintiff is informed and believes, and based thereon alleges, that the fictitiously named defendants, and each of them, are in some manner liable and responsible for the conduct alleged herein, and are subject to the jurisdiction of this Court for the relief prayed for herein.

## GENERAL ALLEGATIONS

## A.     DEFENDANT LAYFIELD'S FRAUD AND CONVERSION

17.     Plaintiff Rodney Pimentel retained the services of Setareh Law APLC and its principal attorney, Daniel Setareh, to represent him to pursue his claims arising from a severe "T-bone" automobile collision in which Pimentel was severely and permanently injured. The accident left Pimentel financially destitute and physically unable to resume his profession as a drywall installer.

18.     In September of 2014, Setareh Law referred the matter to Defendant Layfield's law firm, Layfield & Wallace (i.e., L&B). Plaintiff agreed to retain L&B as trial counsel in the *Avila* lawsuit.

19.     Unbeknownst to Plaintiff, L&B had become insolvent. Its founder and managing partner, Defendant, was keeping up appearances only by improperly diverting case proceeds to satisfy overdue debts as is done in a "Ponzi Scheme." Additionally, Layfield routinely "marked up" costs in order to obtain additional profits that are generally not disclosed to his client or co-counsel.

20.     Meanwhile, Layfield and L&B's upper management – including partner Joseph Barrett and general counsel Todd Wakefield, planned and implemented a scheme to embezzle, among other things, case proceeds and to use

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

5

the same for personal gain either by funding other matters or debts in such a way that would obscure financial wrongdoing and allow embezzled funds to be indirectly recouped at a later time or by more directly appropriating the case proceeds for personal use. As part of the scheme, it was accepted creditors would seek relief from, a now ransacked, L&B in bankruptcy proceedings. Meanwhile, the wrongdoers would enjoy the concealed fruit of their scheme.

21.    Defendant Layfield's partner, Joseph Barrett, represented the Plaintiff at trial. On December 9, 2016, Plaintiff obtained a favorable jury verdict in the amount of $3.6 million. The defendant(s) in the underlying case were insured by State Farm Insurance. Approximately two months later, on February 9, 2017, State Farm filed a motion for a new trial.

22.    Consequently, Layfield and Barrett agreed to mediate with State Farm regarding the jury verdict and motion for new trial. Defendant Layfield's purpose in agreeing to mediate was to avoid as much as possible the delay of settlement payments from Plaintiff's case, which Layfield intended to use to fund the fraudulent scheme described above. Layfield and Barrett did not advise Pimentel of the mediation until after it had taken place and a preliminary deal had been struck. Layfield and Barrett agreed with State Farm to settle the case for only $1.35 million (nearly $2.3 million less than the jury verdict). In exchange, State Farm would withdraw the motion for new trial and would remit payment in full within 48 hours. Layfield and Barrett presented the mediation deal to Pimentel as a *fait accompli* and as the only reasonable option for Pimentel to see *any* recovery in the case. Pimentel signed the settlement agreement in reliance on representations made to him by Layfield and Barrett.

23.    Plaintiff is now informed and believes, and thereupon alleges that defendants L&B, Layfield, and/or Barrett counseled Plaintiff to settle the matter for $1.35 million solely to induce Plaintiff to sign the agreement which would

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

allow Layfield to provide a quick infusion of funds into Layfield's fraudulent scheme. Layfield never intended to pay Plaintiff's share of the proceeds.

24.    On or about February 24, 2017, State Farm issued a settlement check in the amount of $1.35 million to "Rodney A. Pimentel & Layfield Barrett Trial Attorneys, his attorney." Upon information and belief, said settlement check was received by Layfield, but Layfield did not advise Plaintiff that the funds had been received.

25.    Plaintiff and Plaintiff's other counsel inquired of Layfield and of Layfield several times, mostly by electronic mail, regarding the status of payment of Plaintiff's share of the proceeds from the *Avila* case. From June 1 through June 29, 2017, Layfield responded, personally and through intermediaries Joseph Barrett and Todd Wakefield, by email with various excuses why the money could not be paid immediately, including that Layfield was waiting to resolve various case-related liens or was travelling.

26.    On information and belief, Layfield made these statements knowing that they were false and for the purpose of inducing Plaintiff to not file legal proceedings or take other action to secure payment of the proceeds. Plaintiff so relied and has been deprived of his share of the *Avila* case proceeds, established by retainer agreement and by Defendant Layfield's admissions to be no less than $742,442.15.

27.    Layfield owed a fiduciary duty to Plaintiff to act in his best interest and not its own. Layfield owed a further fiduciary duty to timely pay the settlement funds/proceeds to Plaintiff. Layfield failed to perform his duties to the Plaintiff. Layfield's actions were taken maliciously and with the intent to injury the Plaintiff.

28.    The settlement proceeds owed to Plaintiff were held in trust for the benefit of Plaintiff and were never the property of Layfield, the law firm, or anyone other than Plaintiff. On information and belief based on the debtor's

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

PIMENTEL FIRST AMENDED COMPLAINT AGAINST DISCHARGEABILITY

*modus operandi* and information revealed in the several criminal indictments filed against him, the attorney trust account held by Layfield on behalf of the Plaintiff was reduced to a zero balance, and the funds owed to Pimentel were partly used to fund one or two of Layfield's pending contingency fee cases. The proceeds belonging to the Plaintiff were not commingled with those belonging to other clients. On information and belief, at the time of the receipt of Plaintiff's settlement funds, L&B and Layfield did not have access to other available funds to use for these purposes. The identity or identities of the receiving case or cases are known to Defendants and will be the subject of discovery.

29.     In proceedings before the State Bar Court of California styled *In the Matter of Philip James Layfield* case no. 17-O-04140 (herein "State Bar Proceeding"), Layfield defaulted and was held to have admitted that he willfully misappropriated at least $742,442.15 of the Plaintiff's funds in the manner described above. The court also issued the following recommendation: "The court also recommends that Respondent [Philip James Layfield] be ordered to make restitution to the following payees: … Rodney A. Pimentel in the amount of $742,442.15 plus 10 percent interest per year from June 20, 2017…." The Court overseeing the Chapter 7 bankruptcy of Defendant Philip James Layfield (C.D. Cal. case no. 2:18-bk-15829-NB) has implicitly found the matter of Layfield's misappropriation of funds in the Plaintiff's case and his obligation to pay restitution to Plaintiff to be *res judicata*.

> a. A true and correct copy of the January 24, 2018 order entering Layfield's default is attached as **Exhibit 1**.
>
> b. A true and correct copy of the May 18, 2018 State Bar Court decision is attached as **Exhibit 2**.

**B.      FRAUDULENT TRANSACTIONS TO AVOID L&B'S CREDITORS**

30.     There existed an agreement among Layfield and Barrett whereby Layfield would, among other things, transfer to Joseph Barrett the one or two

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

PIMENTEL FIRST AMENDED COMPLAINT AGAINST DISCHARGEABILITY

contingency fee cases that had been funded by monies unlawfully withheld from the Plaintiff as described in paragraph 28 *supra*. Joseph Barrett would then proceed to settle the cases and collect the allotted fees.

31.    Barrett then became a partner at the law firm of Affeld Grivakes LLP, taking aforementioned cases with him to that firm. A&G was aware that it was receiving cases transferred by Layfield to Barrett and which had been funded with monies wrongfully withheld from the Plaintiff.

## **FIRST CLAIM FOR RELIEF**

[DECLARATORY RELIEF--RESTITUTION, CONSTRUCTIVE TRUST]

[Against all Defendants]

32.    Plaintiff incorporates and re-alleges by reference each and every allegation set forth in paragraphs 1 through 40, inclusive, as if fully set forth herein.

33.    This is an action for declaratory relief brought pursuant to Rule 7001(9) of the Federal Rules of Bankruptcy Procedure to obtain a declaratory judgment that the monies owed to Plaintiff – including but not limited to those identified in the State Bar Proceeding – were not ever, and are not now, assets of the Debtor, but were monies held in trust for the benefit of Plaintiff, and that such monies owed to Plaintiff are not debts subject to discharge.

34.    Plaintiff seeks a declaration that (a) the funds owed to Plaintiff were in the possession, custody, and control of Defendant Layfield, held in trust by Defendant Layfield in a client trust account of L&B; (b) that said funds were misappropriated by Defendant Layfield through false pretenses, a false representation, or actual fraud and that Layfield owes restitution to Plaintiff thereon; (c) that said funds were never assets of Defendant Layfield, or Barrett, of A&G, or of L&B; (d) that said funds are nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6); and (e) shall be distributed forthwith to Plaintiff in restitution.

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

35.    Plaintiff also seeks a declaration that the quantum meruit and/or contractual, contingency-based attorney's fees held or claimed by Defendant A&G from cases transferred to it by Defendant Layfield and Joseph Barrett are subject to a constructive trust for the Plaintiff's benefit, or otherwise owed to the Plaintiff, up to an amount equal to that owed by Defendant Layfield to the Plaintiff. Plaintiff does not assert any claim or position as to case proceeds due to A&G clients. Nor does Plaintiff seek to rescind or otherwise cancel the fee agreements or contractual rights of A&G clients.

36.    Part and parcel with the Court's declaratory judgment, Plaintiff seeks an award of restitution from Defendant Layfield of the amounts declared by the Court to be owed to Plaintiff and nondischargeable, including pre- and post-judgment interest.

37.    Part and parcel with the Court's declaratory judgment, Plaintiff also seeks an award of restitution and/or distribution from Defendant A&G of the amounts declared by the Court to be subject to a constructive trust, including pre- and post- judgment interest.

## SECOND CLAIM FOR RELIEF

[FRAUDULENT TRANSFER AND/OR CONCEALMENT –

Including under 11 U.S.C. §727(a)(2)]

[Against all Defendants]

38.    Plaintiff incorporates and re-alleges by reference each and every allegation set forth in paragraphs 1 through 44, inclusive, as if fully set forth herein.

39.    Attorneys in California owe a fiduciary duty to their clients. *See T&R Foods Inc. v. Rose* (Cal. Super. 1996) 47 Cal.App.4th Supp. 1, 56 Cal.Rptr.2d 41.

40.    At the time Plaintiff obtained a jury verdict in his underlying case, for which Layfield represented him as his counsel, Layfield owed Plaintiff a fiduciary duty to act in his best interest and for his benefit.

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

41.    At the time Plaintiff obtained a jury verdict in his underlying case, for which Layfield represented him as his counsel, Layfield incurred fiduciary and contractual obligations to pay to Plaintiff the portion of the case recovery agreed to by Plaintiff and Layfield.

42.    Layfield never paid the agreed amount to Plaintiff.

43.    Consequently Plaintiff is a creditor of and has a right to payment from Defendant Layfield.

44.    Defendant Layfield transferred property and/or incurred an obligation to Defendant A&G through intermediary Joseph Barrett. When the property was received, Defendant A&G knew or should have known that it represented funds wrongfully withheld by Layfield from the Plaintiff.

45.    Defendant Layfield transferred the property and/or incurred the obligation, and Defendant A&G received and kept it, with the intent to hinder, delay, or defraud one or more of Layfield's creditors.

46.    Alternatively, Defendant Layfield did not receive a reasonably equivalent value in exchange for the transfer and/or obligation, and Plaintiff's right to payment arose before Defendant Layfield transferred the property and/or incurred the obligation.

47.    Defendant Layfield was insolvent at the time or became insolvent as a result of the transfer and/or obligation.

48.    Plaintiff was harmed and Defendant Layfield's conduct in transferring its property and/or incurring the obligation to Defendants was a substantial factor in causing Plaintiff's harm.

49.    Accordingly, Plaintiff is entitled to a judgment of the Court voiding all fraudulent transfers of property to Defendants which are traceable to amounts owed to the Plaintiff.

/// ///

/// ///

/// ///

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

11

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment on this Complaint, as it may be amended from time to time, as follows:

1. For a declaration of nondischargeability of any and all debts due and owing to Plaintiff;

2. For a determination that Plaintiff is entitled to recover at least $742,442.15 for case settlement proceeds in relation to the *Avila* case, with pre- and post-judgment interest, and any further amounts proven to belong to the Plaintiff;

3. For avoidance of fraudulent transfers;

4. For recovery of interest, costs, and attorney's fees and expenses, to the extent recoverable under applicable law and according to the evidence submitted to this Court;

5. For restitution and a determination of constructive trust;

6. For an order distributing funds to Plaintiff; and

7. For such other relief as the Court deems just and proper.

DATED:   June 19, 2019                          McMURRAY HENRIKS, LLP

By:   */s/ [Yana G. Henriks]*
       Yana G. Henriks
       Attorneys for Plaintiff RODNEY
       PIMENTEL

McMurray Henriks, LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036

**EXHIBIT 5**

David W. Affeld, State Bar No. 123922
Brian R. England, State Bar No. 211335
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel. (310) 979-8700
Fax (310) 979-8701
bre@agzlaw.com

Attorneys for Defendants Joseph Barrett and The Barrett Law Firm

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| RODNEY PIMENTEL, an individual;<br><br>     Plaintiff,<br><br>  vs.<br><br>JOSEPH BARRETT, an individual; THE BARRETT LAW FIRM, A PROFESSIONAL CORPORATION, a California professional corporation; PHILIP LAYFIELD, an individual; TODD WAKEFIELD, an individual; DAVID AFFELD, an individual; DAVID W. AFFELD, A PROFESSIONAL CORPORATION, a California professional corporation; AFFELD GRIVAKIS LLP, a California limited liability partnership; and DOES 1-10, inclusive.<br><br>     Defendants | Case No. **BC701615**<br><br>Assigned for All Purposes to:<br>The Honorable Steven J. Kleifield, Dept. 57<br><br>**DEFENDANTS JOSEPH BARRETT AND THE BARRETT LAW FIRM'S NOTICE OF MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOSEPH BARRETT IN SUPPORT THEREOF**<br><br>Date: June 25, 2021<br>Time: 8:30 a.m.<br>Dept.: 57<br><br>[Proposed Order filed concurrently]<br><br>Action Filed: April 10, 2018<br>Trial Date:  October 25, 2021<br><br>**Reservation ID No.: 845279995492** |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on June 25, 2021 at 8:30 a.m., in Department 57 of the above-entitled Court, located at 111 N. Hill Street, Los Angeles, California 90012, Defendants Joseph Barrett and The Barrett Law Firm (collectively, "Defendants"), will and hereby do move to stay this action pending resolution of the active bankruptcies of Phillip Layfield and Layfield & Barrett and the federal criminal proceedings against Phillip Layfield.

This Motion is made pursuant to section 362 of the Bankruptcy Code, 11 U.S.C. § 362, on the grounds that the Defendants are entitled to seek statutory and equitable indemnity from Layfield and Layfield & Barrett, but are precluded from doing so by the automatic stay in place in those bankruptcy proceedings, and that Mr. Layfield is the actual wrongdoer and cannot be compelled to provide evidence until his criminal proceeding is resolved.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the records and files herein, and such other matters as the Court may consider.

Dated:  June 3, 2021                    Respectfully submitted,

                                        By: /s/Brian R. England
                                        David W. Affeld
                                        Brian R. England
                                        Damion D. D. Robinson
                                        Affeld Grivakes LLP

                                        Attorneys for Defendants Joseph Barrett
                                        and the Barrett Law Firm

- 2 -

MOTION TO STAY

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

The cart is driving the horse.  It makes no sense to try this case when the primary defendants, Philip Layfield ("Layfield") and Layfield & Barrett, APC ("L&B"), are in ongoing bankruptcy proceedings and cannot be pursued.  The transparent attempt by plaintiff Rodney Pimentel ("Plaintiff") to evade the automatic stay by pursuing tangential defendants such as Joseph Barrett ("Barrett") must fail.

Plaintiff alleges that Layfield stole the settlement proceeds from a personal injury case handled by L&B.  L&B collapsed in 2017 and both Layfield and L&B are in involuntary bankruptcy proceedings.  Until the firm collapsed, it is undisputed that Layfield had exclusive control of its finances.  Unbeknownst to Barrett, Layfield orchestrated a complex scheme to steal client funds and flee to Costa Rica.  Barrett had no involvement in this scheme.  When it came to light, Layfield was disbarred and indicted.  Barrett has not been disciplined or charged with any crime and has fully cooperated with the authorities in an effort to recover funds for Pimentel and other clients.  Because Layfield and L&B are subject to the automatic bankruptcy stay, Plaintiff chose to sue Barrett and a series of other tangential parties, including the former general counsel of L&B, Barrett's current employer, and a partner of Barrett's current employer.[1]

This attempt to end-run the automatic bankruptcy stay fails for multiple reasons.

*First*, the automatic stay bars cases against defendants who have an absolute right to indemnity from a bankrupt debtor.  Cases recognize that it is both fundamentally unfair and inconsistent with the automatic stay to allow such cases to proceed where the defendant cannot enforce its indemnity rights outside of the bankruptcy proceeding.

*Second*, this action necessarily violates the automatic stay because it seeks to adjudicate rights to funds in the possession of Layfield and L&B.  There is no credible allegation that Barrett received the stolen money.  The funds at issue are presently part of the L&B and Layfield bankruptcy estates.  Only the Bankruptcy Court can decide whether Layfield and/or L&B

---

[1] In order to avoid an anti-SLAPP motion and attorney fee award, Plaintiff agreed to dismiss Barrett's current firm and its partner.

MOTION TO STAY

1    misappropriated Plaintiff's funds or whether those funds belong to the estates.

2    **Third**, practical considerations compel a stay in this case. Layfield and L&B are

3    indispensable parties at the center of this dispute. Proceeding in their absence is not only unfair,

4    but risks inconsistent judgments as to the parties' respective shares of liability, if any.

5    **Fourth**, and finally, Layfield is currently under indictment and cannot be compelled to

6    testify or participate in these proceedings. Barrett should not suffer prejudice because the

7    primary defendant in this case cannot be compelled to testify.

8    It makes no sense to proceed with this case while the primary defendants are in

9    bankruptcy and cannot participate. The Court should enforce the automatic stay in this matter

10   until the bankruptcy proceedings and Layfield's criminal matter are over.

11   **II.    ARGUMENT**

12       **A.    The Bankruptcy Stays in the L&B and Layfield Bankruptcies Should Apply
                  to the Moving Defendants.**

13

14       Pursuant to 11 U.S.C.A. §362 (a)(1) the filing of an involuntary bankruptcy petition

15   operates as a stay of actions against the debtor that were commenced before bankruptcy or to

16   recover on a claim that arose before the bankruptcy.[2] Likewise, any act to obtain possession of

17   property of a bankruptcy estate is automatically stayed. 11 U.S.C. § 362(a)(3).

18       The House Report on the bill enacting the §362 automatic stay succinctly explains,

19       [t]he automatic stay is one of the fundamental debtor protections provided by the
         bankruptcy laws. It gives the debtor a breathing spell form his creditors. It stops all
20       collection efforts, all harassment, and all foreclosure actions. It permits the debtor
         to attempt a repayment or reorganization plan, or simply to be relieved of the
21       financial pressures that drove him into bankruptcy.

22       [t]he automatic stay also provides creditor protection. Without it, certain creditors
         would be able to pursue their own remedies against the debtor's property. Those
23       who acted first would obtain payment of the claims in preference to and to the
         detriment of other creditors.
24
         Bankruptcy is designed to provide an orderly liquidation procedure under which all
25

26   [2] A failure to join L&B and Layfield as parties (to avoid the automatic stay) would have required this
     Court to dismiss the claims under C.C.P. § 389, for failure to join an indispensable party. *See*
27   *People ex rel Lungren v. Comm. Redev. Agency* (1997) 56 Cal.App.4th 868, 880-885 (in actions
     asserting rights under a contract, the general rule under Section 389 is that such actions cannot be
     allowed to proceed so long as a party to the contract cannot be joined to the action); *Lomayaktewa v.*
28   *Hathaway* (9th Cir. 1975) 520 F.2d 1324.

**MOTION TO STAY**

1    creditors are treated equally. A race of diligence by creditors for the debtor's assets
     prevents that.

2    ...The scope of [§362(a)(1)] is broad. All proceedings are stayed, including
3    arbitration, license revocation, administrative, and judicial proceedings. Proceeding
     in this sense encompasses civil actions as well, and all proceedings even if they are
     not before governmental tribunals. *See*, H.R.Rep. No. 95-595, at 340 (1977)
4    reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97. See also S. Rep. No 95-989, at 49,
     54-55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5835m 5840-41.
5

6         The stay prevents creditors from acting unilaterally to obtain payment from a debtor to

7    the detriment of other creditors. *See Assoc. of St. Croix Condominium Owners v. St. Croix Hotel*

8    *Corp.*, 682 F. 2d 446, 448 (3d Cir. 1982). It also "protect[s] the bankrupt's estate from being

9    eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to

10   marshal the estate's assets and distribute them equitably among the creditors." *See Martin-*

11   *Trigona v. Champion Fed. Sav. & Loan Assoc.*, 892 F.2d 575, 577 (7th Cir. 1989).

12        The scope of the protection is determined not just by who is named in a proceeding, but

13   also by who the party is with the real interest in the litigation. Pursuant to U.S.C.A. 362(c)(2)

14   the stay continues until the earliest of (i) the time the bankruptcy case is closed or dismissed or

15   (ii) the time a discharge is granted or denied. Absent relief from the stay, judicial actions and

16   proceedings against the debtor *or which affect the debtor's estate* are void *ab initio*.

17        **1.    The Stay Applies to Cases Where a Defendant Is Entitled to Indemnity
              Against the Debtor.**
18

19        To make the stay effective, it not only applies to cases against the debtor, but also cases

20   where the debtor's co-defendants have rights to indemnity against the debtor. The stay applies

21   to "a suit against a third-party who is entitled to absolute indemnity by the debtor on account of

22   any judgment that might result against them in the case. To refuse application of the statutory

23   stay in that case would defeat the very purpose and intent of the statute." *A.H. Robins Co., Inc.*

24   *v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). Since *Robins*, courts have clarified that "absolute

25   indemnity" is not required and that the possibility of a right to indemnification is sufficient. *See*

26   *In re Sudbury, Inc.*, 140 B.R.461, 464 (Bankr. N.D. Ohio 1992); *In re American Film*

27   *Technologies, Inc.*, 175 B.R. 847, 851-855 (Bankr. D. Del. 1994) (applying stay even though

28   there were questions as to the enforceability of the indemnity obligation).

- 5 -

1   This is such a case. Barrett and the Barrett Law Firm have an absolute right to statutory

2   and common-law indemnity from L&B and Layfield. Barrett was a salaried employee of L&B

3   qualified for statutory indemnity. Decl. of Joe Barrett at ¶ 2. Moreover, by all accounts,

4   Layfield (who is currently under indictment) was the active tortfeasor in this case, giving Barrett

5   and Barrett Law Firm a right to equitable indemnity.

6   **2.     The *Robins* "Stay Due to Indemnification" Rule Applies Here.**

7   Where a debtor and non-debtor are bound by statute or contract such that the liability of

8   the non-debtor is imputed or shifted to the debtor by operation of law, the intent to provide relief

9   to debtors with a stay would be frustrated by permitting indirectly that which is expressly

10  prohibited in the Bankruptcy Code. "Clearly the debtor's protection must be extended to enjoin

11  litigation against others if the result would be binding upon the debtor's estate." *A. H. Robins,*

12  *supra*, 788 F. 2d 994 (4th Cir1986) at 999, *citing In re Metal Center, Inc.* 31 B.R. 458, 462

13  (Bankr. D. Conn. 1983.)

14  Barrett is entitled to absolute statutory indemnity as a salaried employee of L&B. (*See,*

15  Barrett Decl., ¶ 2.) Pursuant to California Labor Code §2802(a) "[a]n employer shall indemnify

16  his or her employee for all necessary expenditures or losses incurred by the employee in direct

17  consequence of the discharge of his or her duties…" This includes both a defense and indemnity

18  in lawsuits against an employee arising from his employment. *Cassady v. Morgan, Lewis &*

19  *Bockius, LLP*, 145 Cal.App.4th 220, 230 (2006).

20  "California has a strong public policy that favors the indemnification (and defense) of

21  employees by their employers for claims and liabilities resulting from the employees' acts within

22  the course and scope of their employment." Chin et al., Cal. Practice Guide: Employment

23  Litigation (The Rutter Group 2007) ¶ 3:1, p. 3–1. Labor Code section 2802 codifies this policy

24  and gives an employee a right to indemnification from his or her employer. *See Grissom v. Vons*

25  *Companies, Inc.* (1991) 1 Cal.App.4th 52, 59–60 (the purpose of Lab. Code, § 2802 is "to

26  protect employees from suffering expenses in direct consequence of doing their jobs"); *Janken v.*

27  *GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 74, fn. 24, (Lab. Code, § 2802 "shows a

28  legislative intent that duty-related losses ultimately fall on the business enterprise, not on the

- 6 -

1 individual employee"); *see also Edwards v. Arthur Anderson LLP* (2008) 44 Cal.4th 937, 952.

2   Further, Barrett and the Barrett firm are entitled to equitable indemnity from Layfield and

3 L&B as a matter of law. Equitable indemnity arises where two or more parties are sued for the

4 same loss. *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 593. It is based

5 on the "common sense proposition" that the more culpable tortfeasor should bear a larger share

6 of the loss. *Id.* Plaintiff alleges that Layfield stole his settlement funds through L&B. There is

7 no credible allegation that Barrett was anything more than an attorney at L&B who worked on

8 Plaintiff's underlying case. Leaving aside that Barrett is not liable, at minimum, he is entitled to

9 indemnity against the "more culpable" parties, *i.e.*, Layfield and L&B. *Id.*

10   Because of the automatic stay, Barrett has no ability to enforce his indemnity rights in

11 this proceeding. His claim for indemnity against L&B would ordinarily take the form of a

12 compulsory cross-claim against L&B. However, the automatic stay precludes Barrett from

13 pursuing that claim here. Accordingly, Barrett has asserted his indemnity rights in the L&B

14 bankruptcy proceedings, and those rights should be adjudicated in the bankruptcy cases before

15 this case proceeds. (Barrett Decl., Ex. 1).

16   Allowing the case against Barrett to proceed here would severely prejudice Barrett, and

17 would require him to proceed in two different forums. Exposing Barrett to liability and denying

18 him indemnification relief at the same time would impermissibly interfere with his rights.

19   "[I]f the indemnitee, who has suffered a judgment for which he is entitled to be
20   absolutely indemnified by the debtor, cannot file and have allowed as an adjudicated
    claim the actual amount of the judgment he has secured but must submit his claim
21   for allowance in the bankruptcy proceeding with the prospect that his claim may
    not be allowed in the full amount of the judgment awarded in favor of him, the
22   indemnitee will be unfairly mulcted by inconsistent judgments and his contract of
    indemnity in effect nullified."

23 *A.H Robins, supra*, 788 F.2d at 1000.

24   **B.**  **The Matter Should Be Stayed Because Plaintiff Seeks to Obtain or Exercise
     Control Over Property of the L&B and Layfield Estates.**
25

26   A judgment in favor of Plaintiff would necessarily affect the L&B and Layfield

27 bankruptcy estates, since under California law, a verdict in favor of Plaintiff against Barrett

28 would automatically trigger indemnification liability against L&B. Therefore. the action is in

1  effect one against the debtor and as such would qualify for relief under §362(a)(1).

2     11 U.S.C. § 362(a)(3) also directs stays of any action, whether against the debtor or third

3  parties, to obtain possession or to exercise control over property of the debtor.  Here, as pled,

4  Plaintiff's funds are or were in the possession of Layfield and L&B—*there is no credible*

5  *assertion that Barrett ever received any of Plaintiff's money*.  And, there is no question that any

6  such funds, to the extent they still exist, are now property of the bankruptcy estates.  Indeed,

7  Plaintiff is currently pursuing a case in Layfield's bankruptcy proceeding on this very theory.

8  (Barrett Decl., Ex. 4.)

9     11 U.S.C. §362(a)(3) is not limited to actions against the debtor.  Rather, it stays "any act

10  to obtain possession of property of the estate of property from the estate or to exercise control

11  over property of the estate."  Courts have applied the §362(a)(3) stay to non-debtor actions that

12  have an adverse impact on property of the estate.  Section 541(a)(1) defines "property" in the

13  bankruptcy context.[3]  It provides that the "estate is comprised of all the following property,

14  wherever located…all legal or equitable interests of the debtor in property as of the

15  commencement of the case." 11 U.S.C. §541(a)(1).

16     Plaintiff's claims against Barrett seek monies paid to L&B and Layfield pursuant to a

17  contract between Plaintiff and L&B.  Barrett was not a party to that contract.  Any fees at issue

18  were paid to L&B. As such, Plaintiff's claims an act to obtain possession of property of the

19  bankruptcy estate and continued action against Barrett would have an adverse impact on the

20  property of the estate via a potential finding of a breach of contract and determination of monies

21  owed by the estate.  It is beyond dispute that a proper administration of the L&B and Layfield

22  bankruptcy estates will require a full accounting of all monies possessed, transferred and owed

23  [3] *In re Jefferson County*, Ala. 491 B.R. 277, 295 (Bankr. N.D. Ala. 2013); *See also, Kagan v. Saint*

24  *Vincents Catholic Med. Ctrs. of New York*, 449 B.R. 209, 217–18 (S.D.N.Y.2011) ("the automatic
stay provision is not limited solely to actions against the debtor, but rather bars actions against even
against third-parties that would have an adverse impact on the property of the estate"); *Queenie, Ltd*

25  *v. Nygard*, 321 F.3d at 287 (2d Cir. 2003).  "The automatic stay can apply to non-debtors, but
normally does so only when a claim against the non-debtor will have an immediate adverse

26  economic consequence for the debtor's estate."); 48th Street Steakhouse, Inc. v. Rockefeller Grp. (In
re 48th Street Steakhouse, Inc.), 835 F.2d 427, 430–31 (2d Cir.1987) (applying (a)(3) stay to non-

27  debtor); Kaiser, 315 B.R. at 659 (same). "Property of the estate" within the meaning of § 362(a)(3) is
governed by 11 U.S.C. § 541(a) and includes " '[e]very conceivable interest of the debtor,' including

28  those that are 'future, nonpossessory, contingent, speculative, and derivative.'"

MOTION TO STAY

1   by the firm and Layfield. That accounting will undoubtedly include a determination of the

2   amounts due and owing to Plaintiff.

3        Having an accounting, let alone any determination of L&B and/or Layfield liability to

4   Plaintiff or Barrett, done here would improperly interfere with the bankruptcy court's

5   jurisdiction over the L&B and Layfield estates.

6       **C.**    **A Stay Is Necessary to Prevent Duplicative Litigation and Inconsistent**
           **Judgments.**

7

8        Allowing Plaintiff to proceed against Barrett and the Barrett Law Firm would not only

9   violate the letter and spirit of 11 U.S.C. §362, but would also vitiate the requirement that cases

10   proceed against all indispensable parties.

11        Plaintiff's claims are directly rooted in the retention agreements that Plaintiff entered into

12   with L&B.  Plaintiff's Complaint is clear, Plaintiff entered into a Retainer Fee Agreement with

13   Layfield & Wallace (the predecessor to L&B), on or about September 19, 2014." (*See* FAC at

14   ¶74).  There is no allegation that Plaintiff ever entered into any contractual agreement directly

15   with Barrett or the Barrett Law Firm.  Because all of Plaintiff's claims arise out of the

16   relationship created by his contract with L&B, all parties to that contract are indispensable

17   parties here.  Code Civ. Proc. § 389.  Allowing Plaintiff to proceed against a tangential party,

18   Barrett, while the case remains stayed against the primary wrongdoers would defeat the purpose

19   of joining indispensable parties.

20        The claims against Layfield, L&B, Barrett, and the Barrett Law Firm are inextricably

21   interwoven.  Litigation of Barrett's liability necessarily requires litigation of Layfield and L&B's

22   liability.  Barrett has no independent liability under that contract.  Under *Robins* and the cases

23   that followed it, where the debtor's interests are impossible to separate from the claims against

24   the non-debtor, a stay of proceedings is an appropriate remedy.

25        Finally, proceeding in the instant action could result in conflicting judgments. There is no

26   question that the automatic stay precludes Plaintiff from proceeding further against Layfield or

27   L&B without leave of the Bankruptcy Court.  Thus, in order to adjudicate Layfield and L&B's

28   liability, Plaintiff had to file a creditor's claim in the main bankruptcy case, obtain relief from

MOTION TO STAY

1  the stay, and/or institute an adversary proceeding in the Layfield/L&B bankruptcies.

2  Recognizing this basic fact, Plaintiff filed claims in each bankruptcy proceeding. Barrett Decl.,

3  Exs. 2, 3. The claims which need to be adjudicated in the bankruptcy court would necessarily be

4  identical to the claims filed in this action. Resolution of identical claims in two different forums

5  risks inconsistent judgments and would be a waste of judicial resources. A stay is appropriate in

6  this case until the claims resolution process in the bankruptcy proceeding has been completed,

7  or, at minimum, until Plaintiff obtains relief from the stay.

8      The only proper forum for that accounting is in the bankruptcy court. It would be a waste

9  of judicial resources to have this court litigate—even in part—the same accounting issues which

10  will be dealt with in the bankruptcy court. And, of course the risk of inconsistent determinations

11  would be present.

12      **D.    This Case Should Also be Stayed Until Layfield's Criminal Case is Done.**

13      As noted above, Layfield is currently facing federal criminal charges directly related to

14  the events that underpin this lawsuit, including the alleged theft of Plaintiff's money. Barrett

15  Decl., Ex. 5. During the pendency of that proceeding, Layfield cannot be compelled to

16  participate in discovery and provide basic information. And there is no dispute that Layfield was

17  in charge of L&B and the principal (indeed only) wrongdoer here. Basic fairness dictates that

18  this case should be stayed pending the resolution of those criminal charges so that Barrett can

19  take discovery and compel Layfield to testify.

20  **III.    CONCLUSION**

21      For all the foregoing reasons, Defendants Joseph Barrett and the Barrett Law Firm

22  respectfully request that this Court grant this motion and stay these proceedings until the related

23  bankruptcy and criminal proceedings are resolved.

24  Dated: June 3, 2021              Respectfully submitted,

25                          By: <u>Brian R. England /s/</u>
                                David W. Affeld
26                              Brian R. England
                                Damion D. D. Robinson
27                              Affeld Grivakes LLP

28                              Attorneys for Defendants Joseph Barrett
                                and the Barrett Law Firm
                                - 10 -

## <u>DECLARATION OF JOSEPH M. BARRETT</u>

I, Joseph M. Barrett, declare:

1.      I am a party to this action and have personal knowledge of the facts below.  I could testify competently to these facts if called upon to do so.

2.      From 2016 through the closure of Layfield & Barrett, APC ("L&B"), I was a salaried employee of that firm.  Although I was nominally a partner, I was paid a salary during my entire employment.  I did not participate in and had no knowledge of any scheme to misappropriate client funds.  Philip Layfield ("Layfield") started the firm years earlier under the name "The Layfield Law Firm," and had been running it for some time before I started.  He had exclusive control over the firm's finances and sole signature authority over its bank accounts, including the client trust account.  I had virtually no visibility into the financial operations of the firm and my primary role was to act as trial counsel on the firm's cases.

3.      Attached as **Exhibit 1** is a true copy of the Proof of Claim filed on my behalf in the involuntary Chapter 7 proceeding, later converted to a Chapter 11 proceeding, styled *In re Layfield & Barrett, APC*, United States Bankruptcy Court, Central District of California, Case No. 2:17-bk-19548-NB (the "L&B Bankruptcy").

4.      Attached as **Exhibit 2** is a true copy of the Proof of Claim filed on behalf of plaintiff Rodney Pimentel ("Pimentel") in the L&B Bankruptcy.

5.      Attached as **Exhibit 3** is a true copy of the Proof of Claim filed on behalf of Pimentel in the involuntary Chapter 7 proceeding styled *In re Philip James Layfield*, United States Bankruptcy Court, Central District of California, Case No. 2:18-bk-15829-NB (the "Layfield Bankruptcy").

6.      Attached as **Exhibit 4** is a true copy of a First Amended Complaint filed on behalf of Pimentel in an adversary proceeding related to the Layfield Bankruptcy.

[Continued on Next Page]

- 11 -

1    7.    Attached as **Exhibit 5** is at true copy of the First Superseding Indictment in the

2 case styled *United States of America v. Philip James Layfield aka "Philip Samuel Pesin*," United

3 States District Court, Central District of California, Criminal Case No. 18-124(A)-MWF.

4    I declare under penalty of perjury under the laws of the State of California that the

5 foregoing is true and correct.

6 Dated:  June 3, 2021                    /s/ Joseph M. Barret

                                                 Joseph M. Barrett
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -

MOTION TO STAY

# ATTACHMENT 3

## REQUEST FOR JUDICIAL NOTICE

**TO THE HONORABLE COURT, AND TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that, pursuant to Rule 201 of the Federal Rules of Evidence, creditor Rodney Pimentel hereby respectfully requests that this Court take judicial notice of the following item(s).  This request is made in connection with Pimentel's motion for relief from the automatic stay.

| Item No. | Document |
|---|---|
| 1. | Decision and Order of the State Bar Court of California filed on May 18, 2018, in case nos. 17-O-04140, 17-O-04198, and 17-O-04754. A true and correct copy of the document is attached as **Exhibit 2** to the declaration of Yana G. Henriks. |
| 2. | Order of the Supreme Court of California, *En Banc*, filed on September 27, 2018, in case nos. 17-O-04140, 17-O-04198, and 17-O-04754. A true and correct copy of the document is attached as **Exhibit 3** to the declaration of Yana G. Henriks. |

McMURRAY HENRIKS, LLP
811 WILSHIRE BOULEVARD, SUITE 1640
LOS ANGELES, CA 90017

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McMurray Henriks, LLP
811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017

## THIS COURT SHOULD TAKE JUDICIAL NOTICE OF THE MATTERS LISTED ABOVE

Rule 201(b) of the Federal Rule of Evidence 201(b) states that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

A district court may take judicial notice of public court records.  *See, e.g., Shaw v. Hahn,* 56 F.3d 1128, 1129 n.1 (9th Cir.) (taking judicial notice of order in another action), *cert. denied,* 516 U.S. 964, 116 S. Ct. 418 (1995). *See also Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (district court "may consider facts that are contained in materials of which the court may take judicial notice.").

Here, the listed matters are records and official acts of the judicial department of the state of California and are therefore matters of public record.

Accordingly, for all of the reasons discussed above, movant respectfully request that this Court grant this Request to Take Judicial Notice and take judicial notice of the matters listed above in connection with movant's concurrently filed

ATTACHMENT 3 TO APPLICATION FOR RELIEF FROM STAY – REQUEST FOR JUDICIAL NOTICE

1  documents and pursuant to Rules 201(b)(2) and 201(c)(2) of the Federal Rules of

2  Evidence.

3

4

5                                            Respectfully submitted:

6

7  DATED: June 16, 2021                      **MCMURRAY HENRIKS, LLP**

8

9

10                                    By: _____

11                                         Yana G. Henriks, Esq.
                                           Attorneys for creditor Rodney A.
12                                         Pimentel

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MCMURRAY HENRIKS, LLP**
811 WILSHIRE BOULEVARD, SUITE 1640
LOS ANGELES, CA 90017

ATTACHMENT 3 TO APPLICATION FOR RELIEF FROM STAY – REQUEST FOR JUDICIAL NOTICE